# Exhibit B

Dear editors of journals, editorial boards of journals, and their faculty advisors,

I have consistently taken the position that student organizations are permitted by UC policy and applicable law to choose who to invite as speakers on the basis of their viewpoint. I thus have said from the outset that student organizations cannot be penalized by the campus for adopting the Bylaw proposed by Law Students for Justice in Palestine.

The issue has now arisen as to what consequences would ensue if entities where academic credit is awarded adopt the LSJP Bylaw or other viewpoint-based organizational statements and requirements for their members that relate neither to the publication of an academic law journal nor to the specific academic focus of a particular journal. The LSJP Bylaw, for example, says that in adopting it, organizations will require that their members participate in specific training. ("To ensure that solidarity is practiced both in theory and in practice, members agree to participate in a 'Palestine 101' training held by the Law Students Justice for Palestine to learn ways to create a safe and inclusive space for Palestinian students and students that are in the support of the liberation of Palestine, as well as engaging in the BDS movement in the principled manner Palestinians are asking for.")

I have concluded that it would be problematic for the Law School to award academic credit to participating students when Berkeley Law journals adopt viewpoint-based organizing principles and practices that have no pedagogical relationship to the publication of the journal or to its academic focus. Although student organizations generally may adopt viewpoints as part of their charters and impose conditions of membership consistent with the our all-comers policy, it is quite different when it is the Law School awarding academic credit. We would not allow a viewpoint-based litmus test as a requirement for earning academic credit for other courses. The Law School would not permit a Civil Procedure or a Business Association instructor to require participation in a training that was unrelated to the course material. When credit is awarded for participation, the Law School is integrally and irreducibly involved in determining that the activity is pedagogically sufficient and appropriate for academic credit, including by setting requirements, and by appointing a faculty member to determine that each student has done the requisite work for credit.

To be clear, if a journal wishes to adopt the LSJP bylaw, it may do so. In that case, that journal will be treated like every other student organization and may choose speakers based on viewpoint and create requirements for membership (so long as it remains in compliance with the Law School's all-comers policy). In that instance, no academic credit will be awarded to participants. But if a journal desires to have its participating students earn academic credit, then it cannot impose adopt a viewpoint-based bylaw or participation requirement that bears no legitimate pedagogical relationship to the academic practices of the journal's work.

Because students already have registered for credits this semester, journals cannot change their policies for this semester. If they wish, they may choose to forego academic credit beginning in Spring 2024 semester.

I do not come to this conclusion lightly. My decision is not intended to punish, or to dissuade any student organization from asserting its views. I have consistently protected the ability of student organizations to adopt the LSJP Bylaw. But it is fundamentally different when it is the Law School awarding academic credit for participation.

Warmly,

Erwin