1   HAILYN J. CHEN (State Bar No. 237436)
    hailyn.chen@mto.com
2   MUNGER, TOLLES & OLSON LLP
    350 South Grand Avenue, 50th Floor
3   Los Angeles, California 90071
    Telephone:     (213) 683-9100
4   Facsimile:     (213) 687-3702

5   BRYAN H. HECKENLIVELY (State Bar No. 279140)
    bryan.heckenlively@mto.com
6   MUNGER, TOLLES & OLSON LLP
    560 Mission Street, 27th Floor
7   San Francisco, California 94105
    Telephone:     (415) 512-4000
8
    *Attorneys for Defendants*
9

10                  **UNITED STATES DISTRICT COURT**

11                **NORTHERN DISTRICT OF CALIFORNIA**

12                    **SAN FRANCISCO DIVISION**

13

14  THE LOUIS D. BRANDEIS CENTER, INC.;       Case No. 3:23-cv-06133-JD
15  JEWISH AMERICANS FOR FAIRNESS IN
    EDUCATION (JAFE),                         **MOTION TO DISMISS COMPLAINT
16                                            AND MOTION TO STRIKE JURY
                Plaintiffs,                   DEMAND**
17
        vs.
18                                            Hearing Date:      March 28, 2024
    REGENTS OF THE UNIVERSITY OF              Time:              10:00 am
19  CALIFORNIA; UNIVERSITY OF                 Place:             Courtroom 11
    CALIFORNIA AT BERKELEY; BERKELEY          Judge:             Hon. James Donato
20  LAW SCHOOL; MICHAEL DRAKE, in his
    official capacity as President of the University
21  of California; CAROL T. CHRIST, in her
    official capacity as Chancellor of the
22  University of California, Berkeley; BEN
    HERMALIN, in his official capacity as
23  Provost of the University of California,

24              Defendants.

25

26

27

28

# TABLE OF CONTENTS

Page

STATEMENT OF RELIEF SOUGHT ........................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 1

I.     INTRODUCTION ........................................................................................................... 1

II.    THE ALLEGATIONS IN THE COMPLAINT .............................................................. 2

       A.     The University's Commitment to Nondiscrimination and Free Expression ............ 2

       B.     Student Groups' Adoption of Various Bylaws in Opposition to Zionism ................ 2

       C.     The University's Response to and Denunciation of those Bylaws ........................... 3

       D.     Plaintiffs and Their Alleged Injuries ..................................................................... 4

III.   LEGAL STANDARD ..................................................................................................... 5

IV.    ARGUMENT .................................................................................................................. 5

       A.     All Claims Should be Dismissed Because Plaintiffs Lack Standing ....................... 5

              1.     Plaintiffs' Asserted Injuries Are Not Redressable ....................................... 5

              2.     JAFE Has No Standing for Other, Independent Reasons ............................. 7

                     (a)     JAFE Lacks Standing to Sue on Behalf of Its Student
                             Members ........................................................................................... 8

                     (b)     JAFE Lacks Standing to Sue On Behalf of Its Scholar
                             Members ........................................................................................... 9

              3.     The Brandeis Center Has No Standing for Other, Independent
                     Reasons ........................................................................................................ 11

       B.     Plaintiffs' Complaint Fails to State a Claim ......................................................... 12

              1.     Plaintiffs Fail to State an Equal Protection Claim ..................................... 12

              2.     Plaintiffs Fail to State a Free Exercise Claim ............................................ 13

              3.     Plaintiffs Fail to State a Claim Under Section 1981 .................................. 13

              4.     Plaintiffs Fail to State a Title VI Claim ...................................................... 14

V.     PLAINTIFFS SUED IMPROPER OR IMMUNE DEFENDANTS ............................... 15

VI.    CONCLUSION .............................................................................................................. 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Armstrong v. Meyers*,
    964 F.2d 948 (9th Cir. 1992) ..................................................................... 15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................... 5

*Associated Gen. Contractors of Am., San Diego Chapter, Inc. v. Cal. Dep't of Transp.*,
    713 F.3d 1187 (9th Cir. 2013) ..................................................................... 7

*Ballou v. McElvain*,
    29 F.4th 413 (9th Cir. 2022) ..................................................................12, 13

*Barnes v. Gorman*,
    536 U.S. 181 (2002) ................................................................................. 14

*Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*,
    457 U.S. 853 (1982) ................................................................................... 6

*Carney v. Adams*,
    592 U.S. 53 (2020) ...............................................................................8, 9, 10

*Carrol v. Nakatani*,
    342 F.3d 934 (9th Cir. 2003) ..................................................................... 11

*Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of the L. v. Martinez*,
    561 U.S. 661 (2010) ................................................................................... 7

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ..................................................................................... 9

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.*,
    526 U.S. 687 (1999) ................................................................................. 15

*Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*,
    140 S. Ct. 1009 (2020) ............................................................................. 14

*Darensburg v. Metro. Transp. Comm'n*,
    636 F.3d 511 (9th Cir. 2011) ..................................................................... 15

*Davis v. Monroe Cnty. Bd. Of Educ.*,
    526 U.S. 629 (1999) ..............................................................................14, 15

MOTION TO DISMISS COMPLAINT

*Def. of Animals v. Sanderson Farms, Inc.*,
    No. 20-CV-05293-RS, 2021 WL 4243391 (N.D. Cal. Sept. 17, 2021) ................................... 11

*Felber v. Yudof*,
    851 F. Supp. 2d 1182 (N.D. Cal. 2011) ...................................................................7, 11, 15

*Friends of the Earth v. Sanderson Farms, Inc.*,
    992 F.3d 939 (9th Cir. 2021) ...................................................................................11, 12

*Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*,
    458 U.S. 375 (1982).................................................................................................13, 14

