1

TORRIDON LAW PLLC
John V. Coghlan (admitted *Pro Hac Vice*)
 jcoghlan@torridonlaw.com
Tara Helfman (admitted *Pro Hac Vice*)
 thelfman@torridonlaw.com
801 17th Street NW
Washington, DC 20006
Telephone: (202) 249-6900
Facsimile: (202) 249-6899

2

3

4

5

6

ELLIS GEORGE LLP
Eric M. George (CA Bar No. 166403)
 egeorge@ellisgeorge.com
David J. Carroll (CA Bar No. 291665)
 dcarroll@ellisgeorge.com
2121 Avenue of the Stars, 30th Floor
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697

7

8

9

10

11

THE LOUIS D. BRANDEIS CENTER FOR
HUMAN RIGHTS UNDER LAW
Kenneth L. Marcus (admitted *Pro Hac Vice*)
 klmarcus@brandeiscenter.com
L. Rachel Lerman (CA Bar No. 193080)
 rlerman@brandeiscenter.com
1717 Pennsylvania Ave., NW, Suite 1025
Washington, DC 20006
Telephone: (202) 559-9296

12

13

14

15

16

*Attorneys for Plaintiffs*

17

UNITED STATES DISTRICT COURT

18

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

19

20

THE LOUIS D. BRANDEIS CENTER, INC.;
JEWISH AMERICANS FOR FAIRNESS IN
EDUCATION (JAFE),

21

22

Plaintiffs,

23

vs.

24

REGENTS OF THE UNIVERSITY OF
CALIFORNIA, *et al.*

25

Defendants.

26

Case No. 3:23-cv-06133-JD

The Hon. James Donato

**PLAINTIFFS THE LOUIS D. BRANDEIS
CENTER, INC. AND JEWISH
AMERICANS FOR FAIRNESS IN
EDUCATION'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

**Hearing Date: August 8, 2024**

Trial Date:  None Set

27

28

2438151

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION...................................................................................................................1

FACTUAL BACKGROUND ................................................................................................2

LEGAL STANDARD ...........................................................................................................4

ARGUMENT ........................................................................................................................4

I.      There is no basis for dismissal under Rule 12(b)(1). ................................................4

        A.      The Title VI claim is ripe. .........................................................................4

        B.      Plaintiffs have standing to challenge the University's response to the
              Bylaws. .......................................................................................................6

II.     There is no basis for dismissal under Rule 12(b)(6). ................................................8

        A.      The FAC states a claim under Title VI for hostile environment. ...............8

        B.      The FAC states a claim for disparate treatment under Title VI. ..............12

        C.      The FAC states an Equal Protection claim.............................................12

III.    The FAC states a Free Exercise claim......................................................................13

IV.    The FAC states a § 1981 right to contract claim......................................................14

V.     The FAC states an ADA claim..................................................................................15

CONCLUSION ...................................................................................................................15

    

## <u>TABLE OF AUTHORITIES</u>

**<u>Page(s)</u>**

**<u>FEDERAL CASES</u>**

*Ballou v. McElvain*
    29 F.4th 413 (9th Cir. 2022)................................................................................12, 13

*Bayer v. Neiman Marcus Grp., Inc.*
    861 F.3d 853 (9th Cir. 2017)....................................................................................7

*Bishop Paiute Tribe v. Inyo Cnty.*
    863 F.3d 1144 (9th Cir. 2017)..................................................................................4

*Brown v. Arizona*
    82 F.4th 863 (9th Cir. 2023) (en banc)..................................................................8, 9

*Roe ex rel. Callahan v. Gustine Unified Sch. Dist.*
    678 F. Supp. 2d 1008 (E.D. Cal. 2009)..................................................................10

*Christian Leg. Soc. Ch. of the Univ. of Cal., Hastings Coll. of L. v. Martinez*
    561 U.S. 661 (2010)................................................................................................7

*Cohen v. City of Culver City*
    754 F.3d 690 (9th Cir. 2014)..................................................................................15

*Cordova v. State Farm Ins. Co.*
    124 F.3d 1145 (9th Cir. 1997)................................................................................12

*De La Cruz v. Tormey*
    582 F.2d 45 (9th Cir. 1978)....................................................................................13

*Doe ex rel. Doe v. Petaluma City Sch. Dist.*
    949 F. Supp. 1415 (N.D. Cal. 1996).......................................................................9

*Domino's Pizza, Inc. v. McDonald*
    546 U.S. 470 (2006)..............................................................................................14

*Lilah R. ex rel. Elena A. v. Smith*
    No. C 11-01860 MEJ, 2011 WL 2976805 (N.D. Cal. July 22, 2011)......................9

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist.*
    82 F.4th 664 (9th Cir. 2023) (en banc)..................................................................13

*Flores v. Morgan Hill Unified Sch. Dist.*
    324 F.3d 1130 (9th Cir. 2003)......................................................................10, 12, 13

*Food & Drug Admin. v. All. for Hippocratic Med.*
    144 S. Ct. 1540 (2024)............................................................................................7

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Gathright v. Portland, Or.*
    439 F.3d 573 (9th Cir. 2006)........................................................................................8

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*
    515 U.S. 557 (1995) ...............................................................................................7, 8

*In re Coleman*
    560 F.3d 1000 (9th Cir. 2009).....................................................................................5

*Jones v. Williams*
    791 F.3d 1023 (9th Cir. 2015)...................................................................................13

*Karasek v. Regents of Univ. of Cal.*
    500 F. Supp. 3d 967 (N.D. Cal. 2020) (*Karasek II*)........................................5, 10, 11

*Karasek v. Regents of Univ. of Cal.*
    956 F.3d 1093 (9th Cir. 2020) (*Karasek I* ) ...................................................... *passim*

*Kennedy v. Bremerton Sch. Dist.*
    597 U.S. 507 (2022) ..................................................................................................13

