HAILYN J. CHEN (State Bar No. 237436)
hailyn.chen@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071
Telephone:   (213) 683-9100
Facsimile:   (213) 687-3702

BRYAN H. HECKENLIVELY (State Bar No. 279140)
bryan.heckenlively@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, California 94105
Telephone:   (415) 512-4000

*Attorneys for Defendants*

\* Additional counsel listed on following page.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| THE LOUIS D. BRANDEIS CENTER, INC.; JEWISH AMERICANS FOR FAIRNESS IN EDUCATION (JAFE),<br><br>Plaintiffs,<br><br>vs.<br><br>REGENTS OF THE UNIVERSITY OF CALIFORNIA; UNIVERSITY OF CALIFORNIA AT BERKELEY; BERKELEY LAW SCHOOL; MICHAEL DRAKE, in his official capacity as President of the University of California; CAROL T. CHRIST, in her official capacity as Chancellor of the University of California, Berkeley; BEN HERMALIN, in his official capacity as Provost of the University of California,<br><br>Defendants. | Case No. 3:23-cv-06133-JD<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Hearing Date:   August 8, 2024<br>Time:   10:00 am<br>Place:   Courtroom 11<br>Judge:   Hon. James Donato |

CHARLES F. ROBINSON (State Bar No. 113197)
RHONDA GOLDSTEIN (State Bar No. 250387)
KATHARINE ESSICK (State Bar No. 219426)
CAROL LYNN THOMPSON (State Bar No. 148079)
carol.thompson@ucop.edu
UNIVERSITY OF CALIFORNIA
Office of the General Counsel
1111 Franklin Street, 8th Floor
Oakland, CA 94607-9800
Telephone:     (510) 987-9800
Facsimile:      (510) 987-9757

HELEN E. WHITE (pro hac vice forthcoming)
helen.white@mto.com
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave NW, Ste. 500E
Washington, District of Columbia 20001-5369
Telephone:     (202) 220-1136
Facsimile:      (202) 220-2300

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................................1

II. ARGUMENT ..............................................................................................................................2

    A. Plaintiffs' Claims Should Be Dismissed Under Article III and Rule 12(b)(1)..................................................................................................................2

        1. Plaintiffs' Title VI Claim Should Be Dismissed As Unripe. ........................2

        2. Plaintiffs Lack Standing to Challenge the Bylaws. ......................................3

    B. All of the Claims Should be Dismissed Under Rule 12(b)(6)..................................5

        1. Plaintiffs Fail to State a Title VI Claim.........................................................5

            (a) Plaintiffs Fail to Sufficiently Allege the University Had a General Policy of Deliberate Indifference............................................5

            (b) Plaintiffs Fail to Plead How The University's Alleged Policy of Deliberate Indifference Was the But-For Cause of Harassment. ..................................................................................7

        2. Plaintiffs Fail to State an Equal Protection Claim.........................................9

        3. Plaintiffs Fail to State a Free Exercise Claim................................................9

        4. Plaintiffs Fail to State a Claim Under Section 1981. ..................................10

        5. Plaintiffs Fail to State an ADA Claim.........................................................10

III. CONCLUSION .......................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Ballou v. McElvain*,
    29 F.4th 413 (9th Cir. 2022)..................................................................................................9

*Bayer v. Neiman Marcus Group, Inc.*,
    861 F.3d 853 (9th Cir. 2017)..................................................................................................4

*Carney v. Adams*,
    592 U.S. 53 (2020) .................................................................................................................3

*Carrol v. Nakatani*,
    342 F.3d 934 (9th Cir. 2003)..................................................................................................4

*Cohen v. City of Culver City*,
    754 F.3d 690 (9th Cir. 2014)................................................................................................10

*Coons v. Lew*,
    762 F.3d 891 (9th Cir. 2014)..................................................................................................2

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006) ...............................................................................................................3

*Davis v. Monroe County Board of Education*,
    526 U.S. 29 (1999) .................................................................................................................5

*Doe v. Oberlin College*,
    60 F.4th 345 (6th Cir. 2023)...................................................................................................2

*FDA v. Alliance for Hippocratic Medicine*,
    602 U.S. 367 (2024) ............................................................................................................3, 4

*Felber v. Yudof*,
    851 F. Supp. 2d 1182 (N.D. Cal. 2011) .................................................................................6

