RONALD CRUZ, State Bar No. 267038
United for Equality and Affirmative Action Legal Defense Fund (UEAALDF)
755 McAllister Street
San Francisco, CA 94102
Ph: (313) 683-0942  Fax: (313) 586-0089
ronald.cruz@ueaa.net
*Attorneys for Proposed Defendant-Intervenors*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THE LOUIS D. BRANDEIS CENTER, INC., JEWISH AMERICANS FOR FAIRNESS IN EDUCATION (JAFE) | Case No. 3:23-cv-06133-JD |
| Plaintiffs, | **MOTION FOR INTERVENTION** |
| vs. | Hearing Date:  October 10, 2024 |
| REGENTS OF THE UNIVERSITY OF CALIFORNIA; UNIVERSITY OF CALIFORNIA AT BERKELEY; BERKELEY LAW SCHOOL; MICHAEL DRAKE, in his official capacity as President of the University of California; CAROL T. CHRIST, in her official capacity as Chancellor of the University of California, Berkeley; BEN HERMALIN, in his official capacity as Provost of the University of California, | Time:           10:00 a.m. Place:          Courtroom 11 Judge:          Hon. James Donato |
| Defendants, | |
| and | |
| ADAM LERMAN, BERKELEY LAW JEWISH STUDENTS FOR JUSTICE IN PALESTINE (BLJ4P), BERKELEY MUSLIM STUDENT ASSOCIATION (MSA), COALITION TO DEFEND AFFIRMATIVE ACTION, INTEGRATION AND IMMIGRANT RIGHTS AND FIGHT FOR EQUALITY BY ANY MEANS NECESSARY (BAMN), MOVEMENT FOR JUSTICE BY ANY MEANS NECESSARY (MFJ), MALAK AFANEH, ZAID YOUSEF, MATTHEW FERNANDES, MUKI BARKAN, BERKELEY LAW STUDENT #1, ELI HARRIS, ISAAC (IZZY) TRAGARZ, DONNA STERN, KATE STENVIG, NEAL LYONS, ARASH MOHAMMADY, JESÚS GUTIÉRREZ, BRYAN AVELAR, UCB GRADUATE STUDENT #1, EISHA | |

MUMTAZ, UCB UNDERGRADUATE STUDENT #1, LIANNA VAN HOUT, DR. BENJAMIN LYNCH, NOORULAIN IRSHAD, NICOLE CONAWAY, DENNIS CAMERON, SABRINA SARWAR, ISLAM AYYAD, AMINA SHAKEEL, AMANATUN NESA, TANA NICK, KYANNA HUFF, AALIYAH WHEELER, BYANCA NINOV, TYLER WOOD, JEREMY EUGENE, and ALEX OWOLADE

Proposed Defendant-Intervenors.

1

<u>**TABLE OF CONTENTS**</u>

**TABLE OF AUTHORITIES** ................................................................................ iv

**MOTION** ...................................................................................................................1

**STATEMENT OF RELIEF SOUGHT, POSITIONS OF PARTIES** .......................1

**MEMORANDUM OF POINTS AND AUTHORITIES** ........................................1

**ISSUE TO BE DECIDED** .......................................................................................1

**INTRODUCTION** ...................................................................................................1

    Defending religious freedom and the rights of pro-Palestinian Jews .................5

    The Proposed Intervenors are as proud of our unity as we are of our range of political positions ...................................................................................................7

**THE PROPOSED DEFENDANT-INTERVENORS** ...............................................7

    Berkeley Law students ........................................................................................8

    Jewish intervenors ............................................................................................10

    Other students, researchers, and activists ........................................................12

**STATEMENT OF FACTS** ....................................................................................14

**ARGUMENT** .........................................................................................................15

    **I. The Proposed Intervenors have a right to intervene under Rule 24(a)** ..................15

        A. This Motion is timely. ............................................................................16

        B. This Court should grant intervention before ruling on the pending Motion to Dismiss ..................................................................................................16

        C. The Proposed Intervenors have the requisite interest in the subject of this case. ...17

        D. Disposition of this case may, as a practical matter, substantially impair or impede the Proposed Intervenors' interests. ..........................................20

        E. The Proposed Intervenors' interests are inadequately represented by the existing parties. ......................................................................................21

    **II. Permissive intervention** .......................................................................25

1

**TABLE OF AUTHORITIES**

2

*California v. Tahoe Regional Planning Agency,*
3
792 F.2d 775 (9th Cir. 1986) ................................................................................................21

4
*California ex rel. Lockyer v. United States,*
450 F.3d 436 (9th Cir. 2006) ...............................................................................................19
5

*County of Orange v. Air California,*
6
799 F.2d 535 (9th Cir. 1986) ...............................................................................................16

7
*Donnelly v. Glickman,*
159 F.3d 405 (9th Cir. 1998) ...............................................................................................15
8

9
*Forest Conserv. Council v. U.S. Forest Serv.,*
66 F.3d 1489 (9th Cir. 1995) ...............................................................................16,19,21,24
10

11
*Greene v. United States,*
996 F.2d 973 (9th Cir. 1993) ...............................................................................................16

12
*Idaho v. Freeman,*
625 F.2d 886 (9th Cir. 1980) ...............................................................................................19
13

14
*Idaho Farm Bureau Fed'n v. Babbitt,*
58 F.3d 1392 (9th Cir. 1995) ...............................................................................................16
15

16
*John Doe No. 1 v. Glickman,*
256 F.3d 371 (5th Cir. 2001) ...............................................................................................16

17
*Kalbers v. United States Dep't of Justice,*
18
22 F.4th 816 (9th Cir. 2021) ................................................................................................16

19
*Natural Resources v. U.S. Nuc. Reg. Com'n,*
578 F.2d 1341 (10th Cir. 1978) ...........................................................................................20
20

21
*New York Public Interest Research Group v. Regents of the University,*
516 F.2d 350 (2d Cir. 1975) ................................................................................................17

22
*Sagebrush Rebellion, Inc. v. Watt,*
23
713 F.2d 525 (9th Cir. 1983) ...........................................................................................15,21

24
*Shermoen v. U.S.,*
982 F.2d 1312 (9th Cir. 1992) .............................................................................................24
25

26
*Sierra Club v. U.S.E.P.A.,*
995 F.2d 1478 (9th Cir. 1993) .................................................................................19,20,24
27

28
*Spangler v. Pasadena City Bd. of Educ.,*
552 F.2d 1326 (9th Cir. 1977) .............................................................................................25

*Trbovich v. United Mine Workers*,
404 U.S. 528 (1972) ................................................................................................21

*United States v. City of Los Angeles*,
288 F.3d 391 (9th Cir. 2002) ............................................................................ 15-16

*Utah Ass'n of Counties v. Clinton*,
255 F.3d 1246 (10th Cir. 2001) ...............................................................................16

*Wilderness Soc. v. U.S. Forest Service*,
630 F.3d 1173 (9th Cir. 2011) .................................................................................19

**PLEASE TAKE NOTICE** that on October 10, 2024, at 10:00 a.m., in Courtroom 11, 19th Floor, 450 Golden Gate Avenue, San Francisco, California of the above-entitled Court, Adam Lerman, Berkeley Law Jewish Students for Justice in Palestine (BLJ4P), Berkeley Muslim Student Association (MSA), Coalition to Defend Affirmative Action, Integration and Immigrant Rights and Fight for Equality By Any Means Necessary (BAMN), Movement for Justice By Any Means Necessary (MFJ), Malak Afaneh, Zaid Yousef, Matthew Fernandes, Muki Barkan, Berkeley Law Student #1, Eli Harris, Isaac (Izzy) Tragarz, Donna Stern, Kate Stenvig, Neal Lyons, Arash Mohammady, Jesús Gutiérrez, Bryan Avelar, UCB Graduate Student #1, Eisha Mumtaz, UCB Undergraduate Student #1, Lianna van Hout, Dr. Benjamin Lynch, Noorulain Irshad, Nicole Conaway, Dennis Cameron, Sabrina Sarwar, Islam Ayyad, Amina Shakeel, Amanatun Nesa, Tana Nick, Kyanna Huff, Aaliyah Wheeler, Byanca Ninov, Tyler Wood, Jeremy Eugene, and Alex Owolade will move and do move this Court for leave to intervene in this action.

