TORRIDON LAW PLLC
John V. Coghlan (admitted *Pro Hac Vice*)
  jcoghlan@torridonlaw.com
Tara Helfman (admitted *Pro Hac Vice*)
  thelfman@torridonlaw.com
801 Seventeenth Street NW, Suite 1100
Washington, DC 20006
Telephone: (202) 249-6900
Facsimile: (202) 249-6899

ELLIS GEORGE LLP
Eric M. George (CA Bar No. 166403)
  egeorge@ellisgeorge.com
David J. Carroll (CA Bar No. 291665)
  dcarroll@ellisgeorge.com
2121 Avenue of the Stars, 30th Floor
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697

THE LOUIS D. BRANDEIS CENTER FOR
HUMAN RIGHTS UNDER LAW
Kenneth L. Marcus (admitted *Pro Hac Vice*)
  klmarcus@brandeiscenter.com
L. Rachel Lerman (CA Bar No. 193080)
  rlerman@brandeiscenter.com
1717 Pennsylvania Ave., NW, Suite 1025
Washington, DC 20006
Telephone: (202) 559-9296

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| THE LOUIS D. BRANDEIS CENTER, INC.; JEWISH AMERICANS FOR FAIRNESS IN EDUCATION (JAFE), | Case No. 3:23-cv-06133-JD |
| | The Hon. James Donato |
| Plaintiffs, | Trial Date:  None Set |
| vs. | **PLAINTIFFS THE LOUIS D. BRANDEIS CENTER, INC. AND JEWISH AMERICANS FOR FAIRNESS IN EDUCATION'S OPPOSITION TO MOTION TO INTERVENE** |
| REGENTS OF THE UNIVERSITY OF CALIFORNIA, *et al.* | |
| Defendants. | |
| | **Hearing Date: October 10, 2024** |

2456340

# TABLE OF CONTENTS

**Page**

INTRODUCTION ......................................................................................................................1

THE PROPOSED INTERVENORS .........................................................................................3

ARGUMENT ...........................................................................................................................3

I.      Proposed Intervenors Fail to Satisfy Rule 24(a)'s Requirements for Intervention as a Matter of Right. ..........................................................................................................3

      A.      Applicants Have Not Shown a "Significant Protectable Interest" that Actually Will Be Affected by the Resolution of Plaintiffs' Claims. .........................4

            1.      The Standard Is Narrower than Applicants Represent. ..................................4

            2.      Applicants' Alleged Interest Bears Too Tenuous and Remote a Relationship to the Remedies Sought to Constitute a "Significant Protected Interest." .........................................................................................5

            3.      Applicants Mischaracterize the Pleadings and Rely on Inapposite Case Law. ...................................................................................................6

      B.      Applicants Fail to Show that Their Interests Are Not Adequately Protected by Defendants. ...............................................................................................9

      C.      Applicants Fail to Show Their Motion Is Timely. ...................................................10

            1.      Applicants Fail to Justify Their Delay. .......................................................11

            2.      Applicants' Delay Is Harming Plaintiffs. ....................................................12

            3.      The Stage of the Proceedings Weighs Against Intervention. .......................13

II.     Applicants Do Not Satisfy the Requirements for Permissive Intervention. ........................13

      A.      The Motion Is Not Timely. .....................................................................................14

      B.      Intervention Will Unduly Delay and Prejudice the Adjudication of Plaintiffs' Rights. ..................................................................................................14

CONCLUSION .......................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*,
    54 F.4th 1078 (9th Cir. 2022).............................................................................4

*Calif. Dep't of Toxic Substances Control v. Com. Realty Projects, Inc.*,
    309 F.3d 1113 (9th Cir. 2002)........................................................................11

*Callahan v. Brookdale Senior Living Communities, Inc.*,
    42 F.4th 1013 (9th Cir. 2022)....................................................................9, 10

*Chevron Env't Mgmt. Co. v. Env't Prot. Corp.*,
    No. 20-16206, 2022 WL 10966098 (9th Cir. Oct. 19, 2022).........................3

*Cnty. of Orange v. Air Calif.*,
    799 F.2d 535 (9th Cir. 1986)...................................................................10, 13

*Dilks v. Aloha Airlines*,
    642 F.2d 1155 (9th Cir. 1981)...............................................................4, 9, 10

*Donnelly v. Glickman*,
    159 F.3d 405 (9th Cir. 1998)......................................................................4, 5

*Drakes Bay Oyster Co. v. Salazar*,
    No. 12-CV-06134-YGR, 2013 WL 451813 (N.D. Cal. Feb. 4, 2013), *aff'd sub nom.*
    *Drakes Bay Oyster Co. v. Env't Action Comm. of W. Marin*, 571 F. App'x 605 (9th
    Cir. 2014) .......................................................................................................15

*East Bay Sanctuary Covenant v. Barr*,
    500 F. Supp. 3d 1030 (N.D. Cal. 2020) .......................................................13

*Fed. Trade Comm'n v. Triangle Media Corp.*,
    No. 22-56012, 2023 WL 8592867 (9th Cir. Dec. 12, 2023) ........................14

*Idaho Farm Bureau Fed'n v. Babbitt*,
    58 F.3d 1392 (9th Cir. 1995)........................................................................11

*In re Disciplinary Action Boucher*,
    837 F.2d 869 (9th Cir. 1988)........................................................................15

*In re Girardi*,
    611 F.3d 1027 (9th Cir. 2010)......................................................................15

*Key Bank of Puget Sound v. Alaskan Harvester*,
    738 F. Supp. 398 (W.D. Wash. 1989) ..........................................................12

