RONALD CRUZ, State Bar No. 267038
United for Equality and Affirmative Action Legal Defense Fund (UEAALDF)
755 McAllister Street
San Francisco, CA 94102
Ph: (313) 683-0942  Fax: (313) 586-0089
ronald.cruz@ueaa.net

*Attorneys for Proposed Defendant-Intervenors*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE LOUIS D. BRANDEIS CENTER, INC., JEWISH AMERICANS FOR FAIRNESS IN EDUCATION (JAFE), <br><br> Plaintiffs, <br><br> vs. <br><br> REGENTS OF THE UNIVERSITY OF CALIFORNIA; UNIVERSITY OF CALIFORNIA AT BERKELEY; BERKELEY LAW SCHOOL; MICHAEL DRAKE, in his official capacity as President of the University of California; CAROL T. CHRIST, in her official capacity as Chancellor of the University of California, Berkeley; BEN HERMALIN, in his official capacity as Provost of the University of California, <br><br> Defendants, <br><br> and <br><br> ADAM LERMAN, BERKELEY LAW JEWISH STUDENTS FOR JUSTICE IN PALESTINE (BLJ4P), BERKELEY MUSLIM STUDENT ASSOCIATION (MSA), COALITION TO DEFEND AFFIRMATIVE ACTION, INTEGRATION AND IMMIGRANT RIGHTS AND FIGHT FOR EQUALITY BY ANY MEANS NECESSARY (BAMN), MOVEMENT FOR JUSTICE BY ANY MEANS NECESSARY (MFJ), MALAK AFANEH, ZAID YOUSEF, MATTHEW FERNANDES, MUKI BARKAN, BERKELEY LAW STUDENT #1, ELI HARRIS, ISAAC (IZZY) TRAGARZ, DONNA STERN, KATE STENVIG, NEAL LYONS, ARASH MOHAMMADY, JESÚS GUTIÉRREZ, BRYAN AVELAR, UCB GRADUATE STUDENT #1, EISHA | Case No. 3:23-cv-06133-JD <br><br> **REPLY IN SUPPORT OF MOTION FOR INTERVENTION** <br><br> Hearing Date:  October 10, 2024 <br> Time:  10:00 a.m. <br> Place:  Courtroom 11 <br> Judge:  Hon. James Donato |

MUMTAZ, UCB UNDERGRADUATE STUDENT #1, LIANNA VAN HOUT, DR. BENJAMIN LYNCH, NOORULAIN IRSHAD, NICOLE CONAWAY, DENNIS CAMERON, SABRINA SARWAR, ISLAM AYYAD, AMINA SHAKEEL, AMANATUN NESA, TANA NICK, KYANNA HUFF, AALIYAH WHEELER, BYANCA NINOV, TYLER WOOD, JEREMY EUGENE, and ALEX OWOLADE

Proposed Defendant-Intervenors.

## TABLE OF AUTHORITIES

*Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.,*
    54 F.4th 1078 (9th Cir. 2022) .................................................................................................. 7

*Donnelly v. Glickman,*
    159 F.3d 405 (9th Cir. 1998) .................................................................................................. 8

*Frankel v. Regents of the University of California*
    Case No. 2:24-cv-04702 (C.D. Cal Aug. 13, 2024)
    included as EXHIBIT J ................................................................................................. 2,4,5

*Key Bank of Puget Sound v. Alaskan Harvester,*
    738 F. Supp. 398 (W.D. Wash 1989) ...................................................................................... 7

Plaintiffs' Opposition to the Motion for Intervention ("Opposition") only underscores why it is necessary for the Proposed Interveners to become parties in this case and why denial of their Motion would deny their rights. At every turn in the Opposition, Plaintiffs pretend that the First Amended Complaint ("FAC") is not targeted at a wide variety of student organization activities and protests *that criticize the genocidal war being conducted by the ultra-nationalist Benjamin Netanyahu who presently leads Israel*. It falsely characterizes this speech as harassing and excluding Jews as a whole. The Proposed Intervenors' very existence presents a reality that Plaintiffs' argument requires ignoring and that the University Defendants also ignore.

