SHANTA DRIVER, Michigan Bar No. P65007*
RONALD CRUZ, California Bar No. 267038
United for Equality and Affirmative Action Legal Defense Fund (UEAALDF)
755 McAllister Street
San Francisco, CA 94102
Ph: (313) 683-0942  Fax: (313) 586-0089
ronald.cruz@ueaa.net
*Attorneys for Intervenor-Defendants*
*Appearance pro hac vice

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE LOUIS D. BRANDEIS CENTER, INC., JEWISH AMERICANS FOR FAIRNESS IN EDUCATION (JAFE)<br><br>Plaintiffs,<br><br>vs.<br><br>REGENTS OF THE UNIVERSITY OF CALIFORNIA; UNIVERSITY OF CALIFORNIA AT BERKELEY; BERKELEY LAW SCHOOL; MICHAEL DRAKE, in his official capacity as President of the University of California; CAROL T. CHRIST, in her official capacity as Chancellor of the University of California, Berkeley; BEN HERMALIN, in his official capacity as Provost of the University of California,<br><br>Defendants,<br><br>and<br><br>MALAK AFANEH, ZAID YOUSEF, SHMUEL (MUKI) BARKAN, BERKELEY LAW STUDENT #1, ISAAC (IZZY) TRAGARZ<br><br>Intervenor-Defendants. | Case No. 3:23-cv-06133-JD<br><br>**REPLY IN SUPPORT OF MOTION FOR ADMITTING ADDITIONAL INTERVENORS**<br><br>Hearing Date: December 19, 2024<br>Time: 10:00 a.m.<br>Place: Courtroom 11<br>Judge: Hon. James Donato |

**I.    Requiring a motion for leave to file a motion for reconsideration in this case would be improper.**

The standards for a motion for reconsideration are stringent because of the assumption that the normal circumstance prevails: that the parties had known the issues that the Court would base its decision on and therefore had a full and fair opportunity to brief the issues. That was not true here. When the Intervenor-Defendants and Prospective Intervenors filed their original Motion for Intervention (Dkt. No. 75), they had assumed that the same standard to show an interest in this case that is being applied to Plaintiffs would apply to them. The Plaintiffs are two national organizations with a general mission of promoting "the civil and human rights of the Jewish people and promote justice for all." FAC ¶¶26, 27. They do not have registered chapters or affiliates at the UC-Berkeley (UCB) campus. They have not made a showing that any individual is authorized to represent them, a criterion the Court appears to require of the Intervenor-Defendants. (Dkt. No. 84, at 2, fn. 1) The UC Defendants in their pending Motion to Dismiss made no challenge to Plaintiffs' standing on any of these bases. Dkt. No. 68, at 7-8. The Intervenor-Defendants sought intervention because Plaintiffs seek broad injunctive relief against pro-Palestine speech not limited to the pro-Palestine student group bylaws and the UCB encampment.[1]

It was only after the Court's October 25, 2024 Order (the "Order") that it became apparent that the Court might impose different criteria than what appears to be applied to Plaintiffs. Denying this Motion for Admitting Additional Intervenors ("Motion") on the basis that the Intervenor-

---

[1] The FAC asks for injunctive relief ordering UCB to "enforce their… Antidiscrimination Policy… on an evenhanded basis… ensuring that Jewish members of the Berkeley community are protected… <u>from discrimination on the basis of their Jewish identity, including those for whom Zionism is an integral part of that identity</u>"; "an injunction … mandating that Defendants take action to <u>end the hostile environment</u>"; ordering UCB to "<u>enforce their time, place and manner restrictions</u> to ensure that pathways through campus are unobstructed"; ordering UCB to "take <u>all necessary action</u> to ensure that the blockade at Sather Gate and occupation at Sproul Hall do not continue to create a hostile environment for Jewish and Israeli students and do not impede access to disabled persons"; and ordering UCB to "<u>take all necessary action to remedy the culture of anti-Semitic bias and the hostile anti-Semitic environment and to stop the harassment of Jewish students at UC Berkeley</u>." FAC Prayer for Relief, ¶¶2-6 (emphasis added)

Defendants had reasonably assumed that the same standard would be applied to them would be unfair.[2]

Requiring the Intervenor-Defendants to refile the same motion and rename it would do nothing but add time and expense to the litigation. The standard for leave to file a motion for reconsideration is already easily met: a motion for reconsideration should "not be used to raise arguments or present evidence for the first time when they could <u>reasonably</u> have been raised earlier in the litigation." *Kona Enterprises, Inc. v. Estate of Bishop ex rel. Peters*, 229 F.3d 877, 890 (9th Cir. 2000) (citing *389 Orange Street Partners,* 179 F.3d 656, 665 (9th Cir. 1999) (emphasis added) The Intervenor-Defendants' arguments and evidence could <u>not</u> "reasonably have been raised earlier," for the reasons described above.[3]