*Haltigan v. Drake*,
    No. 5:23-CV-02437-EJD, 2024 WL 150729 (N.D. Cal. Jan. 12, 2024)............................. 8, 10

*Healy v. James*,
    408 U.S. 169 (1972)........................................................................................................ 6

*Hurley v. Irish-Am. Gay, Lesbian, & Bisexual Group of Boston*,
    515 U.S. 557 (1995)........................................................................................................ 6

*Karasek v. Regents of Univ. of Cal.*,
    956 F.3d 1093 (9th Cir. 2020) ....................................................................................... 14

*Kennedy v. Bremerton Sch. Dist.*,
    142 S. Ct. 2407 (2022) ................................................................................................. 13

*Koala v. Khosla*,
    931 F.3d 887 (9th Cir. 2019) .......................................................................................... 6

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*,
    624 F.3d 1083 (9th Cir. 2010) ....................................................................................11, 12

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ................................................................................................... 8, 10

*M.S. v. Brown*,
    902 F.3d 1076 (9th Cir. 2018) ................................................................................... 6, 7

*Mandel v. Bd. of Trs. of Cal. State Univ.*,
    No. 17-CV-03511, 2018 WL 1242067 (N.D. Cal. Mar. 9, 2018) ......................................... 14

*Miami Herald Publ'g Co. v. Tornillo*,
    418 U.S. 241 (1974)........................................................................................................ 6

*Mihan v. Regents of the Univ. of Cal.*,
    No. 2:16-cv-01390-KJM-CMK, 2016 WL 6875911 (E.D. Cal. Nov. 21, 2016) ..................... 15

*Monteiro v. Tempe Union High Sch. Dist.*,
    158 F.3d 1022 (9th Cir. 1998) ....................................................................................... 12

*Nat'l Fed'n of the Blind v. Ariz. Bd. of Regents*,
  No. CV-09-1359-PHX-GMS, 2009 WL 3352332 (D. Ariz. Oct. 16, 2009) ........................... 11

*Pittman v. Or., Emp. Dep't*,
  509 F.3d 1065 (9th Cir. 2007) ............................................................................................. 15

*Reeves v. Nago*,
  535 F. Supp. 3d 943 (D. Haw. 2021) ...................................................................................... 6

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
  515 U.S. 819 (1995) ............................................................................................................... 6

*Safe Air for Everyone v. Meyer*,
  373 F.3d 1035 (9th Cir. 2004) ............................................................................................... 5

*Shooter v. Arizona*,
  4 F.4th 955 (9th Cir. 2021) ................................................................................................. 13

*Smith v. Barton*,
  914 F.2d 1330 (9th Cir. 1990) ............................................................................................. 15

*Snyder v. Phelps*,
  562 U.S. 443 (2011) ............................................................................................................... 7

*Tandon v. Newsom*,
  593 U.S. 61 (2021) ............................................................................................................... 13

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021) ........................................................................................................... 5

*United States v. Schwimmer*,
  279 U.S. 644 (1929) ............................................................................................................... 7

*Villa v. Maricopa Cnty.*,
  865 F.3d 1224 (9th Cir. 2017) ............................................................................................... 9

*Wash. Env't Council v. Bellon*,
  732 F.3d 1131 (9th Cir. 2013) ............................................................................................. 10

*Washington v. Davis*,
  426 U.S. 229 (1976) ............................................................................................................. 12

*Williams v. Owens-Ill., Inc.*,
  665 F.2d 918 (9th Cir. 1982) ............................................................................................... 15

**FEDERAL STATUTES**

42 U.S.C. § 1981 ........................................................................................................... 14, 15

42 U.S.C. § 1981(a) ............................................................................................................. 14

MOTION TO DISMISS COMPLAINT

1

**FEDERAL RULES**

2   Federal Rule of Civil Procedure 12(b)(1) ........................................................................ 1, 5

3   Federal Rule of Civil Procedure 12(b)(6) ....................................................................1, 5, 12

4   Federal Rule of Civil Procedure 12(f) ........................................................................ 1, 15

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLEASE TAKE NOTICE** that on March 28, 2024, before the Honorable James Donato in Courtroom 11, Defendants (collectively, "the University") will and hereby do move for an order dismissing Plaintiffs' complaint with prejudice and striking their jury demand. This Motion is based on the Notice of Motion and Memorandum of Points and Authorities, all papers on file, and any authority or argument presented in the reply and at any hearing.

<u>STATEMENT OF RELIEF SOUGHT</u>

Defendants seek dismissal of all claims pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) and an order striking Plaintiffs' jury demand under Fed. R. Civ. P. 12(f).

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

I.    <u>INTRODUCTION</u>

As a public university, the University of California must balance two equally important principles:  The right of students of all faiths and backgrounds to receive the many benefits of a University of California education, and the foundational constitutional principle that government cannot punish speech due to its viewpoint. Plaintiffs allege that certain student groups at Berkeley Law have adopted bylaws refusing to invite speakers or publish articles by authors that support Zionism and requiring leaders of their groups to attend a training session called Palestine 101. Those bylaws explain that the groups adopted them to express support for Palestinian peers and opposition to Zionism. Aware that these bylaws were perceived by many in the Berkeley Law community to be antisemitic, the University swiftly denounced the policies, expressed support for Jewish students, and explained that the University would not incorporate the bylaws into its own curricular standards and would therefore not grant academic credit for participation in any student organization that adopted the bylaws. Consistent with long-established constitutional principles, the University did not discipline the student organizations for their political speech. But Plaintiffs now ask this Court for an unconstitutional order requiring the University to do so.