*L.E. v. Lakeland Joint Sch. Dist. #272*
    403 F. Supp. 3d 888 (D. Idaho 2019) .......................................................................10

*Lanier v. Fresno Unified Sch. Dist.*
    No. 1:09-CV-1779 AWI SKO, 2014 WL 346561 (E.D. Cal. Jan. 30, 2014)............12

*Leite v. Crane Co.*
    749 F.3d 1117 (9th Cir. 2014)......................................................................................4

*London v. Coopers & Lybrand*
    644 F.2d 811 (9th Cir. 1981), overruled on other grounds by *Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012) ..........................................................................14

*M.M. v. San Juan Unified Sch. Dist.*
    No. 219CV00398TLNEFB, 2020 WL 5702265 (E.D. Cal. Sept. 24, 2020) .........8, 12

*Mandel v. Bd. of Trustees of California State Univ.*
    No. 17-CV-03511, 2018 WL 1242067 (N.D. Cal. Mar. 9, 2018)...............................11

*Miami Herald Publ'g Co. v. Tornillo*
    418 U.S. 241 (1974) ....................................................................................................7

*Mohamed v. Jeppesen Dataplan, Inc.*
    614 F.3d 1070 (9th Cir. 2010) (en banc) .....................................................................4

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Monteiro v. Tempe Union High Sch. Dist.*
    158 F.3d 1022 (9th Cir. 1998) ....................................................................................8

*Myles v. W. Contra Costa Unified Sch. Dist.*
    No. 23-CV-01369-AGT, 2024 WL 1354440 (N.D. Cal. Mar. 28, 2024) ..................................10

*National Council of La Raza v. Cegavske*
    800 F.3d 1032 (9th Cir. 2015) ....................................................................................7

*Planned Parenthood of Greater Wash. & N. Idaho v. U.S. Dep't of Health & Hum.*
    *Servs.*
    946 F.3d 1100 (9th Cir. 2020) ....................................................................................6

*Ramos v. Los Rios Cmty. Coll. Dist.*
    No. CV 2:17-1458 WBS KJN, 2018 WL 623585 (E.D. Cal. Jan. 29, 2018) ..............................9

*Rosenberger v. Rector & Visitors of Univ. of Va.*
    515 U.S. 819 (1995) ....................................................................................7

*Seattle Pac. Univ. v. Ferguson*
    104 F.4th 50 (9th Cir. 2024) ....................................................................................4

*Service Women's Action Network v. Mattis*
    352 F. Supp. 3d 977 (N.D. Cal. 2018) ....................................................................................6

*Davison ex rel. Sims v. Santa Barbara High Sch. Dist.*
    48 F. Supp. 2d 1225 (C.D. Cal. 1998) ....................................................................................9

*Stones v. Los Angeles Cmty. Coll. Dist.*
    796 F.2d 270 (9th Cir. 1986) ....................................................................................14

*Susan B. Anthony List v. Driehaus*
    573 U.S. 149 (2014) ....................................................................................4

*Vance v. Spencer Cnty. Pub. Sch. Dist.*
    231 F.3d 253 (6th Cir. 2000) ....................................................................................10

*Videckis v. Pepperdine Univ.*
    100 F. Supp. 3d 927 (C.D. Cal. 2015) ....................................................................................9

*Waln v. Dysart Sch. Dist.*
    54 F.4th 1152 (9th Cir. 2022) ....................................................................................13, 14

**TABLE OF AUTHORITIES**
(continued)

Page(s)

**FEDERAL STATUTES**

42 U.S.C. § 1981 .................................................................................................6, 14

42 U.S.C. § 1983 ......................................................................................................13

42 U.S.C. § 12131 ....................................................................................................15

**RULES**

Fed. R. Civ. P. 8(a) ..................................................................................................11

Fed. R. Civ. P. 12(b)(1) .............................................................................................4

Fed. R. Civ. P. 12(b)(6) .........................................................................................4, 8

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend. I ........................................................................................2, 7, 13

**OTHER AUTHORITIES**

Asst. Sec'y for Civil Rts., Dear Colleague Letter (May 7, 2024),
    https://www.whitehouse.gov/wp-content/uploads/2024/05/colleague-202405-
    shared-ancestry.pdf ...........................................................................................11

**INTRODUCTION**

Defendants have for years failed to effectively address anti-Semitism on the University of California ("UC") Berkeley campus. So it should have surprised no one when the already-incendiary campus exploded in anti-Semitic harassment and violence immediately after October 7, 2023. Five weeks later, on November 15, 2023—after Jewish students were repeatedly assaulted and harassed on campus—UC President Drake acknowledged in formal remarks to the Regents that students "have faced outright violence" and "feel unsafe leaving their dorm rooms."

Notwithstanding President Drake's recognition of the gravity of the situation, Defendants did nothing to stop the "outright violence" and make the campus safe for its Jewish students. Emboldened by Defendants' *laissez-faire* attitude, students bent on fomenting anti-Semitism persisted in anti-Semitic actions, including assaulting Jewish students, hindering even disabled Jewish students from maneuvering across campus, and using violence to shut down an event featuring a Jewish speaker. The rioters smashed glass windows and assaulted and spat at Jewish students in attendance. Through all of this, Defendants have failed to take effective action. None of these offenders, even the most violent, has faced discipline. The First Amended Complaint ("FAC") was filed **six months after** President Drake recognized the "outright violence" on campus. It is thus by no means "unripe." Defendants do not contest these facts. Instead, they engage in a bold misreading of both the allegations and the procedural status of their Motion.

*First*, Defendants paint the suit as one alleging a series of discrete incidents. Wrong—it is a suit alleging Defendants' failure to respond in any meaningful way to a longstanding hostile environment. The FAC alleges that Defendants have failed to provide any reasonable response to the anti-Semitism on campus (despite acknowledging that they **have** an anti-Semitism problem), as demonstrated by the fact that, in every month leading up to the filing of the FAC, anti-Semitism on campus has gotten markedly worse. The FAC also complains of Defendants' decision to selectively enforce its policies to the detriment of Jews.