*Flores v. Morgan Hill Unified School District*,
    324 F.3d 1130 (9th Cir. 2003)................................................................................................9

*Hurley v. Irish-American Gay, Lesbian, and Bisexual Group of Boston*,
    515 U.S. 557 (1995) ...............................................................................................................4

*Karasek v. Regents of the University of California*,
    956 F.3d 1093 (9th Cir. 2020).......................................................................................2, 5, 7, 8

*Karasek v. Regents of the University of California*,
    500 F. Supp. 3d 911 (N.D. Cal. 2021) ...................................................................................8

*Karasek v. Regents of the University of California*,
    534 F. Supp. 3d 1136 (N.D. Cal. 2021) ..........................................................................8

*London v. Coopers & Lybrand*,
    644 F.2d 811 (9th Cir. 1981) ..........................................................................................10

*Mandel v. Board of Trustees of California State University*,
    No. 17-cv-03511-WHO, 2018 WL 5458739 (N.D. Cal. Oct. 29, 2018) ........................6

*Moody v. NetChoice, LLC*,
    144 S. Ct. 2383 (2024) ....................................................................................................4

*Murthy v. Missouri*,
    144 S. Ct. 1972 (2024) ....................................................................................................3

*Myles v. West Contra Costa Unified School District*,
    No. 23-CV-01369-AGT, 2024 WL 1354440 (N.D. Cal. Mar. 28, 2024) .....................6

*National Association for Gun Rights, Inc. v. City of San Jose*,
    618 F. Supp. 3d 901 (N.D. Cal. 2022) ............................................................................2

*Planned Parenthood of Greater Washington & North Idaho v. United States
    Department of Health & Human Services*,
    946 F.3d 110 (9th Cir. 2020) ..........................................................................................3

*The Louis D. Brandeis Center, Inc. v. United States Department of Education*,
    No. 1:24-cv-01982 (D.D.C. July 9, 2024) ......................................................................7

*Thomas v. Anchorage Equal Rights Commission*,
    220 F.3d 1134 (9th Cir. 2000) (en banc) ........................................................................2

*Waln v. Dysart School District*,
    54 F.4th 1152 (9th Cir. 2022) ........................................................................................9

**CONSTITUTIONAL PROVISIONS**

U.S. Constitution amend. I ..................................................................................................4, 5

**FEDERAL STATUTES**

42 U.S.C. § 1981 ................................................................................................................3, 10

**FEDERAL RULES**

Federal Rule of Civil Procedure 12(b)(1) ...............................................................................2

Federal Rule of Civil Procedure 12(b)(6) ...............................................................................5

**OTHER AUTHORITIES**

Catherine E. Lhamon, Dear Colleague Letter: Protecting Students from
    Discrimination, such as Harassment, Based on Race, Color, or National Origin,
    Including Shared Ancestry or Ethnic Characteristics (May 7, 2024),
    https://www2.ed.gov/about/offices/list/ocr/letters/colleague-202405-shared-
    ancestry.pdf. ........................................................................................................................7

I.     **INTRODUCTION**

Plaintiffs seek to avoid dismissal based on their summary assertion that the University has "failed to act" or "failed to enforce" its policies. Yet the FAC specifically alleges that the University *has* responded and *is* responding to the alleged incidents of antisemitic harassment on which Plaintiffs base their claims. Plaintiffs allege the University has repeatedly and strongly condemned these acts, revoked eligibility for academic credit, threatened to report individuals to state bar authorities, increased security, and initiated an ongoing hate crimes investigation. Because the FAC contradicts Plaintiffs' central narrative of University inaction, Plaintiffs fail to plausibly allege that the University has been deliberately indifferent. That requires dismissal.

Plaintiffs advance a new Title VI theory that the University should be held responsible for a "general policy of deliberate indifference," but that fails as a straightforward application of the very case Plaintiffs rely on as the basis for the theory. The Title VI claim also fails because it is not ripe. Plaintiffs do not dispute that the University may be held liable only for its response to harassment, not the harassment itself. Nor do they dispute that the law affords the University substantial time to respond before it can be alleged that it is deliberately indifferent. Because Plaintiffs filed their FAC within days or weeks of the bulk of the incidents on which they rely, the FAC thus necessarily fails to allege that the University has engaged in some unlawful delay in its response; it is simply too soon to plausibly allege (let alone adjudicate) such a claim. And Plaintiffs have alleged no basis for this Court to conclude that the University's ongoing response will not remedy any alleged harassment. Not only are there pending investigations, a new California law enacted this month calls for the University to take steps to ensure the consistent enforcement of its policies in this area.