## STATEMENT OF RELIEF SOUGHT, POSITIONS OF PARTIES

The Proposed Defendant-Intervenors ("Proposed Intervenors") seek intervention pursuant to Rule 24, on the ground that they have an interest in this action that will not be adequately represented by the current Defendants, and that this interest is sufficient to warrant intervention as a matter of right under Rule 24(a), or, alternatively, by permissive intervention under Rule 24(b).

On July 31, 2024, counsel for the Proposed Intervenors reached out to Plaintiffs and Defendants and asked for their position on this Motion. On August 1, attorney John V. Coghlan for Plaintiffs stated that they oppose this Motion. On August 7, attorney Bryan Heckenlively for the University of California ("UC") stated that the UC Defendants take no position on this Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### ISSUE TO BE DECIDED

Whether the Proposed Intervenors meet the requirements of Federal Rule of Civil Procedure 24 to intervene in this lawsuit.

## INTRODUCTION

The aim of the Brandeis Center lawsuit is to silence any criticism of the current Israeli government's genocidal conquest of Gaza, the West Bank and East Jerusalem, and any protest of

the Biden-Harris Administration's support for the Israeli military. At the very moment when the world's highest international judicial body, the United Nations International Court of Justice (ICJ), has called for the withdrawal of Israel from these sections of the nation of Palestine, the Brandeis Center is trying to codify into U.S. law a single definition of what it means to be a Zionist and a single criterion that falsely equates support for a right-wing extremist Israeli government's definition of Zionism with the single defining characteristic of Jewish identity.[1] It is not accidental that the founder and chairman of the Brandeis Center, Kenneth L. Marcus, is a former member of the Trump administration as Assistant Secretary for Civil Rights in the Department of Education because the Plaintiffs' position expresses only too well the authoritarian tendencies of the Trump administration and the American Trump movement.

According to the Brandeis Plaintiffs, their particular extremist sectarian brand of Zionism is the most important defining core characteristic of being Jewish. Anti-Zionism is supposedly, therefore, per se, antisemitism. By claiming that rejecting their particular sectarian definition of Zionism is antisemitism, the Brandeis Plaintiffs seek to silence both non-Jewish and Jewish opponents of the Israeli government's genocidal war and the United States' backing of Israel's depraved and illegal occupation of Palestine. They seek to silence and erase the history and existence of Palestinians, Palestinian identity, and a Palestinian nation. In their contorted and distorted world, Palestinian Jews do not exist. Judaism becomes a single, narrowly-defined, all-encompassing religious, cultural, ethnic and national identity to be determined by only one of the many positions among the world's Jewish communities. Plaintiffs seek to have this Court determine what it means to be a Jew, a discussion which has been carried on within the Jewish diaspora and in Israel for thousands of years and continues to this day.

In fact, the University of California ("UC") Defendants have already instituted policies that are consistent with the Brandeis Center Plaintiffs' goals. Erwin Chemerinsky, the Dean of UC's

---

[1]The First Amended Complaint ("FAC") claims that "Zionism is a central tenet of the Jewish faith." FAC ¶8. It claims that support for the State of Israel is a "core component of [Jewish people's] identity and ethnic and ancestral heritage." FAC ¶128 (quoting Dean Chemerinsky). Also see FAC ¶¶170-175 and Prayer for Relief, FAC at 53-55 (seeking findings and remedies falsely conflating criticism of Israel with antisemitism).

1 Berkeley Law School, has stated that he will punish the student law journals that have expressed
2 their solidarity with their Palestinian classmates and the Palestinian masses.

3      The individuals and organizations who are asking this Court to give them permission to
4 join these proceedings as Defendant Intervenors support the victory of the struggle of the
5 Palestinian people. The Proposed Intervenors agree with the findings of the ICJ and believe that
6 the United States is obligated to recognize and act on the ICJ's decisions, finding that Palestine is
7 a nation that is being illegally occupied by Israeli troops, who must withdraw from Gaza, the West
8 Bank, and East Jerusalem immediately. They support the preliminary findings of the ICJ that the
9 Israeli Defense Forces are committing genocide. The Proposed Intervenors support the request of
10 the ICJ lead prosecutor Karim A.A. Khan to issue an arrest warrant for Israeli Prime Minister
11 Benjamin Netanyahu. The Brandeis Center's position, in reality, demands that an American court
12 prohibit the free defense and discussion of the findings and the decisions of the United Nations
13 International Court of Justice–including in American law schools. This makes clear how
14 completely outrageous the Plaintiffs' position is.

15      The Proposed Intervenors oppose genocide and the rise and normalization of fascism here
16 and abroad, including in Israel. They defend free speech and academic freedom. They condemn
17 the efforts by both the Brandeis Center Plaintiffs and the UC Defendants, including Berkeley Law
18 Dean Erwin Chemerinsky, to victimize and stigmatize pro-Palestinian students and law student
19 associations. They speak for a broad range of constituencies that oppose the U.S.-backed vicious
20 and criminal Israeli campaign of genocide and ethnic cleansing in Palestine. The Proposed
21 Intervenors reject equating criticism of extreme right-wing Zionism with antisemitism. Yet this
22 view is not only asserted by the Plaintiffs; it is also erroneously accepted by Defendants. The
23 Proposed Intervenors steadfastly reject the idea that, if anyone, including American Jews, opposes
24 the actions and principles of those who view today's Israel under the Netanyahu government as
25 the embodiment of a Jewish homeland, they are both an anti-Zionist and an antisemite.

26      The Brandeis Center Plaintiffs are asking the U.S. federal courts to intervene into hotly-
27 debated issues within and beyond the Jewish community to rule in favor of their minority positions
28 within the debate. The Brandeis Center Plaintiffs are asking the courts to decide, as a matter of

law, that anyone who says they are opposed to Zionism is an antisemite. This poses the danger of suppressing free speech rights, while elevating the right of the courts to settle centuries-old doctrinal differences among different historical tendencies within the global and Israeli Jewish communities. The reactionary Supreme Court has already made clear that it is prepared to upend American jurisprudence to elevate the rights of a fetus over those of a woman. It is absurd to give the proponents of these ultra-right-wing Christian doctrines the power to decide what constitutes the core of Jewish cultural identity and what constitutes a Jewish homeland. The Brandeis Center Plaintiffs may be willing to cede the right to define core, robustly-debated principles of Judaism to reactionary, and in some cases, antisemitic federal court judges, but the Proposed Intervenors stand for the separation of church and state and defend religious freedom.