## <u>TABLE OF AUTHORITIES</u>
### (continued)

**Page(s)**

*Montgomery v. Rumsfeld*,
  572 F.2d 250 (9th Cir. 1978)..................................................................................14

*Navajo Nation v. U.S. Dep't of the Interior*,
  No. CV-19-08340-PCT-JJT, 2024 WL 3299986 (D. Ariz. June 18, 2024) ..............10

*Perry v. Prop. 8 Off. Proponents*,
  587 F. 3d 947 (9th Cir. 2009)...............................................................................3, 14

*Public Serv. Co. of N.H. v. Patch*,
  136 F.3d 197 (1st Cir.1998) ......................................................................................6

*S. Cal. Edison Co. v. Lynch*,
  307 F.3d 794 (9th Cir. 2002)..............................................................................4, 6, 7

*Sierra Club v. U.S. E.P.A.*,
  995 F.2d 1478 (9th Cir. 1993)..............................................................................8, 9

*Smith v. L.A. Unified Sch. Dist.*,
  830 F.3d 843 (9th Cir. 2016).................................................................................12

*Smith v. Marsh*,
  194 F.3d 1045 (9th Cir. 1999)..........................................................................12, 13

*Spangler v. Pasadena City Bd. of Educ.*,
  552 F.2d 1326 (9th Cir. 1977).................................................................................14

*SurvJustice Inc. v. Devos*,
  No. 18-cv-00535-JSC, 2019 WL 1427447 (N.D. Cal. March 29, 2019) ...................12

*U.S. Equal Emp. Opportunity Comm'n v. Activision Blizzard, Inc.*,
  No. 22-55515, 2023 WL 8908774 (9th Cir. Dec. 27, 2023) ....................................11

*United States v. Alisal Water Corp.*,
  370 F.3d 915 (9th Cir. 2004).....................................................................................3

*United States v. State of Wash.*,
  86 F.3d 1499 (9th Cir. 1996)...................................................................................11

*Utah Ass'n of Counties v. Clinton*,
  255 F.3d 1246 (10th Cir. 2001)...............................................................................12

*Vallejo v. Sterigenics U.S., LLC*,
  No. 20-CV-01788-AJB-AHG, 2023 WL 2958465 (S.D. Cal. Apr. 13, 2023)............4

*Westlands Water Dist. v. U.S.*,
  700 F.2d 561 (9th Cir.1983)......................................................................................7

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Wilderness Soc. v. U.S. Forest Service*,
630 F.3d 1173 (9th Cir. 2011)................................................................................4, 8

**RULES**

Fed. R. Civ. P. 12(b)(6)................................................................................................10

Fed. R. Civ. P. 24........................................................................................................10

Fed. R. Civ. P. 24(a)..........................................................................................3, 4, 7, 10

Fed. R. Civ. P. 24(a)(2)..................................................................................................3

Fed. R. Civ. P. 24(b)....................................................................................................13

Fed. R. Civ. P. 24(b)(1)(B)............................................................................................13

Fed. R. Civ. P. 24(b)(3)........................................................................................2, 13, 14

Fed. R. Civ. P. 25(b)(3)................................................................................................15

**CONSTITUTIONAL PROVISIONS**

First Amendment....................................................................................................2, 6, 7, 9

**OTHER AUTHORITIES**

Ananya Rupanagunta, *Campus faces lawsuit for alleged lack of action against
antisemitism, anti-Zionist bylaws*, THE DAILY CALIFORNIAN (Dec. 11, 2023) ........................11

Betty Yu, *Jewish groups sue UC Berkeley alleging "longstanding, unchecked spread of
antisemitism,"* CBS NEWS (Nov. 28, 2023) ................................................................11

*Cal. Att. Guidelines of Civility & Professionalism*, Sec. 8(b) ............................................3

Jonathan Stempel, *Jewish groups sue UC Berkeley over 'unchecked' antisemitism*,
REUTERS (Nov. 28, 2023)............................................................................................11

Erwin Chemerinsky, *"Nothing has prepared me for the antisemitism I see on college
campuses now,"* L.A. TIMES (Oct. 29, 2023) ................................................................11

1

**INTRODUCTION**

2      The thirty-seven proposed intervenors ("Applicants") are individuals and organizations—

3  most with no connection to the University of California Berkeley (UCB)—who want to use this

4  lawsuit as a forum to express their grievances against the State of Israel and the Biden/Harris

5  administration. In their own words, if allowed to intervene, they will "present the protestors'

6  message and their analysis of the conflict in Israel/Palestine" and "will present expert testimony

7  and research to make an extensive record about the conflict in Israel/Palestine." Mot. 23-24.   But

8  this case is not about the Arab-Israeli conflict or about "silenc[ing]" criticism of Israel, as the

9  Applicants allege. Mot. 1.  It is about whether the University of California ("UC") Regents and

10  UCB administration have taken adequate steps to ensure that all Jewish students at UCB are able

11  to safely engage in all of the university's opportunities without having to hide or shed any part of

12  their Jewish identity.

13       The claims asserted in the First Amended Complaint ("FAC") arise from specific anti-

14  Semitic incidents at one campus of the University of California and the Defendants' failure to

15  respond appropriately to those incidents. Indeed, the plain language of the FAC contradicts

16  Applicants' assertion that Plaintiffs seek to silence speech. To the contrary, the FAC makes clear

17  that Plaintiffs "do not seek to limit the ability of any student to express their views," but

18  "challenge Defendants' failure to address anti-Semitic ***conduct***, including the harassment of Jews,

19  their exclusion from student organizations, and even the fact that they are physically assaulted

20  because of their Jewish and/or Israeli identity." FAC ¶ 152 (emphasis original). The FAC also

21  makes clear that "criticism of the Israeli government is not antisemitism." *Id.* ¶ 151 (quoting Dean

22  Chemerinsky).

23       To succeed on their motion to intervene, Applicants must show that (1) they have a

24  protectable legal interest that would actually be directly affected by the relief sought in this case,

25  (2) their interests are not adequately represented by Defendants, (3) their motion is timely, and (4)

26  as to permissive intervention, that intervention will not unduly delay or prejudice the adjudication

27  of the existing parties' rights.  Applicants must show all four.  They show none.