None of the Brandeis Center's arguments justify excluding the voices, including Jewish voices, who differ from Plaintiffs on what Zionism is and what Judaism is. Although Plaintiffs disavow saying that Jews are a monolith (Opposition at 7-8), that is precisely what they argue when they claim that criticism of Netanyahu's brand of Zionism should be illegal because "'Zionist' is being used as a proxy for Jew." (Opposition at 7).[1] *As the Proposed Intervenors show,* (1) a person can agree with the International Court of Justice's call for Israel's immediate withdrawal from the occupied territories and <u>not</u> be antisemitic; and (2) one can be Jewish and disagree with Netanyahu's war because this expresses their understanding of Judaism and/or Zionism and because they understand that Netanyahu's policies dramatically increase isolation for Jews and for Israel in the international community. These Proposed Intervenors assert their independent interest as Jews not to be associated with the Brandeis Center's narrow definition of

---

[1] The Brandeis Center's characterization of the variety of positions Jews hold about Israel itself suffers from conflating opposition to Netanyahu's government with opposition to a Jewish homeland. It argues that "the dominant understanding among Jews for thousands of years is that a central tenet of the Jewish faith, the love of Zion (Jerusalem), stems from the recognition that the Jews are a people whose ancestral history is rooted in the land of Israel." (Opposition at 8, emphasis in original) This envisions a Jewish homeland that gives political supremacy to Jewish residents and/or requires the political or complete exclusion of non-Jews. As the Proposed Intervenors' Motion shows, there are Jews who believe that the land of Israel is the Jewish homeland who also oppose the current government of Israel and oppose the killing and displacement of people to achieve or protect that homeland. (Motion at 5-6) Similarly, the Brandeis Center characterizes people who disagree with it as "renounc[ing] the Jewish people's connection to Israel." (Opposition at 8) They continuously maintain the fiction that all people who oppose Netanyahu's war also renounce Jews living in the Israel/Palestine region, when the Proposed Intervenors show that this is not true.

Zionism that requires support for Netanyahu's war, and their right to define for themselves what their Jewish identity is and what Zionism is. Behind all the Brandeis Center's deceptive arguments is their fundamental position that they oppose *other Jews who disagree with their narrow definitions of Zionism and Judaism* being in this case.

Plaintiffs try to draw a nonexistent line between speech and "conduct," claiming that they only seek a prohibition on "conduct." This is belied by the FAC itself, which is replete with references to speech that they want the Court to find are antisemitic, including basic expressions of opposition to the war and/or to Zionism to the extent that it means the occupation, displacement, and genocide of Palestinians. FAC ¶¶8-10, 118-137 (student organization bylaws); FAC ¶¶5, 11-13, 84-100 (protests); FAC ¶¶6, 101-107 (encampment). Plaintiffs state that all these activities create a "hostile environment" and "harass or exclude" Jews. FAC ¶¶156-166; FAC at 53, Prayer ¶1. The FAC demands "that Defendants take all necessary action to ensure that the blockade at Sather Gate and occupation [encampment] at Sproul Hall do not continue to create a hostile environment for Jewish and Israeli students." FAC at 54, Prayer ¶5. This includes Plaintiffs' demand for strict, inflexible enforcement of Time, Place and Manner rules regarding any obstruction (even if partial) of walkways (FAC ¶¶144, 158; FAC at 54, Prayer ¶2): in other words, prohibition and, if necessary, suspensions, expulsions, and physical violence.

<u>Federal Court decision at UCLA declaring support of Netanyahu's war to be a "religious belief" exposes Plaintiffs' aim and lends greater urgency to granting the Motion for Intervention</u>

Plaintiffs cannot disclaim any intention to target First Amendment speech that criticizes Israel, when that is precisely the legal finding obtained by a similar lawsuit at UCLA. *See* EXHIBIT J (Preliminary Injunction in *Frankel v. Regents of the University of California, et al.*, Case No. 2:24-cv-04702 (C.D. Cal Aug. 13, 2024)) That ruling provides the same legal remedy the Plaintiffs seek, and it dramatizes the threat to First Amendment rights if Plaintiffs were to prevail. On August 13, 2024, the U.S. District Court of California granted a preliminary injunction to three Jewish students suing UCLA who claimed that the pro-Palestine encampment there in

Spring 2024 was a "Jew Exclusion Zone."[2] The *Frankel* case also shows the University of California's utter failure to contest the *Frankel* plaintiffs' core claim that criticism of Netanyahu's war is "antisemitic" (the same made in this case) and how much, in reality, it agrees with Plaintiffs.