## II.   Application of Rule 24(b)

The Court's Order states one of its criteria for intervention as an intervenor is having "authored or adopted the challenged bylaw or participated in the on-campus encampment." (Order, at 2) The Court also recognizes that those activities "<u>partially</u> ground[] plaintiffs' claims," and that the admitted Student Intervenors are "likely to continue to engage in <u>similar protests</u>." *Id.* (emphasis added) This language suggests that the Court is open to intervention by people who engage in activities beyond the bylaws and the encampment. Plaintiffs seek broad relief that includes a judicial declaration that anti-Zionist speech is antisemitic and injunctive relief to "remedy… the anti-Semitic environment and stop the harassment of Jewish students at UC-

---

[2] Plaintiffs' argue that the Intervenor-Defendants knew the rule for permissive intervention, Rule 24(b), but that rule is *discretionary* and grants the Court substantial leeway to make a generalized determination of whether an applicant "has a claim or defense that shares with the main action a common question of law or fact*.*" Fed. R. Civ. P. 24(b)(1)(B). "In exercising its <u>discretion</u>…" Fed. R.Civ.P. 24(b)(3) (emphasis added). Furthermore, appellate review of how this Court applies Rule 24(b) is subject to a permissive "abuse of discretion" standard. *Beckman Industries, Inc. v. International Ins. Co.*, 966 F.2d 470, 472 (9th Cir. 1992)

[3] The Intervenor-Defendants also meet the first prong of Local Rule 7-9(b)(1): "a material difference in fact or law exists <u>from that which was presented to the Court</u> before entry of the interlocutory order for which reconsideration is sought… The party also must show that in the exercise of reasonable diligence the party applying for reconsideration <u>did not know such fact or law</u> at the time of the interlocutory order." *Id.* (emphasis added)

Berkeley," relief similar to that granted by the U.S. District Court against UCLA in *Frankel v. Regents of the University of California.* (See Reply in Support of Motion for Intervention Dkt. No. 78 at 2-6, and see footnote 1 supra) Thus, members of the UCB campus community who participate in protests for Palestine have a direct interest in the outcome of this case.

Plaintiffs state that the Prospective Intervenors "participat[e] in campus protests at Berkeley and intend to continue participating in similar protests," as if this defeats their interest in this case. (Plaintiffs' Opposition, at 6) It does not. The Plaintiffs also ignore the fact that the Prospective Intervenors sponsored and/or participated in the spring 2024 UCB encampment, which the Court expressly said in its Order was one criterion for becoming an intervenor. Plaintiffs ignore this fact entirely because they cannot argue against it.

The Plaintiffs argue that the current Intervenor-Defendants already adequately represent the interests and arguments of the Prospective Intervenors. First, the Plaintiffs cite a legal standard that presumes that applicant-intervenors are unrelated to any of the current parties and are represented by different counsel. The specter Plaintiffs try to invoke of "additional burden, delay and complexity" (Opposition, at 7) is not present in this case. At the same time, the Prospective Intervenors, while having interests and presenting arguments that largely are consonant with those of the Intervenor-Defendants, have compelling different interests that are not adequately represented by them.

The Plaintiffs argue that, because **Berkeley Law Jews for Palestine (BLJ4P)** has authorized Shmuel (Muki) Barkan and Berkeley Law Student #1 to represent them and because the **Berkeley Muslim Student Association ("MSA")** has authorized Zaid Yousef to represent them, that they are "adequately represented." There are several problems with this argument.

First, Plaintiffs do not object to these individuals representing MSA and BLJ4P in this case. Therefore, they should have no issue having MSA and BLJ4P in this case.

Second, Plaintiffs ask the Court to apply a different standard to these organizations than to themselves. Brandeis Center and JAFE are permitted to be organizational parties, even though they lack an authorized representative which the Court is requiring of the Intervenor-Defendants and Prospective Intervenors. The Plaintiffs are national organizations who have no UCB chapter or

affiliate. As campus organizations, MSA and BLJ4P have far more "meaningful ties to UC-Berkeley" (Order at 1) than either the Brandeis Center or JAFE. The unnamed four JAFE members claiming affiliation with UCB have a scant relationship with the relief that Plaintiffs seek: for example, JAFE Member #4 is a UCB law professor who alleges, "Because he is a Jewish scholar who supports Israel, he suffers dignitary harm as a result of being treated as a second-class citizen at Berkeley's campus." FAC ¶35. The members of MSA and BLJ4P, who co-sponsored the UCB encampment and have done numerous other pro-Palestine activities, are unquestionably affected by the relief Plaintiffs seek and have provided evidence showing that they have more "meaningful ties" to the outcome of this case than what the members of JAFE allege. To allow Brandeis Center and JAFE to be parties while denying party status to MSA and BLJ4P would be unfair and would violate the criteria set forth in the Court's Order.

Third, the organizations have their own interests as organizations, and changing membership. It is these organizations, who have adopted the pro-Palestine bylaw and/or sponsored pro-Palestine protests, all of whose members would be in danger of losing academic credit and/or organizational status if Plaintiffs get the relief they seek, who have an interest in this case. As student organizations, their membership will change and no one individual will be able to permanently represent them.