While Plaintiffs' complaint contains numerous legal deficiencies, two fundamental problems defeat all of their claims. First, Plaintiffs ask this Court to order the University to discipline the student organizations for quintessential First Amendment-protected speech. Because neither the Court nor the University may do so, Plaintiffs' claims are not "redressable,"

and Plaintiffs lack standing to sue.  Second, though Plaintiffs' complaint decries the bylaws as antisemitic, Plaintiffs do not allege that *the University*'s response was motivated by antisemitism. Indeed, by Plaintiffs' own telling, the University swiftly denounced the bylaws, offered support to Jewish members of the University community, and took action where it could by declining to award academic credit from the University for groups that had adopted the bylaws.  And Plaintiffs expressly allege that the University's decision not to discipline the groups was due to its perceived obligations under the First Amendment—not sympathy for any allegedly antisemitic message expressed by the bylaws.  Thus, Plaintiffs have failed to allege the kind of animus, hostility, or intentional discrimination *by the University* that is required to bring any of their claims.

## II.      THE ALLEGATIONS IN THE COMPLAINT

### A.      The University's Commitment to Nondiscrimination and Free Expression

The University of California has a "longstanding commitment[] to civil rights and equal treatment of all persons regardless of race, religion, ethnicity, national origin, gender, sexual preference, military status, physical disability, and/or heritage."  Compl. ¶ 8.  The University therefore maintains a "Policy on Nondiscrimination" that prohibits "legally impermissible, arbitrary, or unreasonable discriminatory practices" in the University's programs and activities. The UC Berkeley School of Law ("Berkeley Law"), for its part, requires all student groups to adopt an "all-comers" policy providing that groups "will not restrict membership" based on protected classes, including race, national origin, religion, citizenship, or ancestry.  *Id.* ¶ 64. Adopting and complying with the "all-comers" policy is required.  *Id.* ¶ 66.

The Complaint acknowledges that the University has taken the view that ensuring free student expression is required by the First Amendment and core to the University's role as an institution of higher education.  *Id.* Ex. A; *see id.* ¶¶ 91-92.  The University recognizes that "student organizations have the right, and a legally protected ability to invite speakers based on their viewpoint" and may "decide the views to be communicated at those events."  *Id.* Ex. A at 2.

### B.      Student Groups' Adoption of Various Bylaws in Opposition to Zionism

Plaintiffs allege that certain student organizations at Berkeley Law have adopted bylaws stating that the organizations would "not invite speakers that have expressed and continue[] to

hold views or host/sponsor/promote events in support of Zionism, the apartheid state of Israel, and the occupation of Palestine." *Id.* ¶¶ 71, 75 (the "Invited Speaker Bylaw").  Some groups also adopted a bylaw requiring their student organization leaders to "participate in a 'Palestine 101' training held by [LSJP]'s executive board to learn ways to create a safe and inclusive space for Palestinian students and students that are in support of the liberation of Palestine." *Id.* ¶¶ 71, 75-78 (the "Palestine 101 Bylaw").  The training also teaches about "engaging in the [Boycott Divestment and Sanctions] movement." *Id.* ¶ 71.  Plaintiffs also allege that the *Berkeley Journal of Gender, Law & Justice* adopted a third bylaw under which the journal refuses to publish authors whom the journal would, under the Invited Speaker Bylaw, decline to invite to speak at an event. *Id.* ¶ 77 ("the Publication Bylaw").  No other journal or group has allegedly adopted this bylaw.

### C.    The University's Response to and Denunciation of those Bylaws

University administrators, law school administrators, and law school faculty have publicly and repeatedly denounced these bylaws and expressed their support for Jewish students at Berkeley Law.  *See, e.g.*, *id.* ¶¶ 6-7, 92-93, Ex. A.  For example, Plaintiffs allege Berkeley Law Dean Erwin Chemerinsky repeatedly spoke out in the press, denouncing the bylaws as, in his view, antisemitic and reiterating that Jewish students are welcome and valued at Berkeley Law. *See id.* ¶ 93 (citing articles from October 2022).  Similarly, UC Berkeley Chancellor Carol Christ (a Defendant in her official capacity) spoke out against the bylaws and demonstrated her support for Jewish community members, many of whom, she explained, perceive the bylaws to be antisemitic.  *Id.* ¶¶ 7, 95-96; *see* Ex. A (public letter from Chancellor Christ).  Chancellor Christ also met with "members of the Chancellor's Committee on Jewish Student Life and Campus Climate" to explore ways to "improve the Jewish experience at Berkeley by, among other things, developing substantive responses" to Jewish students' concerns.  *Id.*  Dean Chemerinsky, along with 23 other Berkeley Law professors, issued a statement in support of Jewish law students, *id.* ¶ 94, and he also made clear that the law school would not award academic credit for work in groups that adopt the bylaws.  *Id.* Ex. B.

The University has explained that it did not take disciplinary action against the student groups because of legal obligations to protect their free expression rights.  *Id.* ¶ 92.  For example,

1    Plaintiffs quote Dean Chemerinsky explaining that student groups "have the right to choose

2    speakers for their events based on viewpoint." *Id.*  Likewise, Chancellor Christ explained that the

3    University "must be consistent in defending" students' legally protected ability to invite speakers

4    based on their viewpoint "for all groups, including pro-Palestinian ones." *Id.* Ex. A.