*Second,* Defendants mischaracterize the FAC as demanding specific forms of relief, which, Defendants say, would restrict free speech and "transform" the Court into a campus administrator. Mot. 2. Wrong again. The anti-Semitic conduct on campus is not protected speech, and Defendants

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

have acknowledged they can act to police the former without violating the First Amendment. While the law protects universities from judicial interference with campus administration by allowing the university to select the means to curtail a hostile environment, it does not permit universities to select responses that are demonstrably ineffective.

*Third,* Defendants argue that the case is "unripe" because they still have not "had time to conclude a reasonable investigation," Mot. 6, but that only underscores Defendants' prolonged deliberate indifference. The problem should have been vigorously addressed years ago, but certainly no later than last November, when President Drake recognized the severity of the problem. It was not. Defendants' assertion they should ***now*** be trusted to fix the problem only adds insult to injury.

*Finally*, by urging the Court to find that their minimal responses satisfy the law, Defendants ignore well-established authority holding that responses that cannot reasonably be expected to address a hostile environment—including responses that have already demonstrably failed—are inadequate. The FAC contains allegations more than sufficient to satisfy the duty to plead what is widely recognized to be a fact-based inquiry, rarely suitable for resolution on a motion to dismiss.

## FACTUAL BACKGROUND

UC Berkeley's anti-Semitism crisis is not, as Defendants argue, late-breaking news. For years, UC Berkeley administrators have acknowledged the spread of anti-Semitism on campus and for years they have failed to take meaningful action against it. A 2016 study found that over a third of the students surveyed perceived the environment as hostile to Jews. FAC ¶ 7. In 2017, Berkeley already ranked fifth in a Jewish publication's list of the 40 worst colleges for Jewish students. FAC ¶ 7. By 2022, hostility toward Jews reached new heights when Law Students for Justice in Palestine ("LSJP") proposed Bylaws that demonize and ostracize Jews whose religious and/or ethnic identity is inextricably tied to the Jewish State—namely, the vast majority of Jews on campus. *Id.* ¶¶ 118, 121, 131. These Bylaws have now been adopted by more than two dozen registered law student organizations, in flagrant violation of the University's all-comers and other anti-discrimination policies. *Id.* ¶¶ 121, 137. Defendants acknowledge that the Bylaws are anti-Semitic, but have done nothing to take meaningful action. *Id.* ¶¶ 128, 147-149.

The University's tolerance of anti-Semitism helped fuel an anti-Semitic environment that lit

up last fall after the October 7 Hamas attacks. Jewish students were assaulted. *Id.* ¶¶ 109, 112. Jewish professors were harassed and received death threats. *Id.* ¶¶ 111, 114. A Jewish student's home was broken into, with a note left saying "Fuck Jews. Free Palestine from the river to the sea." *Id.* ¶ 115. An Israeli professor was told not to return, given the "enormous pressure … not to bring anybody from Israel . . .". *Id.* ¶ 116. Jewish students felt unsafe leaving their rooms, as the University acknowledged in November. *Id.* ¶ 117.

Things got worse from there. On February 26, 2024, Bears for Palestine, a Berkeley student organization, advertised its plans to violently shut down a speaking engagement organized by Jewish groups. *Id.* ¶¶ 69-71. Students from this group made good on their promise by descending on the event, forcing their way into the venue by shattering a glass window, storming through doors, and assaulting Jewish students. *Id.* ¶¶ 69-80. Despite being fully aware of Bears for Palestine's intent to shut down the event, Defendants did nothing to effectively prevent the riot or deter future violence. *Id.* ¶¶ 83, 142. Nor did they take action against Bears for Palestine. *Id.*

Also in February, another registered student organization began blocking access to the main campus entryway, Sather Gate. *Id.* ¶ 93. While all students—including disabled students—are impeded, Jews have had it worse. They have been harassed as they pass through the Gate, and are followed and filmed by protestors seeking to "identify[] Zionists." *Id.* ¶ 94. A legally blind Jewish student, unable to pass through the gate without risking injury, was told by the University to take a more difficult path. *Id.* ¶ 96. The University acknowledged that the blockade violated its policies, but refused to act, even failing to send monitors after it promised to do so. *Id.* ¶¶ 99-100.

On March 27, 2024, Law School Dean Chemerinsky (who is Jewish) announced he would be hosting a series of dinners for graduating law students. *Id.* ¶ 84. Before the first dinner, LSJP—the same group responsible for the Bylaws—posted a blatantly anti-Semitic caricature on social media of the Dean with a bloody fork and knife in his hands, reading "No Dinner With Zionist Chem While Gaza Starves." *Id.* ¶¶ 85-86. A group of LSJP students then disrupted the dinner despite repeated requests to leave. *Id.* ¶¶ 88-89. The University took no action against LSJP. *Id.* ¶ 92.

In April 2024, student groups led by LSJP began occupying the area outside Sproul Hall, a building that houses the registrar, campus police, and financial aid. *Id.* ¶¶ 101, 106. As many as 175

tents were placed outside the building, impeding access. *Id.* ¶¶ 101, 102. Jews were harassed as they approached the building. A student wearing a Star of David was surrounded by masked demonstrators saying: "Zionists can go back to Europe … Go back to freaking Germany." *Id.* ¶ 102. Two Jewish members of Plaintiff JAFE were punched in the face and head. *Id.* ¶¶103-05. The University did nothing to stop it. *Id.* ¶ 107.