Plaintiffs' Opposition also lays bare that their remaining claims—which all seek to hold the University itself responsible for the acts of others—are not remotely viable. There is no allegation that antisemitism motivated the University or that it treated groups differently. To the contrary, the FAC acknowledges that University leaders condemned antisemitism repeatedly.

## II.     ARGUMENT

### A.     Plaintiffs' Claims Should Be Dismissed Under Article III and Rule 12(b)(1).

#### 1.     Plaintiffs' Title VI Claim Should Be Dismissed As Unripe.

Plaintiffs all but concede that their Title VI claim is unripe. They fundamentally do not dispute that Title VI defendants are entitled to *some* amount of time to respond to incidents of harassment. Nor do they dispute that ripeness is determined at the time the complaint is filed. And Plaintiffs do not dispute that the bulk of the alleged antisemitic harassment at issue in their complaint occurred in the Spring 2024 semester—mere weeks, if not days, before they filed the FAC. Nor do they identify any action that the University should have taken in that short amount of time—let alone any case law requiring it to do so. And they entirely ignore *Doe v. Oberlin College*, 60 F.4th 345, 356 (6th Cir. 2023), which upheld dismissal of a Title IX claim as unripe.

Plaintiffs note that *Karasek v. Regents of the University of California*, 956 F.3d 1093 (9th Cir. 2020) (*Karasek I*), does not set a "bright line rule" allowing at least eight months to respond. Opp. at 5. Plaintiffs miss the point. They do not explain why a faster investigatory and disciplinary process is warranted here or how it would be consistent with due process. Nor do they cite to any case that holds a response must be complete within weeks to avoid being clearly unreasonable.

Plaintiffs also misstate the basic legal principles of ripeness. They contend a claim is constitutionally ripe whenever the plaintiff has adequately alleged an injury-in-fact. Opp. at 4. That is wrong; constitutional ripeness is "*standing* on a timeline," not merely injury-in-fact on a timeline. *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc) (emphasis added). Plaintiffs similarly suggest that prudential ripeness is a dubious doctrine, Opp. at 4, despite numerous recent cases dismissing claims on that ground. *See, e.g., Coons v. Lew*, 762 F.3d 891, 902 (9th Cir. 2014), *as amended* (Sept. 2, 2014); *Nat'l Ass'n for Gun Rts., Inc. v. City of San Jose*, 618 F. Supp. 3d 901, 911–12 (N.D. Cal. 2022).

Plaintiffs' remaining arguments based on judicial economy and the risk of additional incidents next academic year confirm that their Title VI claim is unripe. They require speculating that the University's response—which Plaintiffs allege *is ongoing*—will be deficient. The ongoing nature of that response is underscored by the University, consistent with recent California

legislation, developing a new framework "to ensure consistent enforcement of institutional policies, and state and federal law, that protect safety and access to educational opportunities and campus spaces and buildings." Cal. A.B. 108 (2024). The newly enacted law calls for the University to issue "a campus climate notification by the beginning of the Fall 2024 term," develop a "systemwide framework," and submit a report to the Legislature by October 1, 2024 or else lose out on $25 million in funding. Plaintiffs cannot seek prospective relief now, while the University's response is still ongoing and the Court would need to speculate about the outcome.

### 2. Plaintiffs Lack Standing to Challenge the Bylaws.

Plaintiffs are wrong that they need not show standing "to specifically challenge the Bylaws" of student groups. Opp. at 6. They concede their Section 1981 claim requires such standing. *Id*. Independently, because they must "demonstrate standing separately for each form of relief sought," *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (citation omitted), to obtain relief ordering the University to forbid student groups from "barring Zionists," FAC Prayer ¶ 1, the law requires establishing standing to challenge the student group bylaws. This Plaintiffs have failed to do. *See also Murthy v. Missouri*, 144 S. Ct. 1972, 1988 (2024) ("'plaintiffs must demonstrate standing for each claim they press' against each defendant" (citation omitted)).