The Proposed Intervenors do not believe that the UC administrations, which used coordinated efforts of police and pro-fascist Zionists to destroy peaceful pro-Palestine encampments,[2] will defend the rights of Palestinian and Muslim students, faculty or staff to express their opposition to the policies of the Israeli government, backed by the Biden-Harris Administration. They believe that it is essential to stop blaming Palestinians, Arabs, Muslims, and other pro-Palestinian supporters for the rise of antisemitism, including attacks on Jews. The Israeli invasion of Gaza has been characterized by the systematic and repeated bombing of schools, hospitals, and "humanitarian zones." It has killed more Palestinian children in less than a year than the number of children killed in conflicts world-wide in the past four years combined. Justifying the genocide of Palestinians by claiming that it is necessary for the defense of a Jewish homeland has dramatically isolated Israel and endangered Jewish lives in Israel and beyond. Some of the

---

[2] "After violent night at UCLA, classes canceled, UC president launches investigation into response" *Los Angeles Times* (May 1, 2024). Available at: https://www.latimes.com/california/story/2024-04-30/ucla-moves-to-shut-down-pro-palestinian-encampment-as-unlawful
"Four UCLA student journalists attacked by pro-Israel counterprotesters on campus" *Los Angeles Times* (May 1, 2024) Available at: https://www.latimes.com/california/story/2024-05-01/four-student-journalists-attacked-by-counterprotesters-at-ucla
"UCLA Faculty Association files unfair labor practice charge against the UC" *Daily Bruin* (June 3, 2024) Available at: https://dailybruin.com/2024/06/03/ucla-faculty-association-files-unfair-labor-practice-charge-against-the-uc

responsibility for the rise of antisemitism lies squarely with Israeli Prime Minister Benjamin Netanyahu. Persecuting and trying to silence Palestinian, Arab, Muslim, and pro-Palestine activists does nothing to stop antisemitism or to defend the victims of antisemitic attacks. The UC Regents just passed a resolution to censor their own faculty, silencing critics of the Biden/Harris/Netanyahu atrocities.[3] This administration will not defend the Intervenors' interests. The Proposed Intervenors have yet to hear an utterance of condemnation by the UC Regents or administration or Berkeley Law Dean Chemerinsky for the Israeli government's murder of tens of thousands of Palestinians.

If the Proposed Intervenors are granted the right to be defendants, they will be the only party on either side that will defend the view of millions of Jews, including in Israel itself, that there is no contradiction in opposing the unconscionable genocide of tens of thousands of Palestinians and being a proud member of the Jewish community. The Plaintiffs seek to silence Jewish dissenters and get the federal courts to rule for their particular sectarian views on Zionism and Judaism, which they cannot win within the U.S. Congress or in many different sections of the Jewish community.

### Defending religious freedom and the rights of pro-Palestinian Jews

For more than 100 years, the question of what Zionism is and what constitutes the core of Jewish cultural, social, and religious values and ethnicity has been extensively debated within the Jewish community. There is a range of religious and secular currents within Judaism on these issues. Some of the most devout orthodox Jewish communities, including some Haredi Jews, have participated in pro-Palestinian demonstrations, marches, encampments, and other actions before and since October 7, 2023. Some of them are Zionist. However, these members of orthodox Jewish Haredi communities believe that it is wrong to characterize today's Israel as the Jewish homeland. For these devout Jews, who proudly and openly express their Jewish identities,[4] a Jewish homeland or real Israel can only come into existence with the coming of the messiah.

---

[3] "UC regents ban views on Israel, other political opinion from university homepages" (*Los Angeles Times*, July 18, 2024) https://www.latimes.com/california/story/2024-07-17/uc-regents-move-to-ban-anti-israel-views-other-political-opinion-on-university-home-pages

[4] "Thousands of pro-Palestine protestors shut down Brooklyn Bridge after flooding NYC streets alongside orthodox Jewish members to condemn Israel's war in Gaza - as businesses are plastered with 'Zionism is Terrorism' stickers" *Daily Mail* (Oct. 28, 2023). Available at:

When Israel was first being established, the Haredi Jewish community refused to come and live in Israel without the guarantee that they would be exempt from military service and receive state subsidies for their schools. Haredi men devote themselves to studying Jewish religious texts. When Israel was founded, they opposed the forced displacement of Palestinians because their definition of a Jewish homeland was not based on the nationalist exclusion of non-Jews from Israel. Some Haredi Israeli citizens continue to refuse to join the Israeli military and actively oppose the Biden/Harris/Netanyahu genocide and ethnic cleansing of Palestine.[5] Like many of the Jewish and non-Jewish Proposed Intervenors in this case, they are for a single binational, multiethnic, and multireligious Palestine/Israel.

Similarly, among the members of various Jewish congregations as well as among secular Jews, many do not characterize themselves as Zionist. For them, the traditions of promoting critical thinking, celebrating the resilience of the Jewish people through holiday traditions, and dedication to social justice and equality are what constitute the core of Judaism.

It is impossible to grow up being Jewish, religious or secular, since the Holocaust, without searching for the answer, over and over again, to the question of what kind of a person was so devoid of humanity that they could watch the genocide of millions of Jews and do nothing to stop it. Most of the Proposed Intervenors would not claim to be able to answer this question, which is so vividly posed now for the Palestinians, but their Jewish brothers and sisters are prepared to be slandered as "self-hating Jews," "antisemites" or "religious/ethnic/race traitors" by the likes of the Brandeis Center Plaintiffs for refusing to support Netanyahu's bloodlust and criminal genocide.

---

[5] https://www.dailymail.co.uk/news/article-12683935/Fury-streets-NYC-members-Brooklyns-orthodox-Jewish-community-join-THOUSANDS-pro-Palestine-protestors-rally-slamming-Israels-war-Gaza.html
"Orthodox Jews hold pro-Palestinian rally in Jerusalem," *Anadolu Agency* (July 27, 2014) https://www.aa.com.tr/en/pg/photo-gallery/orthodox-jews-hold-pro-palestinian-rally-in-jerusalem
"'We'd rather die than enlist': Haredi Jews vow to defy conscription" *+972 Magazine* (July 2, 2024) Available at: https://www.972mag.com/haredi-protest-army-conscription-ruling/
"Ultra-Orthodox party in Israel urges young Haredi men to resist draft" *CNN* (July 17, 2024). Available at: https://www.cnn.com/2024/07/17/middleeast/ultra-orthodox-jews-boycott-israel-military-intl-latam

**The Proposed Intervenors are as proud of their unity as they are of their range of political positions**

All the Proposed Intervenors agree that Israel must withdraw from Gaza, and that its war against Palestinians in the West Bank and East Jerusalem must end now. Everyone also agrees that the U.S. must stop supplying military aid to Israel. However, there is a range of differences among the Proposed Intervenors on what tactics should be advocated in support of the Palestinian people. They are not scared to debate whether it is right to call for a "two-state solution" or a "one-state solution" now. Some favor placing our energies primarily into Boycott, Divestment and Sanctions (BDS) efforts. Others focus their organizing efforts on politically supporting the new intifada to secure a defeat of the Israeli Defense Forces (IDF). Some think it is right to support an unconditional ceasefire; others only support a ceasefire based on certain Israeli guarantees.

Still, the Proposed Intervenors stand united. They do not believe that either the Plaintiffs or Defendants in this lawsuit can or will defend their interests. If permitted to intervene, they are the only force that stands for the victory of the Palestinian people. They are the only defenders of free speech as well as religious and academic freedom. They are the only people who refuse to equate antisemitism and anti-Zionism. They are the only voice for optimism and against the normalizing of fascism and genocide. They speak for the new movement that embraces internationalism and unity in action of all progressive forces. If they are allowed to intervene in this case, they pledge to defend the basic cherished human and civil rights being contested in this case.

## THE PROPOSED DEFENDANT-INTERVENORS

Plaintiffs seek the derecognition and defunding of student organizations in the University of California ("UC") who protest Israel's genocide of Palestinians, and they seek a precedent that speech criticizing the Israeli government and the U.S. government's support of it is "antisemitic." **The Proposed Intervenors are the true targets of this lawsuit.** It is *their* First Amendment rights that are under attack. The lawsuit falsely characterizes *their* actions as "antisemitic."