28

-1-

The Court should not reward Applicants' efforts to mischaracterize and distort the nature of this case and to hijack the proceedings for political gain. The motion should be denied.

*First*, Applicants cannot show that any protectable First Amendment rights they have are affected by the relief sought in this case. Plaintiffs' requested relief seeks neutral, evenhanded enforcement of Defendants' policies to prevent harassment, violence, and exclusion of Jews. That relief would not limit the ability of Applicants—or any individual—to speak or criticize the policies of the State of Israel.

*Second*, Applicants have failed to show that Defendants are unable or unwilling to adequately defend Applicants' First Amendment rights. To the contrary, Defendants' motion to dismiss asserts the students' First Amendment rights.

*Third*, Applicants' motion is not timely. To the contrary, Applicants fail to offer any valid reason for having waited nine months—the equivalent of an entire school year—to file a motion that will prejudice Plaintiffs' ability to end the ongoing anti-Semitism on campus. Students are returning to campus and are justifiably concerned that Defendants will continue failing to protect them from anti-Semitic harassment. They seek timely resolution of the claims raised in this case. Therefore, extending the timeline to resolve these proceedings, by mischaracterizing and distorting the nature of the matter before the Court no less, prejudices Plaintiffs.

*Fourth*, if Applicants are permitted to use this case as a forum to present their positions on issues that are not at all part of this case, it is beyond question that the intervention will "unduly delay" the adjudication of the existing parties' claims, and, accordingly, per Rule 24(b)(3), the Court should not exercise its discretion to grant permissive intervention.

Instead of satisfying the requirements for intervention, Applicants flagrantly mischaracterize Plaintiffs' claims, rely on legal principles that have been expressly rejected by the Ninth Circuit, and engage in spurious *ad hominem* attacks on the parties and on individuals who are not even before the Court.[1] Applicants even go so far as to present a wholesale fabrication as a

---

[1] Applicants' baseless name-calling is not limited to Plaintiffs. They heap scorn upon Defendants, *see, e.g.*, Mot. 22 ("UC leaders have used their titles and authority as representatives of UC to whip-up anti-Palestinian, anti-Muslim, and anti-Arab hatred."), Berkeley Law Dean Erwin

direct quotation from the FAC.  *See* Mot. 20 (misquoting FAC Prayer for Relief ¶ 5).  The motion should be denied.

**THE PROPOSED INTERVENORS**

Applicants are thirty-seven proposed intervenors, each of whom would become a party to this case if Applicants' motion were granted. More than half have no connection to UCB, and eighteen do not even have a connection to the UC. Instead, most are self-described "activists," whose only purported "connection" to this case is that they have participated in pro-Palestinian protests.[2]

**ARGUMENT**

I.      **Proposed Intervenors Fail to Satisfy Rule 24(a)'s Requirements for Intervention as a Matter of Right.**

Under Fed. R. Civ. P. 24(a)(2), "a nonparty is entitled to intervention as of right when it '(i) timely moves to intervene; (ii) has a significantly protectable interest related to the subject of the action; (iii) may have that interest impaired by the disposition of the action; and (iv) will not be adequately represented by existing parties.'" *Chevron Env't Mgmt. Co. v. Env't Prot. Corp.*, No. 20-16206, 2022 WL 10966098, at *1 (9th Cir. Oct. 19, 2022).  "The party seeking to intervene bears the burden of showing that ***all*** the requirements for intervention have been met." *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004). Failure to satisfy any one of the requirements is fatal to the application.  *Perry v. Prop. 8 Off. Proponents*, 587 F. 3d 947, 950 (9th Cir. 2009).  Far from satisfying all, Applicants satisfy none.

---

Chemerinsky, Mot. 3, and the "reactionary Supreme Court," Mot. 4.  *Cf. Cal. Att. Guidelines of Civility & Professionalism*, Sec. 8(b) ("Unless at issue or relevant in a particular proceeding, an attorney should avoid degrading the intelligence, ethics, morals, integrity, or personal behavior of others.")

[2] *See, e.g.,* Mot. 13-14 ("Dennis Cameron (he/him) is an art major at Michigan's Henry Ford Community College who organizes and attends protests for Palestine."; "Nicole Conaway (she/her) seeks to become an attorney and is a prospective UC law student. . . She has been a leader for public education and a strong advocate for the liberation of Palestine."; "Jeremy Eugene (he/they) is a Special Education and English Teacher in Cyprus Fairbanks Independent School District in Texas, who is a leader in his union for Palestinian and human rights.").

**A.**      **Applicants Have Not Shown a "Significant Protectable Interest" that Actually Will Be Affected by the Resolution of Plaintiffs' Claims.**

      **1.**      **The Standard Is Narrower than Applicants Represent.**

A proposed intervenor must show that it has a "significant protectable interest as to the property or transaction that is the subject of the action" and that "disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest." *Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*, 54 F.4th 1078, 1086 (9th Cir. 2022) (hereafter "*Dobbas*"). For an "interest" to qualify under Rule 24(a), it must be "direct, non-contingent, substantial and legally protectable." *Vallejo v. Sterigenics U.S., LLC*, No. 20-CV-01788-AJB-AHG, 2023 WL 2958465, at \*4 (S.D. Cal. Apr. 13, 2023) (quoting *Dilks v. Aloha Airlines*, 642 F.2d 1155, 1157 (9th Cir. 1981)).  *See also Dobbas*, 54 F.4th at 1087 n.9 (citing with approval the standard set forth in *Dilks*).