At UCLA in late April 2024, pro-Netanyahu protesters repeatedly harassed the pro-Palestine encampment and tried to provoke violence. Their aim was to have a violent clash that would politically pressure the UC administration to take police action to clear the encampment. To prevent violence, UCLA posted monitors to try to keep the sides separated and prevent clashes. UCLA's de-escalation efforts continued until the night of April 30, 2024, when it withdrew security guards and campus police and permitted a mob of pro-Zionist and fascist thugs to violently assault the encampment for hours. This sent dozens of students to the hospital.[3] The mob expressed and sought precisely the same aims as the *Frankel* plaintiffs and the Plaintiffs in this case: to clear a pro-Palestine protest for blocking walkways and being "antisemitic."

The *Frankel* plaintiffs targeted UC's de-escalation efforts and the University's decision to allow the pro-Palestine encampment to exist temporarily, claiming that UC violated Jewish students' freedom of religion. Of course, there were pro-Palestinian Jews in the encampment expressing their own Jewish identity and/or acting on their views of Judaism, but the University, as here, did not contest the UCLA plaintiffs' central claim that the protest was "antisemitic."

U.S. District Court Judge Mark C. Scarsi granted the UCLA plaintiffs' motion for a preliminary injunction, ruling:

---

[2] See the press release by the *Frankel* plaintiffs lauding the decision, attached as EXHIBIT K. Also available at: https://www.becketlaw.org/media/breaking-federal-court-orders-ucla-to-stop-helping-antisemitic-activists-target-jews/

[3] The Proposed Intervenors repeat citations from their Motion for the Court's convenience: "After violent night at UCLA, classes canceled, UC president launches investigation into response" Los Angeles Times (May 1, 2024). Available at: https://www.latimes.com/california/story/2024-04-30/ucla-moves-to-shut-down-pro-palestinian-encampment-as-unlawful
"Four UCLA student journalists attacked by pro-Israel counterprotesters on campus" Los Angeles Times (May 1, 2024) Available at: https://www.latimes.com/california/story/2024-05-01/four-student-journalists-attacked-by-counterprotesters-at-ucla
"UCLA Faculty Association files unfair labor practice charge against the UC" Daily Bruin (June 3, 2024) Available at: https://dailybruin.com/2024/06/03/ucla-faculty-association-files-unfair-labor-practice-charge-against-the-uc

> In the year 2024, in the United States of America, in the State of California, in the City of Los Angeles, Jewish students were excluded from portions of the UCLA campus because they refused to denounce their faith. This fact is so unimaginable and so abhorrent to our constitutional guarantee of religious freedom that it bears repeating. *Jewish students were excluded from portions of the UCLA campus because they refused to denounce their faith.* <u>UCLA does not dispute this</u>. Instead, UCLA claims that it has no responsibility to protect the religious freedom of its Jewish students because the exclusion was engineered by third-party protesters. But under constitutional principles, UCLA may not allow services to some students when UCLA knows that other students are excluded on religious grounds, regardless of who engineered the exclusion.
>
> (Order at 2, italics in original, underline added)
>
> 1. Defendants Drake, Block, Hunt, Beck, Gordon, and Braziel ("Defendants") are prohibited from offering any ordinarily available programs, activities, or campus areas to students if Defendants know the ordinarily available programs, activities, or campus areas are not fully and equally accessible to Jewish students.
>
> 2. Defendants are prohibited from knowingly allowing or facilitating the exclusion of Jewish students from ordinarily available portions of UCLA's programs, activities, and campus areas, whether as a result of a de-escalation strategy or otherwise.
>
> 3. On or before August 15, 2024, Defendants shall instruct Student Affairs Mitigator/Monitor ("SAM") and any and all campus security teams (including without limitation UCPD and UCLA Security) that they are not to aid or participate in any obstruction of access for Jewish students to ordinarily available programs, activities, and campus areas.
>
> 4. For purposes of this order, all references to the exclusion of Jewish students shall include exclusion of Jewish students based on <u>religious beliefs concerning the Jewish state of Israel</u>.
>
> (Order at 15-16, emphasis added)

This is the District Court's pronouncement that support for Netanyahu's genocidal war is a religious belief, and that opposing that religious belief is "antisemitic." Further, the *Frankel* ruling shows the practical implication of what the Brandeis Center seeks to accomplish: the District Court gives legal sanction to UC's failure on April 30, 2024 to protect its own students' First Amendment right to peacefully oppose Netanyahu's war from the violent mob. According to the District Court, any effort by UC to keep the mob at bay would have violated the "religious beliefs" of the pro-

Netanyahu partisans and fascist elements of that mob, many of whom were not Jewish, were fascist, and/or were antisemitic themselves.[4]