The Court has not provided assurance that graduation from UCB will not end the intervenor status of any current Intervenor-Defendants. As indicated in Shmuel Barkan's (they/them) declaration, they are about to graduate at the end of the Fall 2024 term. (3rd Declaration of Shmuel (Muki) Barkan, ¶17) The parties have stipulated to a case schedule that cannot have a trial any earlier than early 2026 (Dkt. No. 89), and this case can spend years in appeal. If MSA and BLJ4P are not granted intervenor status, then the Intervenor-Defendants will have to present renewed Motions for Intervention for new individuals to replace those who graduate. Absent an order from the Court ensuring that these individuals are assured of their continued intervenor status so long as they remain members of the organization past graduation, admission of these organizations as intervenors is necessary to avoid that issue.

**UCB BAMN** is not adequately represented. UCB BAMN is a campus affiliate of the Coalition to Defend Affirmative Action, Integration and Immigrant Rights and Fight for Equality By Any Means Necessary (BAMN). It is a secular organization formed to promote political principles of anti-racism and equality that unite people of all faiths and philosophies. UCB BAMN has, in addition to joining the UCB encampment and mobilizing to defend it and other UC encampments from repression, built campaigns centered on defending *freedom of speech,* which is the central issue of this case. (Motion at 6-7) UCB BAMN's focus on this issue is why it has organized and spearheaded this intervention.

Contrary to Plaintiffs' denials, UCB BAMN engages in activities that, if the Plaintiffs succeed, would subject them to sanction by the UCB administration. As stated in BAMN's flyer "Hands Off Encampments!", BAMN calls for and has participated in direct action to defend the encampments. (EXHIBIT A) Plaintiffs argue that UCB BAMN has no interest in this case because "this case is not about silencing criticism of Israel [or] declaring anti-Semitism illegal." (Opposition, at 7) *Whether this statement is true is precisely the central dispute in this case.* Admitting UCB BAMN and its members as intervenors as secular defenders of free speech is necessary to allow the broader issue of freedom of speech for *all* UCB students to be represented in this case.

Further, UCB BAMN is an antiracist organization. Despite Brandeis' claims otherwise, they seek a selective enforcement of UCB's antidiscrimination policy, time, place, and manner policies, etc. to discriminate against *pro-Palestine* speech, which is antiracist speech.

**Dr. Benjamin Lynch** is a senior staff researcher and is not adequately represented by the Intervenor-Defendants, not only because he is a member of UCB BAMN which is not currently a Defendant, but also because there are no faculty or staff among the Intervenor-Defendants. The threat to academic freedom posed by the national effort to falsely equate anti-Zionism with antisemitism has been the subject of national news coverage and raging debates in higher education across the country. Therefore, it is of vital importance that the interests of pro-Palestine UCB academics are represented in this case. The FAC makes a point to attack a Berkeley instructor who had dismissed his class and spoke to those students who chose to remain about supporting

Palestine. The FAC falsely claims that he "embark[ed] on an anti-Israel rant, with up to 1,100 students held as his captive audience." FAC ¶113. Dr. Lynch as part of UCB BAMN, directly participated in the defense of this lecturer from discipline by the UCB administration. (Motion at 7) Plaintiffs seek broad relief that threatens academic freedom, including "mandatory training for administrators and professors about anti-Semitic forms of anti-Zionism" and "all necessary action to remedy the culture of anti-Semitic bias and the hostile anti-Semitic environment and to stop the harassment of Jewish students at UC Berkeley." (FAC Prayer for Relief, ¶¶3,6) If UC were to consider Dr. Lynch and others like him "antisemitic," this will directly affect his academic freedom and his ability to get grants and employment within UC. JAFE has among its members 11 professors and 5 non-professors from across the country who seek an order preventing student organizations from prohibiting speakers whose political views they find abhorrent. (FAC ¶¶34-49) It would prevent this Court from being able to adjudicate the crucial issue of academic freedom in this case, to allow these 16 individuals, most of whom have no affiliation with UCB, to be parties while not having any pro-Palestine academic in this case. JAFE Member #4 is a UCB law professor who alleges, "Because he is a Jewish scholar who supports Israel, he suffers dignitary harm as a result of being treated as a second-class citizen at Berkeley's campus." FAC ¶35. Exclusion of Dr. Lynch would treat pro-Palestine academics as second class. Lastly, Plaintiffs conveniently ignore Dr. Lynch's involvement in defending pro-Palestine encampments in UC, as set forth in the Motion.

**James Alsip** and **Undergraduate Student #1** are not adequately represented by the Intervenor-Defendants because they are members of UCB BAMN, a secular organization that defends freedom of speech and opposes racism. Plaintiffs conveniently ignore that they individually participated in UCB's encampment, as set forth in the Motion.

The Court should grant the Motion for Admitting Additional Intervenors.

By the Intervenor-Defendants' Attorneys,
UNITED FOR EQUALITY AND AFFIRMATIVE
ACTION LEGAL DEFENSE FUND (UEAALDF)

BY: /s/ Shanta Driver
Date: December 3, 2024