5                    **D.        Plaintiffs and Their Alleged Injuries**

6          Plaintiffs are neither Berkeley Law students nor faculty, but instead are two national

7    advocacy organizations.  The Louis D. Brandeis Center is an advocacy organization that "engages

8    in research, education, and legal advocacy to combat anti-Semitism" in a variety of settings,

9    including "on college and university campuses." *Id.* ¶ 20.  Jewish Americans for Fairness in

10   Education (JAFE) is a membership organization housed in the Brandeis Center. *Id.* ¶ 21.  JAFE's

11   members are therefore also members of the Brandeis Center. *Id.* n.1.  JAFE alleges that its

12   members include "legal scholars and Berkeley faculty who are qualified, willing, and able to

13   speak" to the Berkeley student organizations, but are unable to do so by the Invited Speaker Bylaw

14   because "[t]hey are Jewish . . . and Zionism is integral to their Jewish identity." *Id.* ¶ 22.  JAFE

15   does not identify, even by pseudonym, any particular student member of JAFE who has been

16   harmed by the policy, *see id.* ¶ 38, but merely alleges that its membership includes "Berkeley

17   undergraduate, graduate, and law students" who are Jewish. *Id.* ¶ 21.

18         Plaintiffs allege that the bylaws violate the University of California's Policy on

19   Nondiscrimination and Berkeley Law's "all-comers" policy. *Id.* ¶¶ 105-34.  Though Plaintiffs

20   acknowledge that not all Jews are Zionists, *id.* ¶ 49, they allege that the anti-Zionist bylaws are

21   antisemitic because for some Jews, including JAFE's scholar members, Zionism is an integral part

22   of their Jewish identity. *Id.* ¶ 50.  Plaintiffs do *not* allege that any student has been excluded from

23   a student organization in violation of the "all-comers" policy.  Nor do they allege any time the

24   Invited Speaker Bylaw prevented anyone from speaking.  And, though the bylaws do not restrict

25   membership or participation in student organizations based on whether *students* hold Zionist

26   views, Plaintiffs nevertheless allege that the antisemitic nature of the bylaws prevents JAFE's "UC

27   Berkeley" student members from "participating fully in student groups on campus." *Id.* ¶ 38.

28

1    ## III.   <u>LEGAL STANDARD</u>

2          To survive a motion to dismiss under Rule 12(b)(6), the Complaint must contain sufficient

3    factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556

4    U.S. 662, 678 (2009).  Similarly, a facial Rule 12(b)(1) challenge "asserts that the allegations

5    contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for*

6    *Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  Courts are "not bound to accept as true a

7    legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

8    ## IV.   <u>ARGUMENT</u>

9          ### A.   <u>All Claims Should be Dismissed Because Plaintiffs Lack Standing</u>

10         Plaintiffs do not have Article III standing and their claims should be dismissed under Rule

11   12(b)(1).  For a plaintiff to have standing, they must allege that they (i) "suffered an injury in fact

12   that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the

13   defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC*

14   *v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).  Plaintiffs have failed on all three fronts.  Because

15   Plaintiffs seek relief that the Constitution forbids, their injuries are not redressable, and all their

16   claims must be dismissed for that reason alone.  The University begins with redressability before

17   turning to pleading failures with respect to injury and causation specific to each Plaintiff.

18         #### 1.   **Plaintiffs' Asserted Injuries Are Not Redressable**

19         Plaintiffs' injuries are not redressable because Plaintiffs seek relief that this Court cannot

20   constitutionally award.  The gravamen of Plaintiffs' claims is that the Invited Speaker Bylaw, the

21   Publication Bylaw, and the Palestine 101 Bylaw (collectively, the "Bylaws") caused them harm

22   and that Defendants should have disciplined the groups that adopted them.  *See* Compl. ¶¶ 2, 8,

23   12-13, 104.  To remedy that alleged harm, Plaintiffs seek mandatory injunctive relief requiring

24   "Defendants to enforce their Policy on Nondiscrimination and their all-comers policy" against

25   student groups that have adopted these Bylaws by "enjoining Defendants from" "register[ing]"

26   "funding" or "granting official recognition to any student organization" that has adopted these

27   Bylaws. *See id.* (Prayer for Relief ¶¶ 1-2); *see also id.* (Prayer for Relief ¶ 3(iii)) (seeking

28   injunctive relief ordering policies prohibiting funding groups that adopt similar bylaws).  But the

1   Supreme Court has made clear that such disciplinary action would violate the First Amendment.

2   In *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 831 (1995), the Supreme Court

3   held that the University of Virginia could not revoke funding from a student newspaper based on

4   the speech it elected to publish.  *Id.*  There, the Court reaffirmed the general rule—which Plaintiffs

5   ask this Court to ignore—that public universities violate the First Amendment when they "select[]

6   for disfavored treatment" student organizations based on their particular "viewpoint."  *Id.*; *see also*

7   *Koala v. Khosla*, 931 F.3d 887, 900 (9th Cir. 2019) (university cannot restrict a student group's

8   speech based on viewpoint).  Because Plaintiffs ask this Court to order Defendants to do what the

9   Constitution prohibits, their injuries are not redressable.  *See M.S. v. Brown*, 902 F.3d 1076, 1086

10  (9th Cir. 2018) (injuries not redressable when relief sought would violate Constitution); *Reeves v.*

11  *Nago*, 535 F. Supp. 3d 943, 956 (D. Haw. 2021) (same).

12       The allegations in the Complaint make clear that the Bylaws all amount to speech that falls

13  within the bounds of First Amendment protection.  Just as the Supreme Court held that parade

14  organizers have a First Amendment right to exclude participants in order to preserve a desired

15  message, *Hurley v. Irish-Am. Gay, Lesbian, & Bisexual Group of Boston*, 515 U.S. 557 (1995),

16  student organizations have First Amendment rights to decide for themselves what viewpoints and

17  speakers will be represented at an event the organization hosts.  And just as newspapers' exercise

18  of editorial judgment about what speech and which authors to publish is itself protected speech,

19  *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241 (1974), so too are law journals' decisions

20  about the law review articles they select for publication.  The Palestine 101 Bylaw likewise

21  implicates multiple First Amendment rights.  Student groups have First Amendment rights to

22  associate with outside groups and one another.  *See Healy v. James*, 408 U.S. 169, 187 (1972).