**LEGAL STANDARD**

Under Rule 12(b)(6), the Court must construe the complaint liberally and draw all reasonable inferences in favor of the complaint's sufficiency. *Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1073 (9th Cir. 2010) (en banc). Rule 12(b)(1) motions facially challenging standing are judged by the same standard. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

**ARGUMENT**

**I.     There is no basis for dismissal under Rule 12(b)(1).**

    **A.     The Title VI claim is ripe.**

Defendants' Title VI ripeness argument misapprehends both the law and the facts. Ripeness has two facets: constitutional and prudential. *Bishop Paiute Tribe v. Inyo Cnty.*, 863 F.3d 1144, 1153-54 (9th Cir. 2017). Constitutional ripeness "coincides squarely with standing's injury in fact prong," meaning that the case must present issues that are 'definite and concrete, not hypothetical or abstract.'" *Id*. at 1153 (citation omitted). Defendants do not contest that Plaintiffs have pled injury-in-fact. Nor could they, in light of the extensive allegations of harassment and violence. There is nothing "hypothetical" about screaming for help as protesters smash through the door. FAC ¶¶ 71-78; *see also* ¶¶ 2, 3, 18, 28, 30, 80, 105, 109, 112 (describing physical assaults.).

Instead, Defendants rely on the factors associated with prudential ripeness, Mot. 5-6, a doctrine the Supreme Court has "questioned" and noted is in "some tension" with the "virtually unflagging" obligation of a federal court to decide cases within its jurisdiction." *Seattle Pac. Univ. v. Ferguson*, 104 F.4th 50, 66 (9th Cir. 2024) (discussing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014)). Even assuming the continuing validity of the doctrine, this case is ripe.

Prudential ripeness considers "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Bishop Paiute*, 863 F.3d at 1153-54 (citations

omitted). Defendants suggest that this case is not fit for judicial decision because it "the law" permits them "substantially more time" to respond, relying on *Karasek v. Regents of Univ. of Cal.*, 956 F.3d 1093, 1106 (9th Cir. 2020) (*Karasek I*). Mot. 6. *Karasek* is inapposite. First, it says nothing about ripeness; the Court did not suggest that there was any Article III impediment to hearing the case. Second, the case does not establish any bright line rule on timing. Instead, the Ninth Circuit determined that lengthy investigations of one-off, unrepeated instances of sexual harassment were reasonable, where plaintiffs did not claim ongoing harassment. *Karasek I,* 956 F.3d at 1108-12. And the Court **reversed** dismissal of the claim that "UC maintained a 'policy of deliberate indifference' to sexual misconduct' that 'created a sexually hostile environment for [Appellants]' and heightened the risk" of future abuse. *Karasek I,* 956 F.3d at 1111–12. This is the component of *Karasek* that is relevant to this FAC. *See also Karasek v. Regents of Univ. of Cal.*, 500 F. Supp. 3d 967, 988 (N.D. Cal. 2020) (*Karasek II*) (finding on remand that plaintiffs stated a claim). *Karasek* supports Plaintiffs' position, not Defendants'.

As for whether Defendants have had "an opportunity to respond," the FAC alleges anti-Semitic activity on campus long before the filing, including studies showing serious anti-Semitism at Berkeley in 2016 and 2017. FAC ¶ 7; *see also Karasek I*, 956 F.3d at 1113 (highlighting a study that "details deficiencies in UC's approach to sexual-misconduct complaints"). In 2022, Jewish law students and scholars were excluded and stigmatized by the Bylaws. FAC ¶¶ 9-10, 131-137. Violence and harassment on campus exploded following October 7. *Id.* ¶¶ 2, 3, 18, 28, 71-82, 102-105, 109, 112. By November 15, 2023, students were afraid to leave their dorm rooms. *Id.* ¶117.

Defendants also cite *In re Coleman*, 560 F.3d 1000, 1009 (9th Cir. 2009), arguing this case is prudentially unripe because "further factual development would aid the court's consideration." Mot. 5. But *Coleman* held the claim there **was ripe**. Where the parties to a case have an ongoing relationship, it is always possible that their dispute will be resolved extrajudicially. That does not make such cases unripe.

As for lack of hardship, Defendants argue that "the academic year is over and there is no allegation that the encampment or Sather Gate protest will continue." Mot. 6. But the FAC alleges that the hostility towards Jews—which is greater than simply "the encampment or Sather Gate

protest"—has continued from one school year to the next. Unless Defendants dramatically change their response to the hostile environment, there is no basis to hope that 2024 -2025 will be better.

Finally, Defendants ask the Court to "sever" recent events from this case. *Id.* That makes no sense. When, as here, harassment is ongoing, severance of recent events would result in seriatim lawsuits, which is hardly consistent with any notion of judicial economy.

**B.    Plaintiffs have standing to challenge the University's response to the Bylaws.**

Defendants' assertion that Plaintiffs lack standing as to the Bylaws misapprehends the nature of Plaintiffs' claims. Plaintiffs allege both a hostile environment and unequal treatment based on the University's failure to enforce its policies in an evenhanded manner to the detriment of Jews. But, other than the § 1981 claim brought by JAFE's legal scholars, Plaintiffs' claims do not require proof of standing for ***each*** of the individual acts that are alleged, as long as the allegations collectively demonstrate a hostile environment and disparate treatment. *See Service Women's Action Network v. Mattis*, 352 F. Supp. 3d 977, 986 (N.D. Cal. 2018) (organization had standing to challenge policy of segregated training that "perpetuate[d] a culture that . . . excludes women" even though organization's members were not in that training because members "are experiencing the harm . . . from the sexist culture . . . that arises from segregated basic training.").

That said, even if standing were required to specifically challenge the Bylaws, Plaintiffs could do so here.