**No Injury to Scholars.** Plaintiffs argue JAFE's scholar members have standing because the bylaws make them unable "to compete on an equal footing." Opp. at 6 (quoting *Planned Parenthood of Greater Wash. & N. Idaho v. U.S. Dep't of Health & Hum. Servs.*, 946 F.3d 110, 1108 (9th Cir. 2020)). Such competitor standing is inapplicable. Unlike the "bidding process" in *Planned Parenthood*, Plaintiffs do not allege that the law school student groups are holding any sort of open, competitive application process for speaker slots—let alone that there are "regular opportunities available with relevant frequency." *See Carney v. Adams*, 592 U.S. 53, 65–66 (2020). Nor does any JAFE scholar member allege *any* intent or plan to apply (or otherwise seek) to speak to any relevant student group (even if the bylaws were removed). *See* FAC ¶¶ 33–49; *see also Carney*, 592 U.S. at 65 (requiring this for standing). Further, Plaintiffs do not identify a single scholar member who was not invited to speak or had an invitation cancelled because of student group bylaws. *See FDA v. Alliance for Hippocratic Med.*, 602 U.S. 367, 386 (2024) (*AHM*) (no

standing where no member of physician association would have individual standing). Plaintiffs' free-floating allegations of dignitary harm also do not confer standing. *Carrol v. Nakatani*, 342 F.3d 934, 947 (9th Cir. 2003). *Bayer v. Neiman Marcus Group, Inc.*, 861 F.3d 853 (9th Cir. 2017), is inapposite; it involved a change in employment status, not just dignitary harm.

**No Injury to Students.** Although Plaintiffs conclude that JAFE student members were "constructively banned" by bylaws of certain student groups (Opp. at 7), they do not explain how these student groups' alleged limit upon the *external speakers* they will invite excludes *students* of a particular identity from participating in any group, event, or activity. They also do not allege any student was actually excluded, which means they allege no violation of the "all comers" policy.

**No Organizational Injury.** *AHM*, cited by Plaintiffs, again undermines the case for Brandeis Center's organizational standing based on the University supposedly limiting the Center's bandwidth to do other work. The Supreme Court rejected that as basis for standing in *AHM*, where a medical association argued that the FDA's approval of mifepristone diverted resources from its "other spending priorities." 602 U.S. at 394 (organization "cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action"). *AHM* actually forecloses the organizational standing argument here. *See also* Mot. at 7.

**No Redressability.** Plaintiffs contend that the injunction they seek would not violate the First Amendment because, in their view, the student group bylaws exclude speakers based on identity, not viewpoint, because Zionism is integral to many Jews' identity. Mot. at 7–8. But *Hurley v. Irish-American Gay, Lesbian, and Bisexual Group of Boston*, 515 U.S. 557 (1995), shows this is wrong. There, the Court held that parade organizers could not be required to permit an LGBT pride organization to march in its parade because that would require them to alter the parade's required message. *Id*. at 572–73. The Court held that the organizers' decision was protected by the First Amendment even though it excluded on the basis of a viewpoint closely intertwined with a protected identity. *Id*. at 578–79. *Hurley* therefore confirms that the University cannot force groups to allow certain speakers—a principle the Supreme Court recently reaffirmed in *Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2401–02, 2406 (2024).

**B.   All of the Claims Should be Dismissed Under Rule 12(b)(6).**

**1.   Plaintiffs Fail to State a Title VI Claim.**

Plaintiffs concede they have not pleaded a claim of direct discrimination and must plead that the University's response was deliberately indifferent. Opp. at 8. Plaintiffs have not done so. They argue deliberate indifference cannot be adjudicated on the pleadings, but "there is no reason why courts, on a motion to dismiss . . . could not identify a response as not 'clearly unreasonable' as a matter of law." *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 649 (1999).

Instead of identifying a particular response that was deliberately indifferent, Plaintiffs point to what they see as a "general policy of deliberate indifference towards anti-Semitic incidents and ongoing harm," Opp. at 11, but fail to plead what that policy was or how such policy caused the harassment they allege. A plaintiff relying on the "pre-assault" (or "pre-harassment") theory of liability must plausibly allege both a general policy of deliberate indifference *and* that the harassment they suffered plausibly was caused by the general policy. *Karasek I*, 956 F.3d at 1112. Plaintiffs fail to allege either element.