The Proposed Intervenors are a diverse group of Muslims, Jews, Christians, other religions, atheists, Arabs, Palestinians, Israelis, people of other nationalities, races, and ethnicities who know (and can present evidence and argument) that opposing the State of Israel's genocide of

Palestinians and its effort to annihilate the possibility of an independent Palestinian state is not antisemitic. They support the national and international movement to defend and win freedom for the people of Palestine. They are opposed to Islamophobia, antisemitism, all forms of bigotry, ethnic cleansing, and genocide.

They include current students and recent graduates of UC-Berkeley ("UCB"), including members and participants in the activities of organizations the Plaintiffs want to get the University to derecognize and defund. They include individuals who have participated in encampments at colleges and universities and/or have provided support to them. These are First Amendment activities that *both* the Plaintiffs and the UC Defendants seek to end and repress.

**Berkeley Law students**

**Berkeley Law Jewish Students for Justice in Palestine (BLJ4P)** is an organization at Berkeley Law School, comprised of Jewish students who support the liberation of the people of Palestine. It conducts education and activism to stop Netanyahu's war and genocide. It asserts that opposing Israel's genocide is not antisemitic and that the UC Defendants patently will *not* adequately present their views. *See* 1st Declaration of Muki Barkan.

**Malak Afaneh** (she/her) is directly referenced by the Plaintiffs in the First Amended Complaint ("FAC"). FAC ¶¶16,88-89,106. She is the Palestinian American who authored the pro-Palestine bylaw by LSJP that was adopted in various forms by 26 law student organizations and was the target of Brandeis's original lawsuit. As a member of Law Students for Justice in Palestine (LSJP), she has faced repression from the UC Defendants for her support of Palestinian rights. She is accused by the Plaintiffs of "hijack[ing] [sic]" an event (FAC ¶16), where she merely attempted to speak at an event open to all graduating law students at Dean Chemerinsky's home. She was wearing a hijab and attempted to greet attendees in Arabic, speak about the importance of fasting during Ramadan to Muslims, and criticize UC investments in Israeli-affiliated companies. As soon as she started speaking, Dean Chemerinsky yelled at her and told her to leave. Seconds later, Law Professor (and Dean Chemerinsky's wife) Catherine Fisk assaulted her by grabbing her from behind, yanking the microphone, dragging her, and ordering her to leave. She and other third-year law students, including Proposed Intervenor Muki Barkan, supported her right to speak and were

kicked out of the event. In the wake of the event, named Defendant UC President Michael Drake slandered her and her supporters, claiming that they "targeted this event… simply because it was hosted by a dean who is Jewish." He falsely called their conduct "antisemitic" and "threatening." Rich Leib, chair of the UC Board of Regents, joined this slander and called Ms. Afaneh's actions "deplorable." FAC ¶¶13, 91. These were bold-faced lies.

**Zaid Yousef** (he/him) is a Berkeley Law student and member of LSJP. He will be president of UCB's Muslim Student Association (MSA) and president of the Muslim Law Student Association (MLSA) this fall. He has family living under Israeli military occupation in the West Bank. He has personally faced harassment and discrimination as a Muslim on campus. The MSA's regular Friday prayers have been interrupted by people yelling they are "terrorists" and spewing other vile anti-Muslim rhetoric. With little assistance from UCB, he and other MSA officers had to hire private security to protect their right to pray. He has confronted Dean Chemerinsky for his disproportionate condemnation of the deaths of Israelis after October 7 while being silent on Israel's collective punishment and genocide of Palestinians. Chemerinsky has refused to balance his statements. *See* EXHIBIT B (Yousef-Chemerinsky email exchange). At an October 11, 2023 town hall, Yousef confronted Chemerinsky for not issuing a statement on Palestinian casualties, and Chemerinsky again refused to balance his statements. *See* Declaration of Zaid Yousef.

**Matthew Fernandes** (he/him) is a graduating law student and member of LSJP. He was a member of the Asian Pacific American Law Students Association (APALSA) when he successfully pushed for its adoption of a pro-Palestine bylaw. He along with Ms. Afaneh was "doxxed" on the far-right Canary Mission website. A jumbo TV truck has driven around the UCB campus plastered with their names in giant type claiming that they are "antisemites" and calling for harassment of pro-Palestine activists.[6]

Other law students among the Proposed Intervenors are Jewish and are described below.

---

[6] "Truck that doxxes alleged antisemites returns to UC Berkeley" *Jewish News of Northern California* (Feb. 6, 2024). Available at: https://jweekly.com/2024/02/06/truck-that-exposes-allegedly-antisemitic-students-returns-to-uc-berkeley/

**Jewish intervenors**

Among the Proposed Intervenors are both religious and secular Jews, who stand in the proud progressive and left-wing tradition of the Jewish community which has historically played a leading role in the civil rights, LGBT+, and other liberation movements. Some of them support the existence of Israel but oppose all policies that oppress, displace, and massacre Palestinians. These Proposed Intervenors reject the false choice presented by both the Plaintiffs and the UC officials who are quoted in the FAC, that Jews, including Israeli Jews, must either support the commission of genocide against Palestinians or else be falsely condemned and slandered or even expelled from the Israel/Palestine region. They understand that Netanyahu's genocidal policy and his stated goal of extending Israel "from the river to the sea,"[7] and his continued efforts to provoke a broader war in the Middle East, isolate Jews and threaten the lives of Jews as well as Palestinians and Arabs in Israel and the surrounding region. The Proposed Intervenors who are Jewish stand for the only way forward: a third choice of peace and fighting for the right of Jews, Muslims, Arabs, and Palestinians to coexist on a genuinely equal political and economic basis.

**Adam Lerman** (he/him) is a Jewish member of the Proposed Intervenor organization BAMN and a prospective UC law student. He is an atheist and opposes Netanyahu's war and genocide in Palestine. He lives in Los Angeles and helped defend the USC encampment for Palestine, as well as the UCLA encampment that UCLA Chancellor Gene Block brutally cleared with police in collusion with fascists on May 1-2, 2024.

**Muki Barkan** (they/them) is a Jewish Berkeley Law student finishing their studies in Fall 2024. Barkan is a member of BLJ4P and LSJP, and a dual citizen of Israel and the United States. As an editor for the *Berkeley Journal of Employment and Labor Law* (BJELL), they supported BJELL adopting a pro-Palestine bylaw. In October 2023, Berkeley Law Professor (and Dean Chemerinsky's wife) Catherine Fisk said that she would resign as its faculty advisor (which would decertify it), and campaign to sabotage the journal if it adopted the bylaw. (EXHIBIT C, Fisk email

---

[7] "Benjamin Netanyahu Just Said 'From the River to the Sea' *New Republic* (Jan. 18, 2024). Available at: https://newrepublic.com/post/178243/benjamin-netanyahu-literally-says-from-the-river-to-the-sea

exchange) On November 9, 2023, Dean Chemerinsky emailed the school misrepresenting the pro-Palestine bylaw, saying that any journal who adopted one would not earn academic credit, be disaffiliated from UC, and not be published by UC. (EXHIBIT D) These open acts of intimidation had a chilling effect, and support for the bylaw in BJELL fell just short of the 75 percent required for its adoption. Barkan also was a third-year law student who objected to the assault of Ms. Afaneh at Dean Chemerinsky's event for third-year law students. Chemerinsky told Barkan and other students that he would report them to the State Bar. Chemerinsky posted a message to the entire law school saying that, if similar incidents occurred, he would press University Code of Conduct charges and report students to the State Bar. (EXHIBIT E)[8] *See* 2nd Declaration of Muki Barkan.

**Berkeley Law Student #1** (she/her) is a third-year Berkeley Law student. She has been a member of LSJP and BLJ4P since her first year at Berkeley Law. She is a Jewish student who is a strong advocate for the rights of the Palestinians. She is also a member of Berkeley Law's Queer Caucus and part of BJELL and advocated for the adoption of pro-Palestine bylaws.