There must be a relationship between the applicant's legally protected interest and the claims at issue, meaning that "resolution of the plaintiff's claims ***actually*** will affect the applicant." *Donnelly v. Glickman*, 159 F.3d 405, 410 (9th Cir. 1998) (emphasis added).  *See also S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 803 (9th Cir. 2002) (affirming denial of intervention where the litigation at issue would not have resolved the proposed intervenor's claims).

Recognizing the tenuous nature of their purported interest, Applicants urge the Court to apply an outdated "liberal construction in favor of applications for intervention," Mot. 15, under which the "'interest test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process,'" Mot. 19 (quoting *Wilderness Soc. v. U.S. Forest Service*, 630 F.3d 1173, 1179 (9th Cir. 2011)).  Applicants would lead this Court to error.  These are precisely the rulings that the Court held in *Dobbas* were no longer good law.  *See Dobbas*, 54 F.4th at 1088 (rejecting as inconsistent with Supreme Court authority the earlier Ninth Circuit "liberal policy in favor of intervention" which held that the concept of "interest" was "primarily a practical guide to disposing of lawsuits by involving as any apparently concerned persons as is compatible with efficiency and due process.")

**2.** **Applicants' Alleged Interest Bears Too Tenuous and Remote a Relationship to the Remedies Sought to Constitute a "Significant Protected Interest."**

In *Donnelly*, 159 F.3d 405, the Ninth Circuit affirmed the denial of intervention by male employees of the Forest Service in a case brought by the Service's female employees seeking court-ordered improvements in the Service's response to female employees' complaints of harassment and reprisal. *Id*. at 410. The Court held that the would-be intervenors lacked a "significant protectable interest" based on their assertions that the relief requested by the female employees might affect their rights (*e.g*., to be safe from discrimination themselves) or their ability to gain jobs and promotions. The male employees' interests, to the extent they were protected, were "not inherent in any of the requested remedies." *Id*. at 411.

Here, too, Applicants' interest in protesting lawfully and in accordance with school policy is not threatened by Plaintiffs' requested relief. Plaintiffs ask the Court to require Defendants to (i) enforce their policies neutrally and even-handedly to all students; (ii) prevent student organizations from excluding Jews; (iii) end the hostile environment for Jewish members of the UCB community; and (iv) ensure that protests do not physically impede disabled students from crossing the campus. Like the proposed intervenors in *Donnelly*, Applicants fail to show their protest interests would actually be affected by the relief sought by Plaintiffs.

To the contrary, Plaintiffs have repeatedly made clear that they "do not seek to limit the ability of any student to express their views." FAC ¶ 152; *see also* ¶¶ 17, 151. Nor is the case about policies of the state of Israel or the war in Gaza or anywhere else. *See, e.g., id.* ¶ 151. Instead, this case is about "Defendants' failure to address anti-Semitic *conduct,* including the harassment of Jews, their exclusion from student organizations, and even the fact that they are physically assaulted because of their Jewish and/or Israeli identity." *Id.* ¶ 152.

Applying the prevailing intervention standard to Applicants' motion, Applicants cannot show that "resolution of … [P]laintiff[s'] claims ***actually*** will affect" them. Applicants assert that their interest here is their "First Amendment right to criticize the actions of the State of Israel and

the U.S. government," Mot. 17, but the resolution of Plaintiffs' claims will not "actually" affect this interest because the FAC disavows any intent to impede anyone's speech.  At most, the Applicants assert "an undifferentiated generalized interest in the outcome of an ongoing action," but that "is too porous a foundation on which to premise intervention as of right."  *S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 803 (9th Cir.), *modified*, 307 F.3d 943 (9th Cir. 2002) (quoting *Public Serv. Co. of N.H. v. Patch*, 136 F.3d 197, 205 (1st Cir.1998)).

> **3.      Applicants Mischaracterize the Pleadings and Rely on Inapposite Case Law.**

Applicants' argument that their First Amendment speech rights are at stake is premised on blatant misrepresentations of the FAC.  They falsely claim that "Plaintiffs seek to make the Federal Courts . . . declare that criticism of Israel and the U.S. government . . . are illegal because they are 'antisemitic.'"  Mot. 18.  Applicants conclude (again, misleadingly) that "Plaintiffs' lawsuit, if successful, would facilitate an unprecedented governmental clampdown on civil liberties, embolden the growth of the far right, and threaten the survival of democracy itself."  Mot. 18-19.  They then falsely assert that "Plaintiffs make clear that they seek injunctive relief against any criticism of Israel's policies," Mot. 20, but cite no provision of the FAC for that assertion because there is none.  And, in an effort to argue that they have an interest affected by this lawsuit, Applicants actually ***rewrite*** the words of the FAC in order to assert that this case is about the stifling of speech.  They misquote a portion of the FAC's Prayer for Relief to say that Plaintiffs "seek a court order 'mandating that Defendants take action against the present and future pro-Palestine protests at UC-Berkeley Sather Gate and encampments."  Mot 19-20 (misquoting FAC Prayer for Relief ¶ 5). This paragraph actually asks the Court to enter "[a]n injunction preliminarily and permanently mandating that Defendants take all necessary action to ensure that the blockade at Sather Gate and occupation at Sproul Hall do not continue to create a hostile environment for Jewish and Israeli students and do not impede access to disabled persons."  FAC Prayer for Relief ¶ 5.