**UC has decided not to appeal the Frankel decision.** See EXHIBIT L (UC's Aug. 23, 2024 motion to dismiss its own appeal) and EXHIBIT M (Docket showing dismissal of the appeal on Aug. 26, 2024). This further illustrates that the University Defendants will not adequately represent the Proposed Intervenors' interests. UC does not object to the District Court's broad and sweeping decision equating opposition to Israel's war as antisemitic, nor to the license it gives to UC to take any action it wants against pro-Palestine encampments and other protests. The University is willing to accept a similar outcome in this case and/or make important concessions to Plaintiffs in settlement negotiations. Plaintiffs themselves indicate in their Opposition that "the parties have directly engaged in a series of constructive discussions, which… have enabled the parties to identify areas of potential agreement." Opposition, at 13. The Proposed Intervenors view this statement with alarm.

Even if this Court were to grant UC's motion to dismiss, it would conflict with the *Frankel* decision, and Brandeis would appeal this Court's order to the Ninth Circuit Court of Appeals. Meanwhile, the *Frankel* decision stands as uncontested law and makes the legal and factual finding that the pro-Palestine protests offend "Jewish students based on religious beliefs concerning the Jewish state of Israel." *Supra* at 4 (*Frankel* injunction order). In such a scenario, *there would be no factual record in either the* Frankel *case or the present case that challenges this wrong finding*. The adjudication of the Brandeis Center's core claim, that support for the present government of Israel is core to Jewish identity, would be conducted in the absence of *any* party presenting evidence or argument on this question.

Granting the Proposed Intervenors' Motion is necessary to make the instant case the one with the most extensive and fulsome record—indeed, the one with *any* record—germane to the core issue in these cases. Granting the Motion will ensure that there actually is an inquiry into the

---

[4] The Proposed Intervenors' Motion is accurate in stating: "Plaintiffs' lawsuit, if successful, would facilitate an unprecedented governmental clampdown on civil liberties, embolden the growth of the far right, and threaten the survival of democracy itself." (Motion at 19)

Brandeis Center's core claim and that this case becomes the authoritative binding decision for the nation.

Intervention is also necessary because the *Frankel* decision puts UC in the position of having to enforce a viewpoint-based restriction on First Amendment speech and to repress any planned pro-Palestinian event or speech because it violates the "religious beliefs" of Jews. The University will have to cancel any event or censor any individual because someone claims it is hate speech against Jews. Pro-Palestinian students and activists will have to file multiple suits against UC and other entities who comply with the *Frankel* decision, to defend their First Amendment rights.

<u>Other matters</u>

The Proposed Intervenors' Motion for Intervention is timely. Plaintiffs cite the wrong time frame, claiming that there has been a nine-month delay. Plaintiffs claim that "[t]he original Complaint brought the same claims [sic]." (Opposition at 11) The original Complaint concerned only the organizational bylaws of student organizations at Berkeley Law School. The FAC, filed on May 3, 2024, vastly broadened the scope of this case to include all forms of speech activity expressing support of Palestine. Further, since late April 2024, the Proposed Intervenors have witnessed an unforeseen, dramatic, and continuing escalation of repression by college and university administrations, the University of California included, against encampments and other forms of pro-Palestine speech. The UC Regents, after widespread opposition from students, staff, and faculty that had forced them to table a January 2024 proposal to censor political speech on UC websites, actually did adopt their censorship proposal on July 18, 2024.[5]

As concerns the Plaintiffs' claim that this case is "particularly time sensitive" in order to expeditiously protect pro-Netanyahu Jewish students' rights, the opposite is true: this case is particularly time sensitive *for the Proposed Intervenors*, for whom a correct ruling protecting their speech is more urgent than ever in the face of continuing and escalating University threats to

---

[5] The Proposed Intervenors repeat this citation from their Motion for the Court's convenience: "UC regents ban views on Israel, other political opinion from university homepages" (Los Angeles Times, July 18, 2024) https://www.latimes.com/california/story/2024-07-17/uc-regents-move-to-ban-anti-israel-views-other-political-opinion-on-university-home-pages