23  That includes the right of the student groups to deem certain ideas and knowledge important such

24  that exposure to them is required of its leaders, and the right of the listeners themselves to access

25  information and ideas.  *See, e.g.*, *Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*,

26  457 U.S. 853, 867 (1982) (describing First Amendment rights to speak, to listen, and to access

27  information and ideas).

28       The First Amendment protects even offensive speech.  The student group policies reflect

"pure political speech and expressive conduct, in a public setting, regarding matters of public concern, which is entitled to special protection under the First Amendment." *Felber v. Yudof*, 851 F. Supp. 2d 1182, 1188 (N.D. Cal. 2011) (citing *Snyder v. Phelps*, 562 U.S. 443, 456 (2011)).  The Supreme Court has reiterated that "[s]uch speech cannot be restricted simply because it is upsetting or arouses contempt." *Snyder*, 562 U.S. at 454, 458 (discussing protest signs at soldier's funeral reading "God Hates Fags" and "Thank God for Dead Soldiers").  The law permits expressing ideas "that in someone's eyes are misguided or even hurtful." *Id.*

Notably, the Bylaws do *not* impose any discriminatory requirements on students wishing to join nor exclude anyone from joining, unlike the policies at issue in *Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of the L. v. Martinez*, 561 U.S. 661, 672 (2010).  Nor do Plaintiffs allege that the Bylaws are tantamount to such exclusionary requirements; they instead allege only that JAFE's student members do not feel they can "fully participate" in those organizations.  Compl. ¶ 111; *see also id.* ¶ 117.  That students allegedly do not wish to participate fully in student organizations that have expressed views the students find offensive is understandable.  But because the First Amendment protects expression even of "the thought that we hate," *United States v. Schwimmer*, 279 U.S. 644, 654-655 (1929) (Holmes, J., dissenting), Defendants cannot discipline the student organizations for that expression.

And where the University *can* take action, it has done so:  It has refused to incorporate the viewpoints expressed in the Bylaws into its *own* curricular standards and therefore refuses to award academic credit from the University for participating in organizations that have adopted the Bylaws.  *See* Compl. Ex. B.  Plaintiffs fail to identify any additional relief that this Court can lawfully order that will redress their asserted injuries.  *See M.S.*, 902 F.3d at 1086.

### 2.    JAFE Has No Standing for Other, Independent Reasons

Though the Complaint's failure on redressability is independently sufficient to dismiss the entire action, the standing allegations are insufficient for other reasons specific to each Plaintiff. To start, JAFE lacks "associational" standing because it has failed to plead that *any member* has standing.  *See Associated Gen. Contractors of Am., San Diego Chapter, Inc. v. Cal. Dep't of Transp.*, 713 F.3d 1187, 1194 (9th Cir. 2013) (standing of at least one member required).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

             *(a)*      *JAFE Lacks Standing to Sue on Behalf of Its Student Members*

      JAFE's generalized allegations fail to show that *any* of its *student* members has standing. An Article III injury-in-fact must be (1) "actual or imminent, not conjectural or hypothetical" and (2) "concrete and particularized." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up). Notably, JAFE makes no allegation that any particular student member has been excluded from or elected not to join a student organization. Nor does JAFE allege that any student member has been excluded from or elected not to seek a leadership position in any student group.

      What JAFE does allege is conclusory and insufficient to plead a concrete injury. JAFE alleges that it "includes among its members UC Berkeley students" (without specifying law students) who must "choose between embracing an integral part of their Jewish identity or participating fully in student groups." Compl. ¶ 38. It repeats this "participate fully" concept in two other places. *Id.* ¶¶ 111, 133. But there are no facts alleged that explain what that means.

      Nor could additional detail help. The only policy that imposes requirements *on students*, namely the Palestine 101 Bylaw, applies only to group *leaders*. *Id.* ¶ 78. To plead an injury based on exclusion from a leadership position, a plaintiff must allege that they are "able and ready" to apply for and seek out the position, but are stymied because of the conduct they seek to challenge. *See Carney v. Adams*, 592 U.S. 53, 60 (2020). In *Carney*, the Supreme Court dismissed for lack of standing a Delaware lawyer's challenge to a judicial selection process because the lawyer had not shown he was "able and ready" to apply for the bench. *Id.* at 63-64. Though the plaintiff asserted that he was "able and ready" to apply, the Court concluded he lacked standing because he had taken no actions to prepare to apply, such as prior applications or efforts to determine likely openings. *Id.* Applying *Carney* at the pleading stage, courts have required plaintiffs to plead more than just that they "desire" the position they claim to have been denied (or disadvantaged in seeking). *See Haltigan v. Drake*, No. 5:23-CV-02437-EJD, 2024 WL 150729, at *4 (N.D. Cal. Jan. 12, 2024). They must allege actions demonstrating that they are ready and able to apply.

      Plaintiffs here make no such allegations. They do not allege, even in a cursory fashion, that their members are "able and ready" to apply for any group leadership position for which the training is required. Nor do they plead any facts that would make such an allegation plausible.

1   Plaintiffs do not even identify the student groups in which JAFE members allegedly have limited

2   their participation due to the Palestine 101 Bylaw—or in any other way.  Nor do they allege that

3   any student member refrained from joining any group, refrained from seeking a leadership role in

4   any group, or was otherwise harmed in any concrete way by the Palestine 101 Bylaw.

5          The closest JAFE comes to concrete injury is the allegation that the "Law School members

6   of JAFE are denied the ability to participate in Community Defense Project."  Compl. ¶ 111.  But

7   this allegation fails because the Complaint does not allege how any JAFE member was denied

8   access to the Community Defense Project, because the Invited Speaker Bylaw—the only Bylaw

9   the Project is alleged to have adopted—limits only which *speakers* may be invited.  *See id.* ¶ 76.