***Scholar Members of JAFE.*** The Scholar Members have standing to directly challenge Defendants' response to the Bylaws because "the inability to compete on an equal footing in [a] bidding process' is sufficient to establish injury-in-fact." *Planned Parenthood of Greater Wash. & N. Idaho v. U.S. Dep't of Health & Hum. Servs.*, 946 F.3d 1100, 1108 (9th Cir. 2020) (quotation omitted). The FAC details the specific qualifications of each Scholar Member to speak to student organizations that have adopted the Bylaws, their desire to do so, and their inability to compete for the opportunity to do so due to the Bylaws. FAC ¶¶ 33-49. Defendants argue that groups may not have invited the JAFE members to speak even if the Bylaws were dropped. Mot. 7. But it is the inclusion of unlawful criteria preventing them from competing in the first place that gives rise to the injury. *Planned Parenthood,* 946 F.3d at 1108. In addition, they suffer dignitary harm. *See, e.g.,*

1    *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 874 (9th Cir. 2017) (recognizing dignitary harm).

2        ***Law Student Members of JAFE.*** Jewish law students likewise assert injury as a result of

3    being constructively banned from student groups at a time where "extracurricular programs are …

4    essential parts of the educational process." *Christian Leg. Soc. Ch. of the Univ. of Cal., Hastings*

5    *Coll. of L. v. Martinez*, 561 U.S. 661, 686 (2010); *see also* FAC ¶ 131 ("No organization has said

6    'Jews are not welcome,' but in practice, these by-laws and the training say exactly that."). Students

7    lose the ability to participate in networks that provide both opportunities for career advancement

8    and the support that an affinity group provides. *Id.* ¶¶ 132–35. And they suffer dignitary harm,

9    because they are ostracized on the basis of their religious and ethnic identity, which is inextricably

10   tied to the Jewish State. *Bayer* 861 F.3d at 874.[1]

11       ***The Brandeis Center***. The Brandeis Center has organizational standing because Defendants

12   have "perceptibly impaired [Brandeis's] ability to provide counseling" to other students, limiting its

13   bandwidth, thus "directly affect[ing] and interfer[ing]" with one of its "core" activities. FAC ¶ 25.

14   *See Food & Drug Admin. v. All. for Hippocratic Med.*, 144 S. Ct. 1540, 1564 (2024).

15       ***Redressability***. Without disputing that the Bylaws are anti-Semitic, Defendants argue that

16   they cannot do anything because the Bylaws are "speech protected by the First Amendment." Mot.

17   7. But the Bylaws prohibit speakers and authors not based on the ***content*** of their message but

18   because of ***who they are***—Jews. FAC ¶¶ 8-10, 125-127. The Bylaws prohibit speakers from

19   speaking ***on any topic*** based on their identity. Thus, the cases relied on by Defendants are inapposite,

20   Mot. 7-8, because they concern attempted regulation of ***content***. *E.g., Rosenberger v. Rector &*

21   *Visitors of Univ. of Va.*, 515 U.S. 819, 831 (1995); *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S.

22   241, 256 (1974). Here, Plaintiffs do not seek to control content. *Hurley v. Irish-Am. Gay, Lesbian*

23   *& Bisexual Grp. of Bos.*, 515 U.S. 557 (1995), is similarly unhelpful, as this is not a case about

24   compelled speech and there is no risk that views of any Zionists "could be mistaken" for those of

25   _____

26   [1] Of course, specific allegations of harm to specific students are not needed at the pleading stage
     when, as here, "it is "relatively clear, rather than merely speculative, that one or more members

27   have been or will be adversely affected by a defendant's action, and where the defendant need not
     know the identity of a particular member to understand and respond to an organization's claim of

28   injury." *National Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015).

the organizations. *Gathright v. Portland, Or.*, 439 F.3d 573, 578 (9th Cir. 2006) (discussing *Hurley*).

Defendants acknowledge that they ***can*** punish exclusions made on the basis of race, religion, or other protected status. *See* FAC. ¶ 147 ("[I]t would be punishable if they discriminated based on religion (or race or sex … in inviting speakers.")"; *id.* ¶ 148. These claims are readily redressable through enforcement of the existing all-comers policy. *Id.* ¶ 64.

## II.     There is no basis for dismissal under Rule 12(b)(6).

### A.     The FAC states a claim under Title VI for hostile environment.

A plaintiff states a Title VI claim for hostile environment against a recipient of federal funds when: (1) the institution's environment is hostile to the protected class; (2) the institution had notice of the problem; and (3) it "failed to respond adequately to redress" the hostile environment. *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1033 (9th Cir. 1998) (citation omitted). A school violates its Title VI duty when its response manifests "deliberate indifference." *Id.* at 1034. "Unlike claims under the Equal Protection Clause which must plead intentional discrimination, Title VI claims need only allege that the defendant is engaging in discrimination, although a showing of intent is necessary at trial." *Id.* at 1026.

Defendants do not challenge the adequacy of the allegations of hostile environment or notice. They challenge only whether Plaintiffs have plausibly alleged deliberate indifference.[2]

A "deliberately indifferent" response is one that is "clearly unreasonable in light of the known circumstances." *Brown v. Arizona*, 82 F.4th 863, 881 (9th Cir. 2023) (en banc). "'Clearly unreasonable' responses take many forms." *Id.* (citation omitted). When the risk of Title VI violations is "obvious," the "failure to remedy that risk constitute[s] an official policy of deliberate indifference . . ." *Karasek I*, 956 F.3d at 1113. A response that "could not have reasonably been expected to remedy the harassment … amounts to an 'official decision not to end discrimination.'" *M.M. v. San Juan Unified Sch. Dist.*, No. 219CV00398TLNEFB, 2020 WL 5702265, at *9 (E.D. Cal. Sept. 24, 2020) (quoting *Karasek I*, 956 F.3d. at 1105).

---

[2] Courts have articulated the elements of a Title VI claim using different language over the years, in some cases highlighting the factors of control and causation, neither of which are challenged on this motion either.