*(a)   Plaintiffs Fail to Sufficiently Allege the University Had a General Policy of Deliberate Indifference.*

Plaintiffs do not allege a general policy of deliberate indifference. While Plaintiffs do not challenge "the lack of a specific response by Defendants" to specific incidents, Opp. at 11, they argue—without any supporting allegations in their FAC—that the University has a general policy of deliberate indifference to antisemitic harassment because it "(i) know[s] who the perpetrators are; (ii) ha[s] official policies requiring the University to take action; but (iii) ha[s] failed to act." Opp. at 9 (citing FAC ¶¶ 142–45). Plaintiffs have mischaracterized the cited paragraphs of their own FAC. In the FAC, Plaintiffs make no allegations at all about the University's response to incidents of individual-on-individual harassment in fall 2023. FAC ¶¶ 112–16. In the FAC, Plaintiffs allege that the University condemned the student group bylaws, revoked academic credit, and explained that the First Amendment precluded disciplinary actions. FAC ¶¶ 147–150, Ex. C. In the FAC, Plaintiffs allege that the University has acted in response to other incidents by opening criminal investigations, increasing security, and meeting with impacted students. FAC

1  ¶ 71–72, 81, Ex. A. Yet in their Opposition, Plaintiffs ignore these allegations, just as they ignore
2  the University's argument that certain other measures could have exposed it to statutory or
3  constitutional claims. *Compare* Mot. at 12–13 *with* Opp. at 9–12.

4        Plaintiffs' disagreement with the University's choices is similarly insufficient to plead
5  deliberate indifference. Plaintiffs argue that public condemnations are inadequate because they
6  previously have been ineffective, Opp. at 10, without identifying any incident where
7  condemnation was the University's only response. Similarly, Plaintiffs argue that "referring a
8  matter to law enforcement" does not "negate[] a showing of deliberate indifference." *Id*. Again,
9  the FAC says otherwise. Unlike in *Myles v. W. Contra Costa Unified School District*, No. 23-CV-
10 01369-AGT, 2024 WL 1354440, at *7 (N.D. Cal. Mar. 28, 2024), the University did not merely
11 report the February 26, 2024 incident. The FAC alleges that the University is investigating the
12 incident as a hate crime and has condemned the aggressors' conduct. FAC ¶ 81.

13       Plaintiffs also fault the Motion for "selectively choosing specific incidents" so that the
14 University's response to such incidents can be considered "in a vacuum," Opp. at 9, but that is
15 wrong. The University did not "selectively" choose anything; it addressed the incidents Plaintiffs
16 chose to describe in their FAC. It is also impossible to discuss the University's response without
17 looking at particular incidents. That is how the analysis proceeded in *Felber v. Yudof*, which
18 Plaintiffs ignore, where the court considered the university's specific responses to specific
19 incidents—not in isolation, but in their broader context—in deciding to dismiss students' Title VI
20 claim. 851 F. Supp. 2d 1182, 1184, 1188 (N.D. Cal. 2011) (dismissing Title VI claim related to
21 antisemitism based on multiple incidents over 16 years). In the same vein, Plaintiffs
22 mischaracterize *Mandel v. Board of Trustees of California State University*, No. 17-cv-03511-
23 WHO, 2018 WL 5458739 (N.D. Cal. Oct. 29, 2018), as having "consider[ed] two discrete events"
24 and "refus[ing] to consider other 'background' allegations." Opp. at 11. The *Mandel* court
25 expressly "[c]onsider[ed] the totality of the allegations" in addition to the two "discrete" campus-
26 wide events at issue, and found, based on the university's specific response of preparing written
27 reports of the misconduct, that the university was "not ignoring the hostile environment alleged by
28 plaintiffs" and that "[d]eliberate indifference ha[d] not been alleged." 2018 WL 5458739, at *7.