**Eli Harris** (they/them, he/him) is a Jewish and transgender student at the University of Connecticut, double-majoring in Ecology and Evolutionary Biology, and Natural Resources. Harris was raised in a religious Jewish family with the Jewish values of compassion and opposition to religious intolerance; they therefore oppose Netanyahu's war and genocide in Palestine. Harris has been a committed participant in protests, including the encampment at UConn, in support of Palestine. *See* Declaration of Eli Harris.

**Isaac (Izzy) Tragarz** (they/them) is a Jewish undergraduate student at UC-Berkeley, a Film Studies major, and has been a committed participant in protests, including the encampment at UC Berkeley, in support of Palestine.

**Donna Stern** (she/her) is Jewish and an atheist, and a life-long activist for Palestinian rights and civil rights for all. As the former elected President and Bargaining Chair of AFSCME Local 140, she has organized health care workers to fight for dignity and better working conditions.

---

[8] The original version of this message is included as Exhibit E, and is authenticated by Muki Barkan's 2nd Declaration. It is available on the Internet Archive at: https://web.archive.org/web/20240410160149/https://www.law.berkeley.edu/article/statement-from-dean-erwin-chemerinsky/

She is a member of the Detroit chapter of the Proposed Intervenor organization BAMN. **Kate Stenvig** (she/her) is Jewish and an atheist, an alum of the University of Michigan-Ann Arbor, and an activist for Palestinian rights, civil rights, and immigrant rights. She is a member of the Detroit chapter of BAMN. **Neal Lyons** (he/him) is from a Jewish-American family and is atheist. His family's response to antisemitism was to "not be Jewish." He is an alum of the University of Michigan-Ann Arbor, an activist for Palestinian liberation, and is part of Detroit BAMN.

<u>**Other students, researchers, and activists**</u>

The **Berkeley Muslim Student Association (MSA)** originated primarily to bring together Muslims of diverse backgrounds and cultures under one unified, organized, proactive community. The MSA at Berkeley stands upon the principles of inclusiveness, responsibility, and action. As an organization aimed primarily at the student body, they strive to remain inclusive of those who wish to understand, appreciate, and practice their Islam without compromising their morals and beliefs. The MSA also reaches out to those who are not Muslims, primarily to educate them about the misconceptions regarding Islam and the Islamic way of life, and to include anyone willing to stand up for truth, justice, and peace.

The **Coalition to Defend Affirmative Action, Integration and Immigrant Rights and Fight for Equality By Any Means Necessary (BAMN)** is a civil rights coalition that fights racism in the U.S. and abroad and is organizing for victory for the Palestinian struggle. It includes UC students and researchers who have participated in protests for Palestine. BAMN spearheaded the mass petition campaign opposing the UC Regents' July 18, 2024 policy to censor political speech on university websites. BAMN publishes articles and organizes educational events and protests.

The **Movement for Justice By Any Means Necessary (MFJ)** is an international civil rights and immigrant rights organization. It is based in the United Kingdom and is a sister organization of BAMN. It also calls for victory for the Palestinian struggle and publishes articles, circulates petitions, and organizes educational events and protests for this cause.

The Proposed Intervenors include the following UC-Berkeley current and recent students. **Arash Mohammady** (he/him) is a recent graduate of UCB, Class of 2024, majoring in Biology. He has participated in protests for the liberation of Palestine at UCB. His family is Afghani and he

is a practicing Muslim. **Jesús Gutiérrez** is a UCB graduate student of Anthropology, has participated in protests in support of Palestine at UCB, and is committed to public education and student rights. He is also active in his graduate union, UAW 4811. **Bryan Avelar** is a UCB undergraduate student, born in Delano, California, home of the United Farm Workers' movement. He has been active in the movement for justice for Palestine and has regularly participated in the protests at UCB. **UCB Graduate Student #1** is Muslim and has participated in protests in support of Palestine at UCB, including the encampment for Palestine in Spring 2024. **Eisha Mumtaz** (she/her) is Muslim and a recent graduate of UC Berkeley. Joining the protests in support of Palestine at UCB gave her the hope and strength to finish her studies at UCB. **Undergraduate Student #1** (she/her) is an undergraduate student at UC-Berkeley. She has been an enthusiastic participant in protests supporting Palestine at UCB. **Lianna van Hout** (she/her) is an undergraduate student at UCB. She has participated in many protests, especially in support of Palestine at UCB, and is a lifelong resident of the city of Berkeley.

The Proposed Intervenors include individuals from other UC campuses who will be directly affected by this lawsuit. **Dr. Benjamin Lynch** (he/him) is a solar physicist and researcher at UCLA in its Department of Earth, Planetary, and Space Sciences (EPSS). He is a member of BAMN. He is also a former bargaining team member of UAW 4811, in which he is still active. He is an outspoken leader who advocates for uniting the new civil rights and immigrant rights movement with a global anti-imperialist and environmental movement. He participates in protests in support of Palestine at UCB and UCLA, and helped defend the UCLA encampment on May 1-2, 2024. **Noorulain Irshad** (he/they) is an Indian-American recent graduate of UC Merced in Computer Science and Engineering, and a member of Students for Justice in Palestine.

**Nicole Conaway** (she/her) seeks to become an attorney and is a prospective UC law student. She is a member of BAMN and lives in Detroit, Michigan. She has been a leader for public education and a strong advocate for the liberation of Palestine.

The Proposed Intervenors include current students and recent graduates at other colleges and universities, whose First Amendment rights would be directly affected if the Plaintiffs prevail. **Dennis Cameron** (he/him) is an art major at Michigan's Henry Ford Community College who

organizes and attends protests for Palestine. **Sabrina Sarwar** (she/her) is the former president of the Palestine Solidarity Committee and a student at St. John's University and has participated in protests for Palestine. **Islam Ayyad** (she/her) is a graduate of San Francisco State University in Sociology. She is Palestinian-American and has participated in countless protests for Palestine. **Amina Shakeel** (she/her) is a Pakistani-Polish American and recent graduate of the University of Connecticut and participates in protests for Palestine. She joined UConn's pro-Palestine encampment in Spring 2024. **Amanatun Nesa** (she/her) is a Bangladeshi-American student studying Math at Drexel University. She is a community activist and also part of the movement for a free Palestine. **Tana Nick** (she/her) is a black student activist studying International Affairs at George Mason University and participates in local and national protests for Palestine. **Kyanna Huff** (she/her) is a student at Michigan's Oakland Community College and joins in protests for Palestine. **Aaliyah Wheeler** (she/her) is a Digital Arts student at Wayne State University and has long stood up against racism. She also participates in protests for Palestine. **Byanca Ninov** (she/her) is a Public Relations major, born and raised in Detroit. She attends Wayne State University and participates in protests for Palestine. **Tyler Wood** (he/him) is a Wayne State University student studying Education. He is a committed activist for LGBT+ and Palestinian rights. **Jeremy Eugene** (he/they) is a Special Education and English teacher in Cyprus Fairbanks Independent School District in Texas, who is a leader in his union for Palestinian and human rights.

**Alex Owolade** (he/him) is a leader of the Proposed Intervenor organization Movement for Justice (MFJ). He lives in London and has led numerous protests for Palestine.

## STATEMENT OF FACTS

The Plaintiffs filed their original Complaint on November 28, 2023 against the UC Regents, UC-Berkeley, Berkeley Law School, and various UC officials ("the UC Defendants"). (Dkt. No. 1) This original Complaint focused on Berkeley Law School and the continued recognition and funding of law student organizations who had adopted bylaws protesting Israel.

On May 3, 2024, Plaintiffs filed a First Amended Complaint ("FAC") against the UC Defendants that significantly broadened the scope of the suit beyond the law school, claiming that the UC Defendants had failed to take action against a wide variety of speech activities at UCB.