In the context of the allegations about Sather Gate and Sproul Hall—*e.g.*, that students

wearing Stars of David were surrounded and threatened and disabled students were impeded from having safe access, FAC ¶¶ 103-105,—it is obvious that this paragraph in Plaintiffs' Prayer for Relief is not about stifling speech.  Nor do any of the other nine prayers for relief seek to enjoin "criticism of Israel's policies."  No matter how hard they try, Appellants cannot convert this case, through fearmongering, into something it is not. As is clear from the FAC, this case is not about silencing criticism of Israel, declaring anti-Semitism illegal, or "clamp[ing] down on civil liberties," Mot. 19.

Applicants fare no better in arguing that this Court should recognize their generalized "interest in preventing the creation of a police state and fascism in the United States," and protecting "the survival of democracy itself."  Mot. 18-19.  This sort of general "interest" does not qualify under Rule 24(a) because the applicant's interest is no different than the interests of the public generally.  *See S. Calif. Edison Co*., 307 F.3d at 803 (citing *Westlands Water Dist. v. U.S.*, 700 F.2d 561, 563 (9th Cir.1983)).  Most U.S. residents—including Plaintiffs—want the country to remain a democracy and not devolve into fascism.

Applicants also argue that their First Amendment rights are "directly affected" by Plaintiffs' allegation that Defendants selectively enforced their all-comers and anti-discrimination policies to the detriment of Jews in connection with the exclusionary bylaws (the Bylaws), FAC ¶¶ 158-66, based on the strawman argument that "Plaintiffs are asking the courts to decide, as a matter of law, that anyone who says they are opposed to Zionism is an antisemite," Mot. 3-4, and that a ruling for Plaintiffs will therefore result in them being "stigmatized" and subject to "attacks," Mot. 17-18.  But Plaintiffs seek no findings about "anyone" or even about "all Jews." To be sure, Plaintiffs maintain that Zionism is an integral part of Jewish identity, but they do not claim that all Jews are Zionists.  *See* FAC ¶ 8.  The FAC makes clear that "Zionist" is being used as a proxy for Jew.  *Id*.  The exclusionary bylaws require organizations to exclude speakers not on the basis of what they might say or do but rather on the basis of who they **are.** The ban is not a ban on lecture topics, it is a ban on Zionist people. The Court, therefore, need not make a pronouncement on whether all Jews view Zionism as an integral part of their Jewish identity to

1   rule in Plaintiffs' favor.  Rather, it need only hold that Defendants must enforce their policies

2   even-handedly—including when, as alleged here, groups use Zionism as a proxy term to exclude

3   Jews. FAC ¶ 14.

4        Applicants' lengthy (and factually erroneous) disposition on the disparity of Jewish views

5   on Israel, Mot. 5-7, does nothing to address Defendants' failure to enforce their policies.  It merely

6   demonstrates that Jews have a wide range of views about the modern state of Israel. Of course,

7   there are millions of Jews; opinions on any topic among them will inevitably differ. But nothing in

8   Applicants' exposition challenges the central proposition of any of Plaintiffs' requested relief

9   relating to the exclusionary bylaw, namely, that (a) "Zionist" is frequently used as a codeword,

10  proxy term, or dog-whistle for "Jew" (particularly on college campuses today), and (b) the

11  **dominant** understanding among Jews for thousands of years is that a central tenet of the Jewish

12  faith, the love of Zion (Jerusalem), stems from the recognition that the Jews are a people whose

13  ancestral history is rooted in the land of Israel.  FAC ¶ 8.  Accordingly, a bylaw excluding

14  "Zionists" excludes Jews.  FAC ¶ 14.  Not all Jews maintain a kosher diet, but this fact does not

15  negate how integral kosher observance is to the Jewish identity of Jews who "keep kosher."

16  Similarly, the fact that some Jews may renounce the Jewish people's connection to Israel does not

17  negate the centrality of "Zionism" to Jewish identity.  A bylaw that excluded "people who keep

18  kosher" would immediately be understood as prohibiting Jews, just as a bylaw that excluded

19  individuals who adhere to the principle of papal infallibility would be understood as excluding

20  Catholics, even if some Catholics do not accept the doctrine.

21        Finally, applicants point to *Sierra Club v. U.S. E.P.A.*, 995 F.2d 1478, 1483 (9th Cir.

22  1993), *abrog. on other grounds by Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir.

23  2011), arguing that it is "[t]he case most analogous to [their] interest." Mot. 20 n.11. But *Sierra*

24  *Club* does not help them. That case concerned the City's motion to intervene in a lawsuit

25  challenging the EPA's issuance of a permit *to the City*. In granting intervention as a matter of

26  right, the court observed that "the lawsuit would affect the use of real property owned by the

27  intervenor by requiring the defendant to change the terms of permits it issues to the would-be

28

1   intervenor, which permits regulate the use of that real property." *Id.* at 1483. Here, by contrast,

2   Applicants' interests are simply too generalized and remote from the disputes in this case.

3      **B.      Applicants Fail to Show that Their Interests Are Not Adequately Protected by**

4           **Defendants.**

5      Courts consider three factors in deciding whether a present party adequately represents the

6   interests of a prospective intervenor: "(1) whether the interest of a present party is such that it will

7   undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is

8   capable and willing to make such arguments; and (3) whether a proposed intervenor would offer

9   any ***necessary*** elements to the proceeding that other parties would neglect." *Callahan v.*

10  *Brookdale Senior Living Communities, Inc.*, 42 F.4th 1013, 1020 (9th Cir. 2022) (emphasis

11  added). It is not enough that the proposed intervenor can show that there is ***some*** argument it

12  would make that the party would not make:  rather, the question is whether the divergence

13  between the party and the proposed intervenor concerns "significant matters" and, accordingly,

14  whether intervention would bring any "new, necessary element to the case." *Dilks*, 642 F.2d at

15  1157. Here, Defendants address in their motion to dismiss all of the "significant matters" and

16  "necessary elements" raised in Applicants' motion; the divergence between them concerns issues

17  that are not "necessary elements to the case."