1  repress their speech. On August 19, 2024, the same day the Proposed Intervenors filed their Motion
2  for Intervention, UC President Michael Drake issued an order dictating that all campuses prohibit
3  encampments, going so far as to ban masks at protests, including masks to protect oneself from
4  the escalating COVID-19 pandemic.[6] UC did this this in the midst of an alarming, new, long-
5  lasting COVID surge in California.[7] The District Court's August 13, 2024 ruling at UCLA and
6  UC's acceptance of that decision pose an immediate threat to the Proposed Intervenors' rights.
7  Berkeley Law Dean Erwin Chemerinsky made the unprecedented move at the start of this school
8  year of requiring all student law journals to submit their organizational bylaws to the
9  administration for approval in order to get a class enrollment code, while at the same time making
10 clear implied threats (echoing the Brandeis Center's claim that student groups violate the school's
11 "all-comers" policy by expressing political support for Palestine) and sharing President Drake's
12 threatening directive with the law school student body. *See* EXHIBIT N (email to student law
13 journals) and EXHIBIT O (Chemerinsky email). Dean Chemerinsky already has declared that he
14 will deny academic credit to law journals who have a pro-Palestine bylaw. (Dkt. No. 62-3,
15 EXHIBIT C to the FAC) Even if one were to accept the Plaintiffs' claimed dangers, they do not
16 face an imminent threat in light of these developments; it is Proposed Intervenors' rights that face
17 an imminent threat.[8]

---

[6] "Zero tolerance at UC campuses in new order banning encampments, masking, blocking paths" Los Angeles Times (Aug. 19, 2024). Available at: https://www.latimes.com/california/story/2024-08-19/zero-tolerance-at-uc-campuses-in-new-order-banning-encampments-masking-blocking-paths
"UC System Implements New Rules On Protests, Encampments" KQED (Aug. 20, 2024). Available at: https://www.kqed.org/news/12000859/uc-system-implements-new-rules-on-protests-encampments

[7] "Calif. still hasn't escaped 'severe' COVID-19 summer surge, data suggests" SF Gate (Sep. 4, 2024) https://www.sfgate.com/bayarea/article/covid-california-summer-surge-variants-19742702.php

[8] Nor is the relevant period in this case of three months sufficient to establish untimeliness. The one case Plaintiffs cite to argue that four months is too long, *Key Bank of Puget Sound v. Alaskan Harvester*, 738 F. Supp. 398 (W.D. Wash 1989), involved an applicant intervenor who had waited four months before filing an *in rem* claim against an arrested vessel. There was a rule "that all *in rem* claims be filed within ten days of notice of the vessel arrest." *Id*. at 404. Plaintiffs' inclusion of this case does not enlighten and only deceives.

The Proposed Intervenors now deal with various cases that Plaintiffs misrepresent and/or are inapposite.

Plaintiffs claim that *Dobbas* represents a retreat from this Circuit's historic liberal attitude toward intervention. However, *Dobbas* itself asserts the standard that Plaintiffs rely on: "Rule 24(a)(2) requires that the asserted interest be 'protectable under some law' and that there exist 'a relationship between the legally protected interest and the claims at issue.'" *Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.,* 54 F.4th 1078, 1088 (9th Cir. 2022). It cannot be said that First Amendment rights are not "protectable under some law"; nor can it be said that there is no "relationship" between the present suit and the Proposed Intervenors' First Amendment rights.

Plaintiffs also rely on *Donnelly v. Glickman,* 159 F.3d 405 (9th Cir. 1998)*,* which held that male employees lack an interest to intervene in a case brought by women against sex discrimination. This case is obviously distinguishable: *Donnelly* did not involve making speech rights illegal under the guise of a dubiously-defined protected group. Nor did it call for fostering a hostile environment for Arabs and Palestinians by prohibiting criticism of a genocide of their family and brethren in Palestine. Nor did it ask the Courts to impose a definition of Zionism and Judaism that clashes with the beliefs of millions of Jews.

## CONCLUSION

Plaintiffs' Opposition to the Motion to Intervene makes no argument on the basic questions before this Court: (1) whether it is just to exclude the actual targets of this lawsuit from this case and (2) whether it is just to exclude those individuals who *by their very existence* rebut Plaintiffs' core claims. Granting the Motion for Intervention is necessary to allow for the actual adjudication of the important and pressing issue in this case—Plaintiffs' claim that opposing Netanyahu's war is "antisemitic." If the Motion is denied, then the final rulings of another judge in this Court on this core question—not based on any evidence but only on the common acceptance of this falsehood by the University of California and by pro-Netanyahu plaintiffs—become the law of the land.

This Court must grant the Motion for Intervention.

By the Proposed Intervenors' Attorneys,
UNITED FOR EQUALITY AND AFFIRMATIVE
ACTION LEGAL DEFENSE FUND (UEAALDF)

BY: /s/ Ronald Cruz
Date: September 10, 2024