10  But even if the Project had adopted the Palestine 101 Bylaw, JAFE does not allege that any of its

11  members are "able and ready" to apply for or join that Project, such that their exclusion is

12  sufficiently "concrete" to confer standing.  *See Carney*, 592 U.S. at 501-03.

13         Finally, JAFE cannot premise standing on *undergraduate* student members.  Plaintiffs

14  allege that student organizations *at Berkeley Law* adopted the policies they challenge.  They do not

15  (and cannot) allege that undergraduates are permitted to participate in law school organizations.

16                 *(b)     JAFE Lacks Standing to Sue On Behalf of Its Scholar Members*

17         ***No Injury.***  JAFE has no standing to sue for its scholar members either.  First, JAFE has

18  not alleged that any scholar member has been affected by the Palestine 101 Bylaw.  Nor could

19  they, as that Bylaw applies only to student leaders.  Compl. ¶ 78.  Plaintiffs also fail to allege any

20  injury due to the *Berkeley Journal of Gender, Law & Justice*'s Publication Bylaw.  They do not

21  allege that any scholar member has written, much less submitted, any article appropriate for

22  publication in the Journal during the period of time when that Bylaw has been in effect.  *See id.*

23  ¶¶ 23-37.  Nor do they allege that they will imminently do so.  *See id.*  Plaintiff scholars therefore

24  lack standing to seek prospective relief related to any current or future article selection process.  In

25  *Villa v. Maricopa Cnty.*, 865 F.3d 1224, 1229 (9th Cir. 2017), for example, the Ninth Circuit held

26  that a plaintiff could not seek prospective relief based on allegations that she had previously been

27  illegally wiretapped, absent any allegation that she was likely to be illegally wiretapped in the

28  future.  *See also City of Los Angeles v. Lyons*, 461 U.S. 95, 105, 109 (1983) (same for claim

regarding past chokehold, where plaintiff could not allege likely future chokehold).

The scholar members also lack standing to challenge Defendants' response to the Invited Speaker Bylaw because they have failed to show that they are "ready and able"—but for that Bylaw—to compete for an invitation to speak to these groups. JAFE alleges only that its scholar members have expertise in subject areas that may be "of interest" to certain student groups that have adopted the Bylaw and that they would "welcome the opportunity" to speak to those groups but are precluded from doing so due to the Bylaw. *See* Compl. ¶¶ 23-37. JAFE does not allege that the student groups' process for inviting speakers is an open competitive process in the first instance such that, if the Bylaw were lifted, its scholar members could pursue speaking opportunities. Nor does JAFE allege that any of its members has communicated with any student group about that member's interest in speaking to a group. *See id.* That is insufficient to plead "readiness" or "ability to apply" under *Carney*, 592 U.S. at 62-64. Mere assertions of general qualifications and interest are insufficient to transform what would otherwise be a "generalized grievance" into an "injury in fact." *See id.*; *Haltigan*, 2024 WL 150729, at *4.

***No Causation.*** Plaintiffs also have not plausibly alleged any injury-in-fact fairly traceable to the University's response to the Invited Speaker Bylaw. *See Lujan*, 504 U.S. at 560. For any given topic of interest to the relevant student groups (e.g., corporate law), there are dozens, if not hundreds, of speakers the student groups could invite. Plaintiffs have not alleged that any JAFE member would be of unique or particular interest to the relevant groups such that the Court could infer that their non-invitation is "fairly traceable" to the University's response to the Bylaw. *See* Compl. ¶¶ 23-37; *Wash. Env't Council v. Bellon*, 732 F.3d 1131, 1142 (9th Cir. 2013) (when some other factor breaks the causal chain between the defendant's challenged conduct and the plaintiff's claimed injury, "the causal chain is too weak to support standing" (citation omitted)). In other words, if the University disciplined student groups and forced them to drop the Bylaw, there is no basis to infer that the student groups would then invite JAFE's members to speak. Nor could the Court (or the University) require any group to invite any particular speaker. *See supra* p. 6.

***Berkeley Law Faculty.*** JAFE also alleges an injury specific to two Berkeley Law faculty members, asserting a generalized "dignitary harm by being treated as a second-class citizen at

Berkeley's campus."  Compl. ¶¶ 23–24.  But free-floating allegations of dignitary harm do not

confer standing.  For example, in *Carrol v. Nakatani*, 342 F.3d 934 (9th Cir. 2003), the Ninth

Circuit found no standing to bring equal protection claims where the plaintiff alleged only that the

challenged program subjected him to racial classification but failed to "provide any evidence of

injury . . . other than the classification itself."  *Id.* at 947; *accord. Nat'l Fed'n of the Blind v. Ariz.*

*Bd. of Regents*, No. CV-09-1359-PHX-GMS, 2009 WL 3352332, at *3 (D. Ariz. Oct. 16, 2009)

(no standing based on allegations that policies were "offensive" and made the plaintiff feel

"unwelcome").  There is also a traceability bar to standing because Plaintiffs allege this dignitary

harm flows from the *student groups*' exclusion of them and similar speakers, but the student

groups are "private actors," and not part of the University.  *See Felber*, 851 F. Supp. 2d at 1186.