The question of whether a defendants' response to a particular hostile environment is unreasonable is inherently fact-bound. Courts regularly conclude that deliberate indifference is an issue that "should be resolved at the summary judgment stage on a fully-developed factual record." *Lilah R. ex rel. Elena A. v. Smith*, No. C 11-01860 MEJ, 2011 WL 2976805, at *6 (N.D. Cal. July 22, 2011); *see also id.* ("[W]hether [a defendant's] response amounted to deliberate indifference to the alleged discrimination is a fact-driven inquiry."); *Ramos v. Los Rios Cmty. Coll. Dist.*, No. CV 2:17-1458 WBS KJN, 2018 WL 623585, at *2 (E.D. Cal. Jan. 29, 2018) (deliberate indifference generally too fact-intensive for determination on pleadings). And even at the summary judgment stage after discovery, if the plaintiff offers evidence on deliberate indifference, the question is normally left to the jury, so long as a "reasonable factfinder" could conclude that the response to discrimination was "clearly unreasonable." *Brown*, 82 F.4th at 882-83; *see also Videckis v. Pepperdine Univ.*, 100 F. Supp. 3d 927, 935 (C.D. Cal. 2015) (allegations that "school officials failed to take concrete steps to address the issues … go to the ultimate strength of Plaintiffs' allegations rather than whether they support any plausible claim for harassment and deliberate indifference at all").

Even at this early stage, Plaintiffs' allegations of deliberate indifference go far beyond plausibility. For example, the FAC alleges that Defendants (i) know who the perpetrators are, (ii) have official policies requiring the University to take action, but (iii) have failed to act. FAC ¶¶ 142-145; *see also Doe ex rel. Doe v. Petaluma City Sch. Dist.*, 949 F. Supp. 1415, 1426 (N.D. Cal. 1996) (school district's failure to "develop ***and implement*** policies" led to a hostile environment) (emphasis added). This inaction has only made things worse.

Defendants try to excuse their inaction by selectively choosing specific incidents and asking the Court to assess—in a vacuum—whether the response to each was reasonable. But this approach makes no sense in the context of a hostile environment claim, where a constant drumbeat of hostile incidents presents a different problem—and requires a more serious response—than a series of unrelated incidents. *See Davison ex rel. Sims v. Santa Barbara High Sch. Dist.*, 48 F. Supp. 2d 1225, 1229 (C.D. Cal. 1998) ("To determine whether conduct constitutes a hostile environment, one looks to 'the totality of the circumstances.'"). For that reason, "[i]n evaluating hostile environment claims,

1  courts … reject[] the disaggregation of the allegations and require[] only that the alleged incidents

2  cumulatively have resulted in the creation of a hostile environment." *L.E. v. Lakeland Joint Sch.*

3  *Dist. #272*, 403 F. Supp. 3d 888, 900 (D. Idaho 2019) (citation omitted).

4      Defendants' disaggregation approach also ignores the principle that courts assessing the

5  adequacy of a response must consider whether that same response has already been shown to be

6  ineffective. That is, a "failure to take any further steps once [a defendant] knew his remedial

7  measures were inadequate supports a finding of deliberate indifference." *Flores*, 324 F.3d at 1135–

8  36. *See also Vance v. Spencer Cnty. Pub. Sch. Dist.*, 231 F.3d 253, 262 (6th Cir. 2000) ("Where a

9  school district has actual knowledge that its efforts to remediate are ineffective, and it continues to

10 use those same methods to no avail, such district has failed to act reasonably in light of the known

11 circumstances."). For this reason, Defendants cannot point to their efforts to "condemn[ ] the activity

12 as antisemitic," Mot. 12, because those condemnations are a classic example of continuing to do

13 something that is not working. Moreover, no particular response—including referring a matter to

14 law enforcement—negates a showing of deliberate indifference. *See Myles v. W. Contra Costa*

15 *Unified Sch. Dist.*, No. 23-CV-01369-AGT, 2024 WL 1354440, at *7 (N.D. Cal. Mar. 28, 2024)

16 ("Reporting . . . to law enforcement is also not, at the pleading stage, dispositive of a lack of

17 deliberate indifference").

18     Defendants also err in arguing that there are bright line tests for deliberate indifference. To

19 the contrary, "'[d]eliberate indifference will often be a fact-laden question,' for which bright lines

20 are ill-suited." *Roe ex rel. Callahan v. Gustine Unified Sch. Dist.*, 678 F. Supp. 2d 1008, 1035 (E.D.

21 Cal. 2009) (citation omitted). As discussed above, Defendants rely for their "bright lines" on

22 *Karasek*, where the court considered the response to three separate, individual complaints, each

23 alleging a single, discrete incident of ***past*** sexual misconduct. *Karasek I,* 956 F.3d at 1105-11. But

24 the ruling as to the acceptable timeframe for investigating ***past*** conduct cannot simply be generalized

25 to this entirely different claim of ***ongoing*** harassment. And when the Court turned from the claims

26 of individual allegations of wrongdoing to the claim of hostile environment—also an ***ongoing***

27 harm—the court ***reversed*** the dismissal. *Id.* at 1114. *See also Karasek II*, 500 F. Supp. 3d at 988

28

(finding on remand that plaintiffs adequately alleged deliberate indifference).[3] Here, too, Plaintiffs challenge not the lack of a ***specific*** response by Defendants, but their ***general*** policy of deliberate indifference towards anti-Semitic incidents and ongoing harm.

Defendants' reliance on *Mandel v. Bd. of Trustees of California State Univ.*, No. 17-CV-03511, 2018 WL 1242067 (N.D. Cal. Mar. 9, 2018), fails for similar reasons. There, too, the court considered two ***discrete*** events, "standing alone," to decide that those events did not state a claim for a hostile environment. *Id.* at *18. In so doing, the court refused to consider other "background" allegations concerning "vaguely identified events and assertions." *Id.* But here the FAC provides detailed allegations of numerous events that are both recent and specific as to time and place. Such allegations easily satisfy the pleading standard required by Fed. R. Civ. P. 8(a).