Other arguments based on a May 7, 2024 "Dear Colleague Letter" from the Department of Education, similarly miss the mark. Opp. at 11. First, the Ninth Circuit has made clear that a failure to follow a Dear Colleague Letter, standing alone, does not constitute deliberate indifference because enforcement actions "apply[] a standard that is less exacting than the deliberate-indifference test." *Karasek I*, 956 F.3d at 1107-08. Second, while Plaintiffs note that the Department opened an investigation into UC Berkeley, they fail to mention that the investigation has since been closed—a fact they know well enough to have alleged it in a separate lawsuit. Complaint at 5, *The Louis D. Brandeis Center, Inc. v. U.S. Dep't of Educ.*, No. 1:24-cv-01982 (D.D.C.) (July 9, 2024). Finally, as set forth in the FAC, the University has taken significantly more action as compared to the examples described in the Dear Colleague Letter. *Compare* Mot. at 10–14 (describing the allegations regarding the University's response) *with* Dear Colleague Letter at 8 (issuing statement denouncing vandalism and taking no further action) and *id.* at 9 (taking no action).[1] Indeed, the University's responses as alleged track the responses the Dear Colleague Letter proposes, such as affirming school values, offering support to affected students, and taking steps to establish a welcoming campus. Dear Colleague Letter at 3; *see* FAC ¶ 91; Ex. A (letter from Advisory Committee on Jewish Student Life expressing gratitude for Chancellor's statement acknowledging the February 26 event contravened the University's values, recognizing the Chancellor's "longstanding care and commitment toward the Jewish community" on campus, and recognizing that campus officials met with Jewish students and community leaders).

At bottom, Plaintiffs' primary complaint appears to be that multiple allegedly antisemitic incidents occurred on campus over the 2023–24 academic year. But this does not demonstrate that the University has a policy of deliberate indifference sufficient for *any* Title VI theory of liability.

      *(b)*      *Plaintiffs Fail to Plead How The University's Alleged Policy of Deliberate Indifference Was the But-For Cause of Harassment.*

There is another independent basis for dismissal because Plaintiffs do not even attempt to argue that the harassment they allege to have suffered was caused by the alleged general policy of

---

[1] https://www2.ed.gov/about/offices/list/ocr/letters/colleague-202405-shared-ancestry.pdf

deliberate indifference, as is required for their new "pre-harassment" theory of liability. *See* Opp. at 10-11. They cannot allege that "harassment occurred 'as a result' of the policy of deliberate indifference," which requires alleging both "but-for" and legal causation—that the harassment "plausibly would not have occurred" had the university taken some action that it allegedly should have been taken—and that the risk to individual members of JAFE was "a plausibly foreseeable risk" of not taking that action. *Karasek v. Regents of the Univ. of Cal.*, 534 F. Supp. 3d 1136, 1149, 1154 (N.D. Cal. 2021) (*Karasek III*).

The *Karasek* cases after remand are instructive. In *Karasek II*, a plaintiff argued that the university had a general policy of deliberate indifference that caused her assault because neither she nor her assailant had been trained in recognizing or preventing sexual assault. 500 F. Supp. 3d at 991. The court held that merely identifying a particular measure (training) that the university had not taken was insufficient to plead causation without also indicating "what about the training would have affected her particular situation." *Id.* In *Karasek III*, the plaintiff amended her complaint and alleged that the university had a policy of deliberate indifference—but also that a *different* policy caused her assault. That was not sufficient to plead that the "policy she contends is causally connected to the assault . . . was deliberately indifferent." 534 F. Supp. 3d at 1148–49.

Here, Plaintiffs assert the University did not do enough but do not identify any specific action the University should have taken but did not. They do not allege how such failure to take action was the "but for" or legal cause (let alone both) of the harassment they allege. And given what was happening at campuses across the country despite the wide range of responses at those campuses, Plaintiffs cannot allege that harassment "plausibly would not have occurred" had the University taken any particular measure or series of measures. *Id*. The law "does not require [defendant] to purge its campus of . . . misconduct to avoid liability" or to "guarantee[] the good behavior of its students." *Karasek I*, 956 F.3d at 1114. "[A]dequately alleging a causal link between a plaintiff's harassment and a school's deliberate indifference to . . . misconduct across campus is difficult" and this "element of causation ensures that Title IX liability remains within proper bounds." *Id*. Plaintiffs have not alleged any causal link whatsoever between any general policy of deliberate indifference and any alleged harassment their members experienced.