This directly implicates all speech activities in support of Palestine at campuses across the country. (Dkt. No. 62) The FAC quotes UC officials extensively for the proposition that the pro-Palestine protests are "antisemitic." Berkeley Law Dean Chemerinsky is essentially the Plaintiffs' main advocate and is quoted repeatedly along with other UC officials condemning and trying to marginalize pro-Palestinian students.[9]

The FAC makes numerous allegations about the acts of individuals who are among the Proposed Intervenors. It makes allegations about the acts of student organizations that some of the Proposed Intervenors are part of and in whose demonstrations they have participated. It makes allegations specifically about Proposed Intervenor Malak Afaneh. FAC ¶¶11-13, 88-89, 106. But it does not name any of these individuals as a Defendant or a Real Party in Interest.

On June 10, 2024, the UC Defendants filed a Motion to Dismiss based on lack of standing, lack of ripeness, and failure to state a claim upon which relief can be granted. (Dkt. No. 68, "Motion to Dismiss") They did not challenge Plaintiffs' argument that the speech activities at UCB were "antisemitic"; rather, they emphasized the actions UC had taken to suppress that speech and to "investigate" individuals who engaged in pro-Palestine protests. Motion to Dismiss, at 1-2.

## ARGUMENT

### I.     The Proposed Intervenors have a right to intervene under Rule 24(a).

Intervention as a matter of right is governed by Federal Rule of Civil Procedure 24(a). The applicant must show that:

> (1) it has a "significant protectable interest" relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest.

*Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998) (citation omitted).

"Rule 24 traditionally has received a liberal construction in favor of applications for intervention." *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 527 (9th Cir. 1983) (citation omitted). Courts "are guided primarily by practical and equitable considerations" and "construe

---

[9] *See* FAC ¶¶13, 15-17, 20, 81, 87, 91, 117, 128, 141, 147-152, 155.

[Rule 24] broadly in favor of proposed intervenors." *United States v. City of Los Angeles,* 288 F.3d 391, 397 (9th Cir. 2002).

> A liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts. By allowing parties with a practical interest in the outcome of a particular case to intervene, we often prevent or simplify future litigation involving related issues; at the same time, we allow an additional interested party to express its views before the court.

*Forest Conserv. Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1496 n. 8 (9th Cir. 1995) (quoting *Greene v. United States*, 996 F.2d 973, 980 (9th Cir. 1993) (Reinhardt, J., dissenting)).

The Proposed Intervenors easily meet the four criteria for intervention as a matter of right.

## A. This Motion is timely.

To determine timeliness, the Court must evaluate "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reasons for and length of delay." *County of Orange v. Air California*, 799 F.2d 535, 537 (9th Cir. 1986).

This motion is timely. There has been little delay in the filing of the application for intervention. The Plaintiffs filed their significantly-expanded First Amended Complaint on May 3, 2024, and the UC Defendants filed their Motion to Dismiss with its inadequate argument on June 10, 2024. Granting the Proposed Intervenors' motion will not prejudice any party, since it has been filed before any substantive rulings and before the commencement of discovery.

Under any criterion, the motion to intervene is timely. *See Idaho Farm Bureau Fed'n v. Babbitt,* 58 F.3d 1392, 1397 (9th Cir. 1995) (intervention timely four months after complaint); *Utah Ass'n of Counties v. Clinton,* 255 F.3d 1246, 1250-51 (10th Cir. 2001) (intervention timely three years after complaint because no party would be prejudiced); *Kalbers v. United States Dep't of Justic*e, 22 F.4th 816, 823 (9th Cir. 2021) ("[T]imeliness is not a tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the original parties by the failure to apply sooner.") (citing *John Doe No. 1 v. Glickman*, 256 F.3d 371, 375 (5th Cir. 2001))

## B. This Court should grant intervention before ruling on the pending Motion to Dismiss.

This case will not be decided by this Court alone. It will go through appeals. The U.S. Supreme Court will at some point have the opportunity to weigh in on this case. The Proposed

Intervenors must be given a voice in these proceedings from the beginning, because they will make arguments and present evidence that the UC Defendants will not. For the present Motion to Dismiss, the Proposed Intervenors submit the arguments in this Brief to show that the FAC fails to state a claim for which relief can be granted under Rule 12(b)(6), because the prayed-for relief would violate the Proposed Intervenors' First Amendment rights to speech, association, and religious freedom. Further, Plaintiffs' goal of making criticism of Israel illegal seeks to impose a *viewpoint-based restriction* that violates the First Amendment.[10]

If discovery proceeds, there must be a full record that includes the Proposed Intervenors' evidence and argument. *See New York Public Interest Research Group v. Regents of the University*, 516 F.2d 350, 352 (2d Cir. 1975) ("The dissent sees the possibility of a summary disposition of the case at an early stage and of [proposed intervenor's] participation in the appeal. These possibilities militate in favor of intervention at this stage, not against it. Appellant should be permitted fully to participate in making the record on which it may have to rely on appeal.") (emphasis added)

**C. The Proposed Intervenors have the requisite interest in the subject of this case.**

*The Proposed Intervenors are the true targets of this lawsuit.* It is *their* First Amendment right to criticize the actions of the State of Israel and the U.S. government that would be declared null and void. These governments daily threaten a broader war with Lebanon, Iran, and the Middle East. China has weighed in on the conflict and is an ally of Iran. The Proposed Intervenors assert their First Amendment right to engage in speech on this central question in this year's presidential election and in national and international politics. These speech activities have been stigmatized and faced repression under the false label of being "antisemitic"; this would escalate if Plaintiffs are granted any part of the relief they seek. The Proposed Intervenors have an interest in defending civil liberties and preventing the growth of university and government surveillance, intimidation, and repression of the Palestine movement.

---

[10] The Proposed Intervenors submit a Proposed Answer to the FAC (EXHIBIT A), which asserts the Affirmative Defense that the FAC fails to state a claim for which relief can be granted. If permitted to intervene, the Proposed Intervenors would join the UC Defendants' Motion to Dismiss and submit these arguments.

Plaintiffs seek relief that would violate the right of members of the Proposed Intervenors who are religious Jews of their First Amendment right to criticize the State of Israel as an expression of their religious beliefs. (See *supra* at 3-6)

For those Proposed Intervenors who are Muslim and/or Arab or Palestinian origin, a governmental prohibition of so-called "antisemitic" speech fosters a hostile environment based on race and religion. A viewpoint-based prohibition singling out speech criticizing the genocide of Arabs and Palestinians has the practical effect of sanctioning legal and extralegal attacks against these groups.

The Proposed Intervenors include current and future UC researchers who have an interest in academic freedom. The UC Regents' July 18, 2024 measure to censor academic department websites to silence pro-Palestinian speech (*supra* at 5, footnote 3) and Plaintiffs' lawsuit threaten critical thinking and scholarship on global politics and the most pressing issues of the day.

The Proposed Intervenors' interests are distinct from, and far broader and deeper than those of the UC Defendants. They share an interest in preventing the creation of a police state and fascism in the United States. The Plaintiffs seek to make the Federal Courts, which have moved farther to the right since the presidency of Donald Trump, declare that criticism of Israel and the U.S. government funding a genocide are illegal because they are "antisemitic." This would establish a dangerous precedent: if Americans are not permitted to protest genocide, then the danger of genocide and fascism in the United States grows. Victory for the Brandeis Plaintiffs would prompt a surge in official and extralegal efforts by the government and far-right forces to repress speech for all progressive causes. Already in the United States, the slanderous claim that the Proposed Intervenors' movement is "antisemitic" is echoed with such frequency, with the support of both major political parties, and with a degree of irrationality and hysteria that has not been seen since the label "Communist" was used against all progressive causes and all dissent in the McCarthy era. The lie that the pro-Palestine movement is "antisemitic" has been used by the government and by the administrations of colleges and universities—the UC Defendants included—to justify the surveillance, intimidation, silencing, and repression of pro-Palestinian students and professors. At UCLA, this included the University administration and police

colluding with a fascist mob who sent dozens of students to the hospital. *See supra* at 4, footnote 2. Plaintiffs' lawsuit, if successful, would facilitate an unprecedented governmental clampdown on civil liberties, embolden the growth of the far right, and threaten the survival of democracy itself.