18     Applicants argue that Defendants will not adequately defend Applicants' First Amendment

19  Rights. Mot. 21. But, to the extent these rights are even implicated in this case, Defendants have

20  expressly defended the First Amendment rights of their students.  *See* Mot. to Dismiss, ECF No.

21  68, at 7 - 8 ("The challenged bylaws are speech protected by the First Amendment"; "Disciplining

22  students for this speech activity would violate the First Amendment"). Plaintiffs disagree with the

23  substance of these arguments, but no one could disagree that Defendants have made them.

24     Applicants also assert that Defendants fail to make other arguments, including arguments

25  relating to "analysis of the conflict in Israel/Palestine," Applicants' claim that the "true character"

26  of the protests "includes opposition to Islamophobia," and Applicants' purported "evidence that

27  the UC Defendants have, in fact, repressed pro-Palestinian speech."  Mot. 23, 25.  But these "are

28

1    not "necessary elements to the case," *Dilks*, 642 F.2d at 1157. To the contrary, they are irrelevant

2    points that would needlessly delay the case's resolution.

3         Moreover, the proposed Answer submitted with Applicants' motion, Mot Ex. A, raises

4    nothing that Defendants have not already raised, but asserts, like Defendants, that Plaintiffs have

5    failed to state a claim, that Plaintiffs lack standing, and that Plaintiffs' claims are moot. *See* Mot.

6    to Dismiss 8 ("All of the Claims Should be Dismissed Under Rule 12(b)(6)"); *id.* at 2 ("Plaintiffs

7    Lack Standing to Challenge the Student Group Bylaws,"); *id.* at 7 (suggesting that the

8    encampment and Sather Gate protests have ended). Indeed, the only ***specific*** argument Applicants

9    claim they would make at this stage is "that the FAC fails to state a claim for which relief can be

10   granted." Mot. 17 n.10.

11        Applicants' assertion that Defendants' motion to dismiss contains "inadequate argument"

12   cannot rescue their motion. *See Callahan*, 42 F.4th at 1021 ("[W]hen a proposed intervenor … has

13   rested its claim for intervention entirely upon a disagreement over litigation strategy or legal

14   tactics, courts have been hesitant to accord the applicant full-party status.").

15        **C.    Applicants Fail to Show Their Motion Is Timely.**

16        Timeliness must be assessed in the context of the circumstances of the specific case.  *E.g.*,

17   *Navajo Nation v. U.S. Dep't of the Interior*, No. CV-19-08340-PCT-JJT, 2024 WL 3299986, at *4

18   n.2 (D. Ariz. June 18, 2024) (Rule 24 requires "that a motion to intervene be timely in the context

19   of the existing case."). This case is particularly time sensitive. Plaintiffs seek injunctive and

20   declaratory relief to protect the Jewish community at UCB from the hostile environment on

21   campus in the form of an order requiring Defendants to comply with their duties under Title VI

22   and the Constitution. Because Plaintiffs do not seek damages, they cannot be made whole for

23   delay by an award of prejudgment interest.

24        The three factors generally considered with respect to timeliness under Rule 24(a) are (1)

25   the reason for and length of the delay; (2) the stage of the proceedings; and (3) prejudice to other

26   parties. *Cnty. of Orange v. Air Calif.*, 799 F.2d 535, 537 (9th Cir. 1986).

27

28

1                    **1.      Applicants Fail to Justify Their Delay.**

2            Delay "is measured from the date the proposed intervenor should have been aware that its

3    interests would no longer be protected adequately by the parties[.]" *U.S. Equal Emp. Opportunity*

4    *Comm'n v. Activision Blizzard, Inc.*, No. 22-55515, 2023 WL 8908774, at *2 (9th Cir. Dec. 27,

5    2023) (quoting *United States v. State of Wash.*, 86 F.3d 1499, 1503 (9th Cir. 1996)). In other

6    words, "[a] party seeking to intervene must act as soon as he knows ***or has reason to know*** that

7    his interests might be adversely affected by the outcome of the litigation." *Calif. Dep't of Toxic*

8    *Substances Control v. Com. Realty Projects, Inc.*, 309 F.3d 1113, 1120 (9th Cir. 2002) (emphasis

9    in original) (quotation omitted).

10           Applicants provide no credible explanation for their delay, much less one that would

11   justify it.  They were aware that any purported rights were implicated nine months ago, when this

12   lawsuit was first filed.  The original Complaint brought the same claims that Applicants now seek

13   to challenge and sought the same relief now requested—equal enforcement by UCB of its policies

14   to remedy the hostile environment on campus.  *See* ECF No. 1.[3]  Plaintiffs thus "should have been

15   aware," *U.S. Equal Emp. Opportunity Comm'n*, 2023 WL 8908774, at *2, nine months ago that

16   any purported interests were implicated by this lawsuit.[4]  In the context of this case, this is a

17   substantial delay.