### 3.    The Brandeis Center Has No Standing for Other, Independent Reasons

The Brandeis Center has no standing either.  It cannot rely on JAFE members for

associational standing because none of those members has standing.  It also lacks "organizational"

standing because it has not alleged that it (a) diverted resources or (b) would have suffered injury

had it not done so.  An organization has standing only where it "alters its resource allocation to

combat the challenged practices, but not when it goes about its business as usual."  *Friends of the*

*Earth v. Sanderson Farms, Inc.*, 992 F.3d 939, 942 (9th Cir. 2021) (cleaned up).  It must plead that

it "would have suffered some other injury if it had not diverted resources to counteracting the

problem."  *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083,

1088 (9th Cir. 2010); *see also In Def. of Animals v. Sanderson Farms, Inc.*, No. 20-CV-05293-RS,

2021 WL 4243391, at *4 (N.D. Cal. Sept. 17, 2021) (dismissing complaint on this basis).

*First*, the Center has not plausibly alleged a diversion of resources sufficient to confer

standing.  In *Friends of the Earth*, the Ninth Circuit held that plaintiff had not diverted resources

by "publishing reports on and informing the public about" defendant's use of antibiotics in poultry

production because it was a continuation of what plaintiff was "already doing—publishing reports

on and informing the public of various companies' antibiotic practices."  992 F.3d at 941, 943.  So

too here.  The Center alleges that it was already actively involved in "research, education, and

legal advocacy to combat anti-Semitism on universities and college campuses."  Compl. ¶ 20.

1    This included "training [students] to understand their legal rights" and "educat[ing]" campus

2    employees about combating antisemitism.  *Id.*  Thus, the Center was "already doing" the

3    "counseling [of] aggrieved students" and faculty and "raising public awareness of the defendants'

4    conduct" that it asserts was a diversion. *See id.*; *Friends of the Earth*, 992 F.3d at 943.  The Center

5    also fails to allege that its public records request and litigation costs are distinct from its "legal

6    advocacy to combat anti-Semitism on campuses."  Compl. ¶ 20.  Even if it were distinct, because

7    the requests were allegedly intended to "understand Berkeley's violations," *id.*, they are expenses

8    incurred in anticipation of litigation and thus not actionable.  *La Asociacion de Trabajadores de*

9    *Lake Forest*, 624 F.3d at 1088 ("cannot manufacture the injury by incurring litigation costs").

10          *Second*, the Center does not identify any harm it would have suffered had it not diverted its

11   resources in response to the challenged conduct, which independently defeats standing.

12          **B.**      **Plaintiffs' Complaint Fails to State a Claim**

13          All of the claims also should be dismissed under Rule 12(b)(6) for failure to state a claim.

14                        **1.      Plaintiffs Fail to State an Equal Protection Claim**

15          Plaintiffs make no allegation that the University ever discriminated against anyone.  They

16   instead appear to allege that not prohibiting the Bylaws had a *discriminatory effect*.  Plaintiffs'

17   Equal Protection claim thus fails because they have not alleged (as they must) that *the University*'s

18   action (or inaction) was motivated by a discriminatory intent.  *Monteiro v. Tempe Union High Sch.*

19   *Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998) (citing *Washington v. Davis*, 426 U.S. 229 (1976)).

20   That animus may be shown by alleging either "direct" or "circumstantial" evidence of its

21   existence.  *Ballou v. McElvain*, 29 F.4th 413, 422 (9th Cir. 2022).  Here, Plaintiffs do neither.

22          Plaintiffs allege no direct evidence of animus by the University (as opposed to students).

23   Quite the opposite:  Plaintiffs' complaint quotes extensively from public statements by Chancellor

24   Christ and Dean Chemerinsky in which they criticize the Bylaws.  Compl. ¶¶ 94, 96, Ex. A.

25   University officials have repeatedly expressed support for Jewish students and faculty, not animus

26   against them.  *See, e.g.*, *id.* Ex. A.  To the extent Plaintiffs mean to suggest that the *student*

27   *groups'* animus may be imputed to the University, there is no basis for that inference.  The

28   University repeatedly explained that its First Amendment obligations, not antisemitism, guided its

actions—as the Complaint confirms. *See id.* ¶ 92, Exs. A, B.

Nor do Plaintiffs allege circumstantial evidence of animus, such as "a relevant comparator" who was treated better by the University despite being similar to Plaintiffs' members "in all material respects." *Ballou*, 29 F.4th at 423-24. Plaintiffs make no allegation that the University has enforced its policies differently to favor other specific affected groups. The most Plaintiffs allege is that the University "intentionally chose not to enforce the school's policies in an evenhanded way, stating that [it] would enforce school policies in similar circumstances" to the ones in this case. Compl. ¶ 108. But that unexplained, conclusory allegation is not sufficient. *See Shooter v. Arizona*, 4 F.4th 955, 960 (9th Cir. 2021) (bare allegation of differential treatment insufficient to plead discriminatory intent). The Equal Protection Claim should be dismissed.

### 2.   Plaintiffs Fail to State a Free Exercise Claim

Plaintiffs' Free Exercise claim fails for similar reasons. To allege such a claim, a plaintiff must identify "official expressions of hostility" or show that a policy is not neutral and not generally applicable. *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2421-22 & n.1 (2022) (citations omitted). Plaintiffs have done neither. As just explained, Plaintiffs have identified no official expressions of hostility—only official support—toward Jewish students. Nor do Plaintiffs allege that the University's decision not to impose discipline resulted from a non-neutral policy— rather, free speech principles that apply across the board prevent discipline for even offensive student group speech. Again, Plaintiffs plead no facts showing that the University has disciplined any other student group for offensive speech about, e.g., Palestinian students (or anyone else), but chose not to punish speech about Jewish students. Plaintiffs thus have not alleged that the University has "treat[ed] *any* comparable secular activity more favorably than religious exercise." *Tandon v. Newsom*, 593 U.S. 61, 62 (2021) (emphasis original).