Defendants also resort to mischaracterizing the pleadings. With respect to the February 26 riot, Defendants assert that "the FAC does not allege facts to show that Bears for Palestine was responsible for ***any*** conduct that violated University policy." Mot. 11. But Bears for Palestine made no secret of their plan to violently shut down the speaking engagement, posting on social media that they would "not allow for this event to go on." FAC ¶ 70. Violently shutting down a speech violates university policies, *see* FAC ¶¶ 66-67, and the law.

The Department of Education, whose Dear Colleague Letters are "useful" as "persuasive" documents that "set[] forth the DOE's considered views," *Karasek I,* 956 F.3d at 1108, has found circumstances akin to those at Berkeley would warrant the opening of a Title VI investigation. *See* U.S. Dep't of Educ., Office of the Asst. Sec'y for Civil Rts., Dear Colleague Letter (May 7, 2024), https://www.whitehouse.gov/wp-content/uploads/2024/05/colleague-202405-shared-ancestry.pdf, at 8–9 (providing examples that would warrant an investigation, including (i) a university's failure to take meaningful action in response to a blockade, (ii) a blockade that prevents access to a university building with protestors harassing Jews, and (iii) a college that "experiences widespread incidents of harassment in one semester," including Jewish students being spit at, called antisemitic

---

[3] *Karasek* was also decided after plaintiffs had had the opportunity to base their amended complaint on facts learned in discovery. *See Karasek II,* 500 F. Supp.3d at 976.

slurs, and being prevented from attending class because protestors state that "no Zionists can pass through"). In fact, the Department did open an investigation into Berkeley. FAC ¶ 16.

### B.    The FAC states a claim for disparate treatment under Title VI.

To prevail on a Title VI disparate treatment claim, a plaintiff must establish a prima facie case of discrimination by presenting evidence that "gives rise to an inference of unlawful discrimination." *Lanier v. Fresno Unified Sch. Dist.*, No. 1:09-CV-1779 AWI SKO, 2014 WL 346561, at *4 (E.D. Cal. Jan. 30, 2014) (quoting *Cordova v. State Farm Ins. Co.*, 124 F.3d 1145, 1148 (9th Cir. 1997). As discussed in section III, *infra,* the FAC alleges that Defendants fail to enforce campus policies when the parties injured by the violation of those policies are Jews. FAC ¶¶ 68, 138-155. Defendants do not take issue with the differential treatment allegations under Title VI, other than to argue that Plaintiffs do not allege "animus." Mot. 8, 10. But "animus" is not a requirement under Title VI, and the cases cited by Defendants only restate the need to show intent. Intent has been adequately alleged, as discussed above.

### C.    The FAC states an Equal Protection claim.

Defendants acting under color of state law violate the equal protection clause where they "fail[] to enforce … disciplinary, anti-harassment and anti-discrimination policies to prevent physical and emotional harm to the plaintiffs." *Flores*, 324 F.3d at 1135. In *Flores*, the Ninth Circuit affirmed the denial of summary judgment where "[t]he plaintiffs presented evidence . . . that they were harassed for years and that the defendants failed to enforce the[] policies to protect them." *Id.* Here, the FAC points to numerous policies and alleges that, "where the protected category is Jewish identity, the anti-discrimination policies have not been enforced." FAC ¶ 68.

Defendants argue here that Plaintiffs fail to plead "direct evidence of animus by the University," pointing to public statements by the University "condemning" anti-Semitic conduct. Mot. 8 (emphasis omitted). But, as discussed above, this type "minimalist response . . . could not have reasonably been expected to remedy the harassment" *San Juan Unified Sch. Dist.*, 2020 WL 5702265, at *7 (quoting *Karasek I*, 956 F.3d at 1105). Nor must Plaintiffs allege any "relevant comparator" who was treated better. Mot. 8 (quoting *Ballou v. McElvain*, 29 F.4th 413, 423 (9th Cir. 2022)). Even on summary judgment, the existence of a comparator "is only one way" to prove

a disparate treatment claim; "[w]ith or without comparator evidence, courts determine whether a government action was motivated by discriminatory purpose by engaging in the "'sensitive inquiry into such circumstantial and direct evidence of intent as may be available.'" *Ballou*, 29 F.4th at 425 (quoting *De La Cruz v. Tormey*, 582 F.2d 45, 59 (9th Cir. 1978)). Where Plaintiffs allege "they were harassed for years and that the defendants failed to enforce these policies to protect them," they plausibly allege that "plaintiffs were treated differently." *Flores*, 324 F.3d at 1135.[4]  It is entirely plausible at the pleading stage that Defendants have policies, that they intend to enforce them, and that their failure to enforce the policies here was differential treatment.

## III.    The FAC states a Free Exercise claim.

A free exercise claim under § 1983 must allege "that the government action in question substantially burdens the person's practice of her religion." *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015). Defendants "may not act in a manner hostile to … religious beliefs ... on even subtle departures from neutrality." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist.,* 82 F.4th 664, 686 (9th Cir. 2023) (en banc) (internal quotations omitted). When a policy is "enforced in a selective manner" and burdens religious practice, it is "not generally applicable," and is a violation of the First Amendment unless Defendants can satisfy strict scrutiny. *Waln v. Dysart Sch. Dist.*, 54 F.4th 1152, 1161 (9th Cir. 2022); *see also id.* at 1159 ("General applicability requires, among other things, that the laws be enforced evenhandedly.").