### 2. Plaintiffs Fail to State an Equal Protection Claim.

Plaintiffs' Opposition confirms that their Equal Protection claim must be dismissed. Their sole argument in support of this claim is that the University has entirely "failed to enforce" its antidiscrimination polices and that, as a consequence, the court may infer an intent to discriminate against Jewish students. The primary case on which Plaintiffs rely, *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130 (9th Cir. 2003), is inapposite. There, individual defendants responded to plaintiffs' complaints of sexual orientation harassment with statements like "[d]on't bring me this trash" and "[a]re you gay?", as well as suggestions that a plaintiff "change clothes away from the locker room so that her classmates would not feel uncomfortable." *Id*. at 1133. Though the court inferred an intent to discriminate against plaintiffs due to defendants' failure to enforce their policies, it did so only "[w]hen viewed in the context of the other evidence plaintiffs presented *and their interactions with the defendants*." *Id*. at 1135 (emphasis added). Plaintiffs do not allege (nor could they) that the University or its employees made any such discriminatory statements here.

Plaintiffs are also incorrect (Opp. at 13 n.4) that they have alleged a "relevant comparator." *See Ballou v. McElvain*, 29 F.4th 413, 423 (9th Cir. 2022). They point to their allegations describing Dean Chemerinsky's distinction between excluding speakers "based on viewpoint"—which he considered permissible—and exclusions that discriminate "based on religion, (or race or sex or sexual orientation)"—which he considered impermissible. FAC ¶ 147. But these allegations make no mention of any other group that was treated more favorably than Plaintiffs. *Id*.

### 3. Plaintiffs Fail to State a Free Exercise Claim.

Plaintiffs do not dispute that they must show that the University's approach to enforcing its antidiscrimination policies is "not generally applicable." Nor do they dispute that, in this context, that means they must show that the policy is "enforced in a selective manner." Opp. at 13. Pleading selective enforcement requires some non-conclusory allegation that a comparator would receive more preferential treatment, such as where a school grants an exemption to a dress code for secular graduation cap adornments, but not religious adornments. *Waln v. Dysart Sch. Dist.*, 54 F.4th 1152, 1155 (9th Cir. 2022). By contrast, there is no allegation—apart from conclusory assertions—that the campus selectively treated Jewish students differently from non-Jewish

1 students. While the FAC often repeats the conclusory statement that the University has "fail[ed] to
2 enforce UC Policies," *see* FAC ¶¶ 166, 169, 174, 186, 187, it alleges no facts to support selective
3 enforcement, such as disciplining another student for comparable conduct directed at other groups.

### 4. Plaintiffs Fail to State a Claim Under Section 1981.

Plaintiffs concede that their section 1981 claim solely concerns hypothetical contracts between student organizations and the JAFE scholar members who wish to be invited to speak to those groups. It is undisputed that there is no allegation that any Scholar Member was denied a contract on account of religion or denied a contract at all. Plaintiffs also do not dispute that it is the student groups (not the University) that do not wish to contract with these speakers. They instead contend that by failing to force student groups to contract with these speakers, the University has interfered with the JAFE scholars' rights to contract with those groups. Plaintiffs identify no section 1981 case where a third party to a contract has been held liable for failing to force one of the parties to contract against their will. They instead cite inapposite cases where a third party interfered in negotiations between two otherwise *willing* contracting parties. *See London v. Coopers & Lybrand*, 644 F.2d 811, 818 (9th Cir. 1981).

### 5. Plaintiffs Fail to State an ADA Claim.

Plaintiffs' ADA argument is heavy on rhetoric, but they do not dispute that an ADA plaintiff must show that they were actually denied access to some University area or activity because of their disability. Nor do Plaintiffs dispute that the side sections of Sather Gate remained open. They also do not dispute that Sproul Hall—to the extent it was ever blocked—was blocked for *all* students, regardless of disability. Instead, plaintiffs point to *Cohen v. City of Culver City*, 754 F.3d 690, 695 (9th Cir. 2014), seemingly for the proposition that *any* obstruction—whether partial or full—of a public walking path is an ADA violation. Opp. at 15. But *Cohen* specifically concerned obstructed curb ramps, a feature of public sidewalks that are designed to facilitate access by individuals with disabilities. *See* 754 F.3d at 693, 701. Because Plaintiffs do not allege that any accessibility features were obstructed, *Cohen* does not support their claim.

### III. CONCLUSION

For these reasons, the Court should dismiss all of Plaintiffs' claims.

| | | |
|---|---|---|
| DATED: July 29, 2024 | | MUNGER, TOLLES & OLSON LLP |
| | By: | *Bryan H. Heckenlively* |
| | | BRYAN H. HECKENLIVELY |
| | | Attorneys for Defendants |