"It is generally enough that the interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." *Sierra Club v. U.S.E.P.A.,* 995 F.2d 1478, 1484 (9th Cir. 1993). A prospective intervenor "has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation." *California ex rel. Lockyer v. United States,* 450 F.3d 436, 441 (9th Cir. 2006). "[W]hen… the injunctive relief sought by plaintiffs will have direct, immediate, and harmful effects upon a third party's legally protectable interests, that party satisfies the 'interest' test of [Rule 24]." *Forest Conserv. Council,* 66 F.3d at 1494.

The Ninth Circuit holds: "Rule 24(a)(2) does not require a specific legal or equitable interest… 'the interest test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process.'" *Wilderness Soc. v. U.S. Forest Service,* 630 F.3d 1173, 1179 (9th Cir. 2011)*. Also see Idaho v. Freeman,* 625 F.2d 886 (9th Cir. 1980) (granting intervention to the National Organization for Women (NOW) in action affecting the procedures for ratification of the Equal Rights Amendment)

The Proposed Intervenors more than meet this standard.  Plaintiffs' lawsuit names the UC Regents as a defendant, which governs the entire UC system. Targeting the nation's number-one public university and leading public law school, it will set the legal standard for all colleges and universities nationally. It seeks "an injunction preliminarily and permanently enjoining Defendants from (i) permitting registered student organizations to harass or exclude Jews, including under the guise of barring Zionists [sic]; (ii) funding any student organization that harasses or excludes Zionists or, more generally, Jews [sic]; and (iii) granting official recognition to any student organization that harasses or excludes Zionists or, more generally, Jews [sic]." FAC, at 53 (emphasis added). They additionally seek a court order "mandating that Defendants take action against the present and future pro-Palestine protests at UC-Berkeley Sather Gate and

encampments." FAC, Prayer ¶5 (emphasis added) Plaintiffs make clear that they seek injunctive relief against any criticism of Israel's policies. In addition to the immediate practical impairment of the Proposed Intervenors' right to participate in the activities of the registered student organizations that Plaintiffs seek to derecognize and defund,[11] Plaintiffs seek a viewpoint-based restriction on speech because they seek an order equating anti-Zionism to anti-Jewish discrimination/antisemitism. The Plaintiffs make allegations that paint every statement or protest that criticizes Israel as "antisemitic." FAC, ¶¶2-20, 69-80, 85-89, 93-98, 101-106, 109-130. The FAC quotes with approval Berkeley Law Dean Chemerinsky: "Dean Chemerinsky further explained that actually "exclud[ing] a speaker on account of being Jewish <u>or holding particular views about Israel</u>" is "conduct, of course, [that] would be subject to sanctions." FAC ¶148 (emphasis added).

### D. Disposition of this case may, as a practical matter, substantially impair or impede the Proposed Intervenors' interests.

"Rule [24] refers to impairment 'as a practical matter.' Thus, the court is not limited to consequences of a strictly legal nature." *Natural Resources v. U.S. Nuc. Reg. Com'n,* 578 F.2d 1341,1345 (10th Cir. 1978). The rules advisory committee's note for Rule 24 states, "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene."

Plaintiffs' lawsuit, if successful, would impair the Proposed Intervenors' interest in maintaining organizations which support Palestinian rights and oppose the policies of the Israeli government, and their interest in participating in activities by those groups. A legal finding that such speech is "antisemitic" and therefore illegal would impair their First Amendment rights to

---

[11] The case most analogous to this interest is *Sierra Club.* In *Sierra Club,* an environmental organization sued the U.S. Environmental Protection Agency for an injunction that would have required the EPA to change the terms of permits issued to the City of Phoenix for two of its wastewater treatment plants. *Sierra Club,* 995 F.2d at 1481. The City had the right to intervene, because a negative result would have affected its interest in its permits. Also relevant in *Sierra Club* was that the law at issue was the Clean Water Act, which concerned how the government "regulates private parties." *Id.* at 1485. Here the Plaintiffs evoke antidiscrimination laws in order to imbricate First Amendment rights; both of which are laws that regulate private parties and deeply affect the Proposed Intervenors' rights.

speech and association, and the right of Proposed Intervenors who are religious Jews to religious freedom. It would impair the right of Muslim, Arab and Palestinian members of the Proposed Intervenors to be free from a hostile environment in education.

**E. The Proposed Intervenors' interests are inadequately represented by the existing parties.**

This court has consistently followed *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10… (1972) in holding that the requirement of inadequacy of representation is satisfied if the applicant shows that representation of its interests "may be" inadequate and that the burden of making this showing is minimal.

*Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983)

In determining adequacy of representation, we consider whether the interest of a present party is such that it will <u>undoubtedly make all the intervenor's arguments;</u> <u>whether the present party is capable and willing to make such arguments; and</u> <u>whether the intervenor would offer any necessary elements to the proceedings that</u> <u>other parties would neglect.</u>

*Forest Conserv. Council*, 66 F.3d at 1498-99 (citing *California v. Tahoe Regional Planning Agency*, 792 F.2d 775, 778 (9th Cir. 1986)). (emphasis added)

The UC Defendants will not adequately defend the Proposed Intervenors' First Amendment right to criticize U.S. policy and support Palestine, because *the UC Defendants have repressed* their right to do so. The FAC repeatedly quotes UC officials who agree with Brandeis *on the core issue of this case:* that the pro-Palestine protests are "antisemitic." *See supra* at 14, footnote 8.

The Proposed Intervenors include individuals who passed pro-Palestine bylaws of their student organizations at Berkeley Law School. They are exercising their First Amendment right to express opposition to Israel's oppression of Palestinians and not having their funds and resources give a platform to individuals who support that oppression. These bylaws made explicitly clear that they were not antisemitic. For example, the Berkeley Journal of Gender, Law & Justice, adopted bylaws which state:

BGLJ understands Zionism as the failed answer to the real question of how to protect Jewish lives from antisemitism… We do not equate the political ideology of Zionism with the religion of Judaism, and standing in opposition to Zionism does not mean we stand in opposition to Jewish people. On the contrary, we understand the political project of Zionism has also made Jewish people less safe, marginalizing Jews of color and subjecting millions to violence under the misnomer of Jewish safety. It is clear that Zionism, in practice, has resulted in massacres of

Palestinian people and the systematic separation of Palestinians from their homes, land, and each other - and it is this practice that we oppose.

EXHIBIT F (BGLJ Bylaws, 8 (Article 4.4(e))[12]

But numerous *UC officials* are quoted in the FAC (*supra* at 14, footnote 8), wholly subscribing to the Plaintiffs' false claim that the bylaws are "antisemitic." The UC Defendants' Motion to Dismiss states: "The University, however, swiftly denounced the [bylaw] policies, expressed support for Jewish students, and announced that it would not grant academic credit for participation in any student organization that adopted the bylaws." Motion to Dismiss, at 2. UC Regents Chair Richard Leib condemned the bylaws as "antisemitic." (EXHIBIT G)[13] *Also see* Chemerinsky's email announcing he is denying academic credit to BGLJ and other law journals supporting Palestine. (Dkt. No. 62-3, Plaintiffs' Exhibit C) The FAC quotes Chemerinsky saying, "[E]xclud[ing] a speaker on account of being Jewish or holding particular views about Israel" is "conduct, of course, [that] would be subject to sanctions." FAC ¶148 (emphasis added).