18           The two cases Applicants cite to support their delay, Mot. 16, do not help them.  In *Idaho*

---

19
20   [3] Applicants do not claim that they were unaware of the filing of this lawsuit or the issues raised in
     it.  Nor could they.  The lawsuit was widely reported, including by national and local news media.
21   *See, e.g* Jonathan Stempel, *Jewish groups sue UC Berkeley over 'unchecked' antisemitism*,
     REUTERS (Nov. 28, 2023); Ananya Rupanagunta, *Campus faces lawsuit for alleged lack of action*
22   *against antisemitism, anti-Zionist bylaws*, THE DAILY CALIFORNIAN (Dec. 11, 2023); Betty Yu,
     *Jewish groups sue UC Berkeley alleging "longstanding, unchecked spread of antisemitism,"* CBS
23   NEWS (Nov. 28, 2023).

24   [4] Applicants do not clearly articulate any purported reason for delay in seeking to intervene.  To
     the extent that they are asserting that they did not know that Defendants' employees would
25   concede that the anti-Semitic conduct on campus was in fact anti-Semitic, that was public
     knowledge before the initial complaint was filed.  Dean Chemerinsky's article in the Los Angeles
26   Times, *"Nothing has prepared me for the antisemitism I see on college campuses now,"* L.A.
     TIMES (Oct. 29, 2023), FAC 17, pre-dates the initial complaint in this matter by a month.  *See also*
27   FAC ¶ 128 (quoting August 29, 2022 statement by Dean Chemerinsky regarding the anti-Semitic
     nature of the exclusionary bylaws).
28

*Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995), the Court affirmed the grant of a motion to intervene where no party argued that intervention was prejudicial and, moreover, as of the time the motion to intervene was filed, the only developments in the case were the filing of an administrative record and an answer. While the court in that case did not address the purported reason for the delay, there was no need to because there were no claims of prejudice.  Here, where there is an even longer delay and a risk of significant prejudice, the ***reason*** for the delay matters.

*Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, (10th Cir. 2001), is similarly unhelpful. There, the Tenth Circuit found that intervention was appropriate because, unlike here, there was a lack of prejudice and because the proposed intervenors there agreed that they "would not seek additional discovery, and would not file a counterclaim or raise defenses not raised by the government." *Id.* at 1250. Applicants have made no similar assurance here.

Applicants' failure to provide any valid reason for their delay militates against a finding of timeliness. *See, e.g., Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) (affirming denial of intervention where "district court correctly found that Students had offered no adequate explanation for their delay in seeking intervention."); *Key Bank of Puget Sound v. Alaskan Harvester*, 738 F. Supp. 398, 405 (W.D. Wash. 1989) (denying intervention where "[a] subsequently filed memorandum failed to identify any specific facts pertaining to the nearly four month delay in filing").

### 2.    Applicants' Delay Is Harming Plaintiffs.

With respect to prejudice, this Court looks to the prejudice that "flows from a prospective intervenor's failure to intervene after he knew, or reasonably should have known, that his interests were not being adequately represented.'" *SurvJustice Inc. v. Devos*, No. 18-cv-00535-JSC, 2019 WL 1427447, at *3 (N.D. Cal. March 29, 2019) (citing *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 857 (9th Cir. 2016)). There is a substantial risk of prejudice to Plaintiffs in granting the motion to intervene. Classes at UCB started last week, and, as Plaintiffs have previously noted, "the hostility towards Jews … has continued from one school year to the next" and "there is no basis to hope that 2024 – 2025 will be better."  Opposition to Motion to Dismiss, ECF No. 69, at

5-6.  The UCB Jewish community should not have to face the threat of continued harassment any

longer than is necessary for resolution of its claims. Applicants' decision to wait nine months—the

equivalent of an entire school year—greatly increases that threat. That threat is particularly acute

given that Applicants seek to "inject new issues and matters that are well beyond the scope of

[Applicants'] claims and … defenses,' thus expanding the scope of the litigation and causing

delay." *Smith*, 194 F.3d at 1051. This timeliness factor also weighs in favor of denial.

### 3.   The Stage of the Proceedings Weighs Against Intervention.

The stage of the proceedings factor also weighs in favor of denial. Since this case was filed

nearly nine months ago, the parties have made substantial progress in focusing the issues.

Plaintiffs have filed two complaints and Defendants have filed two motions to dismiss.

Defendants' second motion to dismiss is fully briefed and before the Court, with the Court having

noted that Defendants' motion was "suitable for decision without oral argument." ECF No. 72.

Further, at the suggestion of the Court, the parties have directly engaged in a series of constructive

discussions, which, while not successful in resolving the case, have enabled the parties to identify

areas of potential agreement and to sharpen their focus on where disputes lie. All of this effort will

be for naught if Applicants are permitted to distort the nature of this case to "present the

protestors' message and their analysis of the conflict in Israel/Palestine."  Mot. 23.

## II.   Applicants Do Not Satisfy the Requirements for Permissive Intervention.

Rule 24(b)(1)(B) provides that "[o]n timely motion, the court may permit anyone to

intervene who ... has a claim or defense that shares with the main action a common question of

law or fact." While permissive intervention "is committed to the broad discretion of the district

court," *East Bay Sanctuary Covenant v. Barr*, 500 F. Supp. 3d 1030, 1037 (N.D. Cal. 2020)

(quoting *Orange Cnty. v. Air Calif.*, 799 F.2d 535, 539 (9th Cir. 1986)), Rule 24(b)(3) expressly

provides that "the court ***must*** consider whether intervention will unduly delay or prejudice the

adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(emphasis added). Applicants'

motion should be denied because (i) it is untimely, and (ii) intervention would prejudice Plaintiffs.