### 3.   Plaintiffs Fail to State a Claim Under Section 1981

Plaintiffs' Section 1981 claim should also be dismissed. Section 1981 prohibits racial discrimination in "mak[ing] and enforc[ing] contracts." 42 U.S.C. § 1981(a). Because such claims require a showing of *intentional* racial discrimination, *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 396 (1982), here too, Plaintiffs' failure to plead any animus on the

part of the University is fatal.  *See supra* p. 12-13.  Plaintiffs' Section 1981 claim fails for a

second, independent reason:  Plaintiffs allege only that "*[r]egistered student groups* at UC

Berkeley and at the Law School routinely contract with outside speakers."  Compl. ¶ 87.  But they

make no allegation that *the University* contracts with those speakers directly.  The University

therefore cannot have discriminated in making or enforcing contracts to which it is not a party.  *Cf.*

*Gen. Bldg. Contractors*, 458 U.S. at 396 (holding no vicarious liability for Section 1981 claims).

Finally, Plaintiffs have failed to allege (as they must) that the Invited Speaker Bylaw is the but-for

cause of their members' lack of invitation to speak to any of the student groups.  *Comcast Corp. v.*

*Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1013 (2020).

### 4.    Plaintiffs Fail to State a Title VI Claim

Plaintiffs have not plausibly alleged a Title VI claim.  The University "may be held liable"

only "for intentional conduct that violates the clear terms" of Title VI.  *Barnes v. Gorman*, 536

U.S. 181, 186-87 (2002).  Thus, for the University to be found liable for an alleged hostile

environment created by the student groups, Plaintiffs must, among other requirements, plausibly

allege that (1) a University "official with 'authority to address the alleged discrimination and to

institute corrective measures on the school's behalf' must have had 'actual knowledge' of the

harassment"; and (2) the University "acted with 'deliberate indifference' to the harassment."

*Karasek v. Regents of Univ. of Cal.*, 956 F.3d 1093, 1105 (9th Cir. 2020) (quoting *Davis v.*

*Monroe Cnty. Bd. Of Educ.*, 526 U.S. 629, 642-43 (1999)).  A defendant's response to a hostile

environment is deliberately indifferent only if the response was "clearly unreasonable in light of

the known circumstances."  *Davis*, 526 U.S. at 642-43.

Even assuming arguendo, that the Bylaws created a discriminatory and hostile

environment—which Defendants dispute—Plaintiffs have alleged at least as robust of a response

by the University as those held not to be "clearly unreasonable."  In *Mandel,* for example, San

Francisco State had investigated complaints of antisemitism at protest events and wrote reports in

response detailing where administrators had erred and what corrective steps could be taken in the

future.  *Mandel v. Bd. of Trs. of Cal. State Univ.,* 2018 WL 1242067, at *3, *19 (N.D. Cal. Mar. 9,

2018).  Here, as already explained, Plaintiffs allege that the University forcefully denounced the

1   Bylaws, communicated directly to affected students expressing their support and explaining their

2   response, took action where the University could by denying academic credit, and initiated policy

3   reviews to determine how the University could better support Jewish students on campus.  *See*

4   *supra* p. 3-4; *see also* Compl. Ex. A.  Plaintiffs' central complaint is that the University took no

5   disciplinary action against the student organizations.  But as the Supreme Court explained, "it

6   would be *entirely reasonable* for a school to refrain from a form of disciplinary action that would

7   expose it to constitutional or statutory claims," as would be so here.  *Davis*, 526 U.S. at 649

8   (emphasis added); *accord Felber*, 851 F. Supp. 2d at 1188; *see supra* p. 6.  Plaintiffs therefore fail

9   to allege that the University's response was clearly unreasonable.

10          Nor have Plaintiffs stated a Title VI claim on a theory of *direct* discrimination, because

11   they allege no animus on behalf of the University.  *See Darensburg v. Metro. Transp. Comm'n*,

12   636 F.3d 511, 522 (9th Cir. 2011) (discriminatory intent required).  Again, the Complaint alleges

13   that University leaders concluded that the First Amendment precluded discipline.  *Supra* p. 3-4.

14   **V.     PLAINTIFFS SUED IMPROPER OR IMMUNE DEFENDANTS**

15          The Court should dismiss Counts I-III against The Regents of the University of California.

16   As an arm of the State, it cannot be sued under Section 1983 or Section 1981.  *Armstrong v.*

17   *Meyers*, 964 F.2d 948, 949-50 (9th Cir. 1992) (Section 1983); *Pittman v. Or., Emp. Dep't*, 509

18   F.3d 1065, 1066 (9th Cir. 2007) (Section 1981).  "UC Berkeley" and "Berkeley Law School"

19   should be dismissed entirely, as they are not legal entities distinct from The Regents.  *See Mihan*

20   *v. Regents of the Univ. of Cal.*, 2016 WL 6875911, at *3 (E.D. Cal. Nov. 21, 2016).

21   **VI.    CONCLUSION**

22          For these reasons, the Court should dismiss Plaintiffs' claims.  At minimum, the jury

23   demand should be stricken under Rule 12(f) because Plaintiffs assert only equitable claims and

24   consequently have neither a statutory nor a constitutional jury right.  *City of Monterey v. Del*

25   *Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 719 (1999) (Seventh Amendment); *id.* at 707-08

26   (Section 1983); *Williams v. Owens-Ill., Inc.*, 665 F.2d 918, 928-29 (9th Cir. 1982) (Section 1981);

27   *Smith v. Barton*, 914 F.2d 1330, 1336 (9th Cir. 1990) (Title VI).

28

1    DATED:  February 5, 2024                     MUNGER, TOLLES & OLSON LLP

2

3                                                 By:     _____*s/ Bryan H. Heckenlively*_____

4                                                        BRYAN H. HECKENLIVELY
                                                        Attorneys for Defendants
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO DISMISS COMPLAINT