By failing to evenhandedly enforce Berkeley's anti-discrimination and all-comers policies, Defendants have burdened Plaintiffs' "sincere religious practice pursuant to a policy that is not 'neutral' or 'generally applicable,'" in violation of Free Exercise. *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 507-08 (2022). Contrary to Defendants' assertions, Plaintiffs identify a nonneutral policy attributable to the University, namely the failure of the University to enforce its policies in an even-handed manner. For many JAFE members who are practicing Jews, Zionism is a core tenet of their religious identity. FAC ¶¶ 169-174. The University has failed to enforce its policies to ensure

---

[4] Plaintiffs *have* alleged the existence of such comparators. Dean Chemerinsky made it clear Defendants *would* enforce the University's policies against attempts to exclude speakers from other religions, races, or national origins. FAC ¶ 147.

that these JAFE members can pray or express this fundamental tenet of their religious identity free of harassment and discrimination. JAFE members who are practicing Jews who refuse to conceal their identity are harassed, shunned, and disrupted while praying. *Id.* ¶¶ 6, 29, 102, 104, 110, 169, 173. Similarly, legal scholars who are practicing Jews, and for whom Zionism is a tenet of their religious faith, are denied the opportunity to speak to organizations that adopted the Bylaws. These scholars are excluded on the basis of their sincerely held religious beliefs (and pressured to hide their religious beliefs if they wish to be invited). *Id.* ¶¶ 170, 172–173. The University has refused to enforce its own policies which would protect against such religious discrimination. *Id.* ¶¶ 166, 169, 174, 186–88. Defendants do not allege the existence of a compelling interest. Instead, they argue that the "University cannot be held liable for the actions of … private actors" who are creating an "allegedly hostile environment." Mot. 9. But their decision not to enforce their policies is what burdens the religious practice of Jews. *Waln*, 54 F. 4th at 1161.

## IV.    The FAC states a § 1981 right to contract claim.

Section 1981(a) guarantees a person's right "to make and enforce contracts" without regard to race. 42 U.S.C. § 1981(a). "The term 'make and enforce contracts' includes . . . the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* § 1981(b). To be actionable, a contractual relationship need not already exist, "because § 1981 protects the would-be contractor along with those who already have made contracts." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006). "[A] plaintiff must prove that the defendant acted against him with discriminatory intent." *Stones v. Los Angeles Cmty. Coll. Dist.*, 796 F.2d 270, 272 (9th Cir. 1986).

The allegations in the FAC demonstrate that the University has intentionally interfered with the ability of JAFE scholars to contract. As Plaintiffs allege, those scholars "are ready, able, and willing to enter into a contract to present to student organizations at Berkeley," but "[b]ecause of their Jewish ancestral heritage and related support for Israel, and because of the Exclusionary Bylaw, they cannot do so." FAC ¶ 179. Defendants wrongly suggest that they may escape liability because Plaintiffs "make no allegation that *the University* contracts with those speakers," Mot. 9, but it is the University's *interference* with the rights of JAFE scholars to contract that creates liability. *See London v. Coopers & Lybrand*, 644 F.2d 811, 818 (9th Cir. 1981), overruled on other grounds by

*Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012) ("By providing an adverse employment reference with the intent to discriminate on racial grounds, a former employer actively interferes with a job applicant's right to enter into an employment contract."). Plaintiffs also allege intent. The FAC alleges that Defendants recognized the Bylaws were anti-Semitic, *id.* ¶ 128, and that excluding speakers on the basis of race or religion would be sanctionable, *id.* ¶ 147-48. But Defendants have not sanctioned or stopped groups from excluding speakers. *Id.* ¶ 180.

**V.     The FAC states an ADA claim.**

To prevail under Title II of the ADA, 42 U.S.C. § 12131, a plaintiff must show that "(1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) this exclusion, denial, or discrimination was by reason of his disability." *Cohen v. City of Culver City*, 754 F.3d 690, 695 (9th Cir. 2014).

Because of the blockade at Sather Gate and the occupation at Sproul Hall, JAFE Member #1, a disabled student, has been "excluded from participation" and been "denied the benefits" of Berkeley's "services, programs, [and] activities." *Id.*; FAC ¶ 96.  He is physically obstructed like other disabled students.  *See Cohen*, 754 at 700 ("Obstructed sidewalks exclude disabled persons from ordinary communal life and force them to risk serious injury to undertake daily activities."). And he is targeted for harassment as a Jew, which significantly adds to his physical difficulties in making his way through campus.  FAC ¶ 96.

Defendants' outrageous suggestion that this student can just take a more treacherous path to evade his harassers, Mot. 15, illustrates the callous disregard they have for even disabled Jewish students. It also illustrates Defendants' stunning disregard for the facts as pleaded—and for the rules of law that prevail at the pleading stage. Defendants' arguments would push the envelope even if their motion were one for summary judgment, instead of dismissal on the pleadings, where Plaintiffs' factual allegations must be taken as true, and all inferences drawn in their favor.

**CONCLUSION**

For all of the reasons discussed above, Defendants' motion should be denied.

DATED:  July 15, 2024                    Respectfully submitted,

By:  _____/s/ John V. Coghlan_____
         JOHN V. COGHLAN

         TORRIDON LAW PLLC
         John V. Coghlan (admitted *Pro Hac Vice*)
            jcoghlan@torridonlaw.com
         Tara Helfman (admitted *Pro Hac Vice*)
            thelfman@torridonlaw.com
         801 17th Street NW
         Washington, DC 20006
         Telephone: (202) 249-6900
         Facsimile: (202) 249-6899

         ELLIS GEORGE LLP
         Eric M. George (CA Bar No. 166403)
            egeorge@ellisgeorge.com
         David J. Carroll (CA Bar No. 291665)
            dcarroll@ellisgeorge.com
         2121 Avenue of the Stars, 30th Floor
         Los Angeles, California 90067
         Telephone: (310) 274-7100
         Facsimile: (310) 275-5697

         THE LOUIS D. BRANDEIS CENTER FOR
         HUMAN RIGHTS UNDER LAW
         Kenneth L. Marcus (admitted *Pro Hac Vice*)
            klmarcus@brandeiscenter.com
         L. Rachel Lerman (CA Bar No. 193080)
            rlerman@brandeiscenter.com
         1717 Pennsylvania Ave., NW, Suite 1025
         Washington, DC 20006
         Telephone: (202) 559-9296

         *Attorneys for Plaintiffs The Louis D. Brandeis*
         *Center, Inc. and Jewish Americans for Fairness in*
         *Education (JAFE)*