In sharp contrast, Chemerinsky and other UC officials have done nothing with regard to the Jewish Students Association at Berkeley Law's right to adopt a Constitution that states it "will not support, fund or sponsor activities or programs that… [d]eny the Jewish people the right to safety, security and self-determination [sic], including through participation in the Boycott, Divestment and Sanctions Movement." (EXHIBIT H - JSAB Constitution, at Article VI, Sec. 1)[14] The UC Defendants only try to repress speech they disagree with: that of the Proposed Intervenors.

On July 18, 2024, the UC Regents adopted a policy banning statements about Israel on university homepages, directly in response to speech by UC academic departments criticizing Israel. *See supra* at 5, footnote 3. While attacking the First Amendment rights of faculty, researchers, and students to speak against Israel's ongoing genocide, UC leaders have used their titles and authority as representatives of UC to whip-up anti-Palestinian, anti-Muslim, and anti-Arab hatred. In the wake of the October 7, 2023 Hamas attack, on October 9, 2023 named

---

[12] Also available at: https://callink.berkeley.edu/organization/gaberkeleyjournalofgenderlawandjustice

[13] "UC Regents Chair Richard Leib statement on UC Berkeley School of Law" (Oct. 13, 2022) Available at UC's website: https://www.universityofcalifornia.edu/press-room/uc-regents-chair-richard-leib-statement-uc-berkeley-school-law

[14] Also available at: https://callink.berkeley.edu/organization/jsabl

Defendant UC President Michael Drake condemned only attacks against Israeli "children and the elderly" and only called the deaths of Israelis "sickening," and named Defendant UCB Chancellor Carol Christ joined Chemerinsky in signing a similar statement of UCB faculty. (EXHIBIT I)[15] But when the Proposed Intervenors ask their University officials to make similar statements condemning the unnecessary deaths of thousands of children and civilians who are Palestinian, UC responds by claiming that their efforts are "antisemitic" and uses tear gas and police batons.[16] UC officials have loudly condemned antisemitic incidents, but when Muslim and Arab students report Islamophobic harassment and threats, they are met with silence. This fosters a hostile environment for Muslim, Arab, and Palestinian students.

The FAC is replete with falsehoods and mischaracterizations of pro-Palestine protests at UC-Berkeley. It makes claims on behalf of alleged victims who are not part of this action, not even in an anonymous capacity. Plaintiffs rely on studies and reports authored by their own organization. FAC ¶¶2,7. The University makes no effort to counter Plaintiffs' falsehoods and misrepresentations. Meanwhile, the people who are being slandered and repressed are not given a chance to defend themselves. The Proposed Intervenors will present arguments and evidence that the UC Defendants will not. The Proposed Intervenors include people who will testify about the protests at UCB and their true character, which includes opposition to Islamophobia and antisemitism. In stark contrast, UC's answer is that it is "investigating" the students: "[T]he University has repeatedly and strongly condemned these acts, revoked eligibility for academic credit, threatened to report individuals to state bar authorities, increased security, and initiated ongoing hate crimes investigation." (Dkt. No. 70, Reply in Support of Motion to Dismiss, at 1)

The Proposed Intervenors will present historical research and evidence that the UC Defendants will not, to present the protestors' message and their analysis of the conflict in Israel/Palestine. This conflict is about the right of Palestinians to a homeland. The Israeli government is carrying out massacres and mass displacement, trying to annihilate any possibility

---

[15] Also available at: https://docs.google.com/document/d/1L2RmaSrmKztuxK_Gfvca-qnGSDhf3G_C/edit

[16] *See supra* at 9 (UC ignoring Muslim students' complaints); and *supra* at 4, footnote 2 (the violent UCLA police/fascist crackdown).

of an independent Palestinian state. Zionism and Judaism are not one and the same. The right to a Jewish homeland should not additionally include state-sponsored discrimination, occupation, and genocide of Palestinians. Further, many Jews, including many in Israel itself (some of whom are relatives of the Proposed Intervenors), call themselves Zionists because they believe that Jews have the right to a homeland, but support ousting Netanyahu and ending Israel's genocidal policies because they support Palestinians' right to have their own independent state. The Proposed Intervenors include Jews who will present this perspective. The Proposed Intervenors will present expert testimony and research to make an extensive record about the conflict in Israel/Palestine.

The Proposed Intervenors do not share in—in fact, they recognize the danger of—the UC Defendants' argument that, as a University administration, they should not be held accountable for their actions with regard to speech and discrimination.

It would be unjust to exclude the Proposed Intervenors from this case. At present, Jewish supporters of Netanyahu's genocidal policies are represented, but opponents of those policies who are Jews and of all religious faiths and philosophies have no voice. The Plaintiffs present a one-sided, false, and grossly distorted picture of what is going on at UCB and in the pro-Palestine demonstrations, one that the UC Defendants make zero effort to correct.

It is clear that the UC Defendants will *not* "make all the intervenor's arguments" and are *not* "willing to make such arguments". *Forest Conserv. Council,* 66 F.3d at 1498-99.

Additionally, the UC Defendants must represent a variety of interests. At UCB, there are students and faculty who support the present actions of Israel. *See Sierra Club,* 18 F.3d at 1208 ("[T]he government must present the broad public interest, not just the economic concerns of the timber industry."); *also see Shermoen v. U.S.,* 982 F.2d 1312, 1318 (9th Cir. 1992) ("it is unlikely that the government could sufficiently represent the competing interests of the [present and absent] tribes, for the government must also act in keeping with its role and obligations as trustee")

The UC Defendants' arguments, while correct to the extent that they assert they may not limit the Proposed Intervenors' right to engage in pro-Palestine speech, are largely motivated by UC's narrow interest to protect itself from legal liability. Their Motion to Dismiss argues that Plaintiffs' lawsuit would compel them to engage in disciplinary actions "that would expose [UC]

to constitutional or statutory claims." (Motion to Dismiss, at 10) They write, "[R]evoking LSJP's status in the present circumstances would create risk of potential constitutional concerns." *Id.* at 14. Essentially, their actual defense of the Proposed Intervenors' right to speech only goes so far as the courts are willing to protect it.

Out of this same concern for their own liability, the UC Defendants will not bring up facts that the Proposed Intervenors can raise, evidence that the UC Defendants have, in fact, repressed pro-Palestinian speech.

For all the above reasons, the Proposed Intervenors have a right to intervention.

## II. Permissive intervention

Rule 24(b) allows permissive intervention when an applicant's "claim or defense… shares with the main action a common question of law or fact" and when the intervention "will [not] unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b).

The Proposed Intervenors assert that the pro-Palestine bylaws and protests at UCB have not been "antisemitic": the central question of law *and* fact of the Plaintiffs' lawsuit.

Permissive intervention is also justified because Proposed Intervenors' participation will facilitate an equitable result. *See Spangler v. Pasadena City Bd. of Educ.,* 552 F.2d 1326, 1329 (9th Cir. 1977) (court may consider whether intervenors "will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented"). Here, Proposed Intervenors can provide a crucial perspective on the important issues implicated by the FAC. This case has significant implications, for First Amendment rights, for national policy with regard to speech on college and university campuses, and for religious freedom. As a result, it is essential that all arguments receive full attention.

For the above reasons, this Court should grant intervention.

By the Proposed Intervenors' Attorneys,
UNITED FOR EQUALITY AND AFFIRMATIVE
ACTION LEGAL DEFENSE FUND (UEAALDF)

BY: /s/ Ronald Cruz
Date: August 15, 2024