1    **A.      The Motion Is Not Timely.**

2        In considering whether a motion for permissive intervention is timely, the court analyzes

3    the same factors as it considers when ruling on intervention as of right but it analyzes those factors

4    "more strictly." *Fed. Trade Comm'n v. Triangle Media Corp.*, No. 22-56012, 2023 WL 8592867,

5    at *2 (9th Cir. Dec. 12, 2023) (citing *LULAC*, 131 F.3d at 1308).  Applicants' motion for

6    permissive intervention is untimely for the same reason their motion for intervention as of right is

7    untimely.  *See* Section I.C., *supra*.

8    **B.      Intervention Will Unduly Delay and Prejudice the Adjudication of Plaintiffs'**

9    **Rights.**

10       Under Rule 24(b)(3), the court is "obligated" to "consider whether the intervention will

11   'unduly delay or prejudice the adjudication of the original parties' rights.'" *Perry v. Prop. 8 Off.*

12   *Proponents*, 587 F.3d at 955 (quoting Fed. R. Civ. P. 24(b)(3)).

13       As discussed above, intervention here would unduly delay the adjudication of Plaintiffs'

14   claims. Applicants seek to intervene for the express purpose of "present[ing] historical research

15   and evidence . . . to present the protestors' message" and "mak[ing] an extensive record about the

16   conflict in Israel/Palestine" (Mot. 23-24), issues which are extraneous to this case.  Indeed, their

17   motion makes plain that they have a long agenda of irrelevant issues that they wish to interject into

18   this case, all of which will create disputes in discovery and motion practice.  And adding thirty-

19   seven additional parties inevitably adds delay.  *See Montgomery v. Rumsfeld*, 572 F.2d 250, 255

20   (9th Cir. 1978)) ("The district judge acted well within his discretion when he decided that 13

21   additional plaintiffs would unnecessarily delay and complicate the case.").  Plaintiffs would be

22   significantly prejudiced by the undue delay that all of this additional complexity would create,

23   even if (arguendo) Applicants will present their case with appropriate efficiency, not to mention

24   candor and accuracy, which seems unlikely.

25       Applicants argue that their intervention will "significantly contribute to full development

26   of the underlying factual issues in the suit and to the just and equitable adjudication of the legal

27   questions provided." Mot. 25 (quoting *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326,

28

-14-

1329 (9th Cir. 1977)).  But that is not so.  Applicants seek to shift the focus away from the legal questions actually in dispute—whether Defendants are taking steps to adequately protect Jews on campus—in order to address political issues that are not. The Ninth Circuit has denied intervention where, as here,  Applicants add "few substantive arguments directly on point."  *Drakes Bay Oyster Co. v. Salazar*, No. 12-CV-06134-YGR, 2013 WL 451813, at *9 (N.D. Cal. Feb. 4, 2013), *aff'd sub nom. Drakes Bay Oyster Co. v. Env't Action Comm. of W. Marin*, 571 F. App'x 605 (9th Cir. 2014).

Instead of offering "substantive arguments directly on point," Applicants attempt to ***change*** the point, either by mischaracterizing Plaintiffs' allegations or by rewriting Plaintiffs' FAC altogether.  But, as discussed above, Plaintiffs do not ask Defendants or this Court to prohibit political speech.  Indeed, Plaintiffs repeatedly ***disclaim*** this position in the FAC.  FAC ¶¶ 151-52. Rather, Plaintiffs ask that Defendants enforce their existing policies to prohibit anti-Semitic ***conduct***.  Applicants point to no language in the FAC supporting their outrageous position that Plaintiffs "seek to silence and erase the history and existence of Palestinians." Mot. 2.

Such gross misrepresentations of the record are likely to continue if Applicants are granted leave to intervene under Rule 25(b)(3).  Not only would this cause undue delay and prejudice to the Plaintiffs, but it would also unduly burden this Court.  As the Ninth Circuit has repeatedly stated, "The vice of misrepresentation is not that it is likely to succeed, but that it imposes an extra burden on the court."  *In re Girardi*, 611 F.3d 1027, 1037 (9th Cir. 2010) (quoting *In re Disciplinary Action Boucher*, 837 F.2d 869, 871 (9th Cir. 1988)).  Courts rely on lawyers "to state clearly, candidly, and accurately the record as in fact it exists" because "[t]he burden of ascertaining the true state of the record would be intolerable if misrepresentation was common." *Id*.

## CONCLUSION

For all of the reasons discussed above, this Court should deny the motion to intervene.

/ / /

/ / /

1

2    DATED: September 3, 2024

3                                             By:  /s/ John V. Coghlan

4                                             _____

5                                             TORRIDON LAW PLLC
                                              John V. Coghlan (admitted *Pro Hac Vice*)
                                                jcoghlan@torridonlaw.com
6                                             Tara Helfman (admitted *Pro Hac Vice*)
                                                thelfman@torridonlaw.com
7                                             1155 F Street NW
                                              Washington, DC 20004
8                                             Telephone: (202) 249-6900

9                                             ELLIS GEORGE LLP
                                              Eric M. George (State Bar No. 166403)
10                                              egeorge@ellisgeorge.com
                                              David J. Carroll (State Bar 291665)
11                                              dcarroll@ellisgeorge.com
                                              2121 Avenue of the Stars, 30th Floor
12                                            Los Angeles, California 90067
                                              Telephone: (310) 274-7100
13
                                              THE LOUIS D. BRANDEIS CENTER FOR
14                                            HUMAN RIGHTS UNDER LAW
                                              Kenneth L. Marcus (admitted *Pro Hac Vice*)
15                                              klmarcus@brandeiscenter.com
                                              L. Rachel Lerman (CA Bar No. 193080)
16                                              rlerman@brandeiscenter.com
                                              1717 Pennsylvania Ave., NW, Suite 1025
17                                            Washington, DC 20006
                                              Telephone: (202) 559-9296
18
                                              Attorneys for Plaintiffs
19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE