# Exhibit A

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

JONATHAN GROVEMAN,

        Plaintiff,

     v.

REGENTS OF THE UNIVERSITY OF
CALIFORNIA, MICHAEL V. DRAKE,
GARY S. MAY, MARY CROUGHAN,
RENETTA GARRISON TULL, CLARE
SHINNERL, PABLO REGUERIN, AND
DOES 1-10,

        Defendants.

No. 2:24-cv-01421 WBS AC

MEMORANDUM AND ORDER RE:
MOTION TO DISMISS FIRST
AMENDED COMPLAINT

----oo0oo----

        Plaintiff Jonathan Groveman brought this action against

defendants Regents of the University of California, Michael

Drake, Gary May, Mary Croughan, Renetta Garrison Tull, Clare

Shinnerl, and Pablo Reguerin, alleging violation of the First and

Fourteenth Amendments under 42 U.S.C. § 1983; violation of Title

VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq.;

and violation of Title II of the Americans with Disabilities Act

("ADA"), 42 U.S.C. § 12131 et seq.  (First Am. Compl. ("FAC")

1

1   (Docket No. 24).)  Defendants move to dismiss the entire action.

2   (Docket No. 32.)

3   I.   Factual Background

4           Plaintiff is a resident of Davis, California.  (FAC ¶

5   4.)  Defendant Drake is the President of the University of

6   California system.  (Id. ¶ 6.)  The remaining individual

7   defendants are associated with University of California, Davis

8   ("UC Davis").  Specifically, May is the Chancellor; Croughan is

9   the Provost and Executive Vice Chancellor; Tull is the Vice

10  Chancellor for Diversity, Equity and Inclusion and Co-Chair of

11  the Next Generation Campus Safety Task Force; Shinnerl is the

12  Vice Chancellor for Finance, Operations & Administration; and

13  Reguerin is the Vice Chancellor for Student Affairs.  (See id. ¶¶

14  7-11.)

15          This action concerns a protest encampment set up on the

16  UC Davis campus by an organization called the Davis Popular

17  University for the Liberation of Palestine ("PULP"), which is not

18  a registered student organization at the university.  (See id. ¶¶

19  7, 32.)  The PULP encampment was established by May 7, 2024 in

20  the UC Davis quad.  (See id. ¶ 12.)  The complaint alleges that

21  the encampment was "comprised of individuals who are vehemently

22  opposed to the existence of the State of Israel" and are

23  supportive of the "desire to extinguish . . . Israelis and Jews

24  wherever they may live in the world."  (See id. ¶¶ 14-15.)

25          On May 7, 2024, plaintiff -- who is Jewish and

26  identifies as a Zionist -- was "on campus . . . to provide

27  support to the counter dialogue against the Encampment and to

28  support Jewish faculty and staff."  (See id. ¶¶ 22, 38.)  He

2

1   attempted to walk from the north side of the central path through
2   the quad, which was blocked by the encampment, to the south side,
3   but was prevented from entering the encampment and told to "go
4   around."  (Id.)  He explained that he has a mobility disability
5   and needed to walk on the concrete central path and was again
6   refused.  (Id.)  He "asked to speak to the student in charge of
7   the [e]ncampment, at which point he was accused of being a
8   'Zionist,' was told 'Zionists are not welcome,' and to 'go
9   away.'"  (Id.)  He was "struck twice in the face with the sharp
10  end of an umbrella."  (Id.)

11          The encampment was dismantled on or about June 20, 2024
12  following negotiations with UC Davis officials.  (See id. ¶ 19.)
13  II.  Legal Standard
14          Federal Rule of Civil Procedure 12(b)(6) allows for
15  dismissal when a complaint fails to state a claim upon which
16  relief can be granted.  See Fed. R. Civ. P. 12(b)(6).  "A Rule
17  12(b)(6) motion tests the legal sufficiency of a claim."  Navarro
18  v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  The inquiry before
19  the court is whether, accepting the allegations in the complaint
20  as true and drawing all reasonable inferences in the plaintiff's
21  favor, the complaint has alleged "sufficient facts . . . to
22  support a cognizable legal theory," id., and thereby stated "a
23  claim to relief that is plausible on its face," Bell Atl. Corp.
24  v. Twombly, 550 U.S. 544, 570 (2007).  Courts are not, however,
25  "required to accept as true allegations that are merely
26  conclusory, unwarranted deductions of fact, or unreasonable
27  inferences."  Sprewell v. Golden State Warriors, 266 F.3d 979,
28  988 (9th Cir. 2001); see Twombly, 550 U.S. at 555.

1    III. Discussion

2         A.    Section 1983

3              1.   Equal Protection

4              "To state a claim under 42 U.S.C. § 1983 for a

5    violation of the Equal Protection Clause of the Fourteenth

6    Amendment, a plaintiff must show that the defendants acted with

7    an intent or purpose to discriminate against the plaintiff based

8    upon membership in a protected class."  Shooter v. Arizona, 4

9    F.4th 955, 960 (9th Cir. 2021).

10             Plaintiff alleges that the encampment participants

11   excluded him on the basis of his Jewish identity using physical

12   force and "racially and ethnically charged invectives."  (See FAC

13   ¶ 17.)  He attempts to hold defendants responsible for the

14   actions of the encampment participants by alleging that they

15   "allow[ed] [the encampment] to continue" despite the encampment

16   violating university policies concerning camping and permitting.

17   (See id. ¶¶ 6-12.)  He also alleges that May "negotiated with"

18   PULP concerning the location of the encampment (id. ¶ 6); that

19   Croughan's office "field[ed] and address[ed] concerns arising out

20   of the recent Israel-Palestine conflict" and Shinnerl was

21   generally responsible for safety on campus (id. ¶¶ 8, 10); that

22   Tull "believes that anti-Zionism has nothing to do with

23   antisemitism and that expression thereof is inherently not

24   problematic under the First Amendment, and that expressing

25   concern about the [e]ncampment is inherently Islamophobic" (id. ¶

26   9); and that Reguerin was "collegial" to those in the encampment

27   and accused counter-protestors of exacerbating tensions on campus

28   (id. ¶ 11).

                                    4

1    Plaintiff's allegations fall short of establishing even

2   a causal connection between defendants' actions and plaintiff's

3   exclusion from the encampment, let alone that defendants acted

4   with discriminatory intent.  See Mandel v. Bd. of Trs. of Cal.

5   State Univ., No. 17-cv-03511 WHO, 2018 WL 5458739, at *17 (N.D.

6   Cal. Oct. 29, 2018) (allegations that defendants, inter alia,

7   failed to prevent exclusion of Jewish student group by third

8   parties or held anti-Zionist views were insufficient to establish

9   intentional discrimination).  Nor does plaintiff allege any facts

10  suggesting that the university treated Jewish individuals

11  differently than the encampment participants; there is no

12  indication that Jewish individuals sought to establish an

13  encampment, or that if they had, the university would have

14  rebuffed them or prevented them from engaging in comparable

15  treatment of pro-Palestinian protestors.  See Gallinger v.

16  Becerra, 898 F.3d 1012, 1016 (9th Cir. 2018) (Equal Protection

17  analysis considers whether similarly situated individuals were

18  treated differently).  Accordingly, plaintiff's Equal Protection

19  claim will be dismissed.

20          2.  Free Exercise

21      The Free Exercise Clause of the First Amendment,

22  applicable to the states through the Fourteenth Amendment,

23  provides that "Congress shall make no law . . . prohibiting the

24  free exercise" of religion.  Under the Free Exercise Clause, the

25  government may not "burden[] religious practice" by providing "a

26  mechanism for individualized exemptions" in a purportedly neutral

27  policy, "treat[ing] comparable secular activity more favorably

28  than religious exercise," or "act[ing] in a manner hostile to

5

1    religious beliefs."  Fellowship of Christian Athletes v. San Jose

2    Unified Sch. Dist. Bd. of Educ., 82 F.4th 664, 686, 690 (9th Cir.

3    2023) (cleaned up).

4             Plaintiff alleges that defendants "deprived [him] of

5    the right to express his Jewish identity freely" by "allowing the

6    encampment to thwart religious dialog[ue]" in violation of the

7    Free Exercise Clause of the First Amendment.  (FAC ¶ 43.)  This

8    claim relies upon the allegations discussed above and fails for

9    similar reasons.  It is not possible to draw a plausible

10   inference that defendants' actions (or inactions) had the effect

11   of favoring or disfavoring any religion or burdening plaintiff's

12   religious exercise.  To the contrary, the complaint states that a

13   "counter-dialogue" in response to the encampment took place on

14   campus, and there is no indication defendants interfered with

15   plaintiff's ability to express his views or exercise his religion

16   in that setting.  (See id. ¶ 22.)

17            While individuals associated with PULP purportedly

18   excluded plaintiff from the encampment and refused to engage in

19   religious dialogue, the causal connection between this alleged

20   injury and defendants' actions in allowing the encampment or

21   expressing their views is too attenuated to establish a Free

22   Exercise violation.  See Apache Stronghold v. United States, 101

23   F.4th 1036, 1111 (9th Cir. 2024) (Vandyke, J., concurring)

24   ("[W]hen the government acts (or fails to act), not all of its

25   actions (or inactions) that may have some incidental effect on an

26   individual's religious exercise are deemed to 'burden' that

27   person's religious exercise within the meaning of our guarantees

28   of religious freedom."); Mandel, 2018 WL 5458739, at *14 (Jewish

1   university students failed to state a claim under the First
2   Amendment in connection with disruption of student organization's
3   event where alleged injury "was caused by the protestors" and
4   there were no facts indicating defendants "fostered the conduct
5   of the protesters"). Accordingly, plaintiff's Free Exercise
6   claim will be dismissed.

7           3.   Qualified Immunity

8           Even if the facts alleged established constitutional
9   violations, plaintiff has not pled that defendants violated
10  clearly established law. Under the circumstances facing the
11  defendants, it would not have been "clear" to "every reasonable
12  official . . . that what he is doing is unlawful." See Dist. of
13  Columbia v. Wesby, 583 U.S. 48, 63 (2018) (quotation marks
14  omitted); see also Keates v. Koile, 883 F.3d 1228, 1235 (9th Cir.
15  2018) (quoting Mullenix v. Luna, 577 U.S. 7, 12 (2015)) (At the
16  pleadings stage, defendants are entitled to qualified immunity
17  unless plaintiff sufficiently pleads violation of a "clearly
18  established constitutional right[] of which a reasonable officer
19  would be aware 'in light of the specific context of the case.'").
20  Accordingly, even if the court were to conclude that plaintiff
21  stated First and Fourteenth Amendment claims, defendants would be
22  entitled to qualified immunity. See Saucier v. Katz, 533 U.S.
23  194, 202 (2001).

24      B.   Title VI

25          Title VI provides that no person shall "be excluded
26  from participation in, be denied the benefits of, or be subjected
27  to discrimination under any program or activity receiving Federal
28  financial assistance" on the basis of race, color, or national

                                7

1  origin.  42 U.S.C. § 2000d.  Plaintiff alleges that UC Davis

2  receives federal financial assistance and is therefore subject to

3  Title VI.  (See FAC ¶ 48.)

4       Defendants argue that plaintiff lacks standing to bring

5  a Title VI claim.  Cases addressing statutory standing under both

6  Title VI and Title IX are relevant here, as courts have

7  interpreted the two statutes in the same manner owing to their

8  nearly identical language and function.  See Barnes v. Gorman,

9  536 U.S. 181, 185 (2002) ("[T]he [Supreme] Court has interpreted

10 Title IX consistently with Title VI."); Schmitt v. Kaiser Found.

11 Health Plan of Wash., 965 F.3d 945, 953 (9th Cir. 2020) (Because

12 "Title VI served as the model for Title IX," courts "interpret

13 the [two] statutes similarly.").

14      While the Ninth Circuit has not squarely addressed

15 statutory standing under Titles VI and IX, several other circuits

16 have done so.  For example, in Carnell Construction Corp. v.

17 Danville Redevelopment & Housing Authority, the Fourth Circuit

18 noted that based on the language of Title VI, "the determinative

19 inquiry" in analyzing standing under the statute is whether the

20 plaintiff "was either participating or seeking to participate in

21 a federally funded activity, or was the intended beneficiary of

22 those federal funds."  745 F.3d 703, 715-16 (4th Cir. 2014).  The

23 Seventh Circuit has similarly held that "in order to bring a

24 private action under Title VI[,] the plaintiff must be the

25 intended beneficiary of, an applicant for, or a participant in a

26 federally funded program."  See Doe on Behalf of Doe v. St.

27 Joseph's Hosp. of Fort Wayne, 788 F.2d 411, 418-19 (7th Cir.

28 1986).

8

1      Several California district courts have also held that

2  a plaintiff must be the beneficiary of federal funds or

3  participating in a federally-funded program to establish standing

4  under Titles VI and IX.  See, e.g., Donaghe v. Sherman Heights

5  Elementary, No. 24-cv-0359 MMA DDL, 2024 WL 3883510, at *4 (S.D.

6  Cal. Aug. 20, 2024) ("Although . . . Title IX can apply to non-

7  students, courts have done so only in the context of a plaintiff

8  who participated in or intended to participate in an educational

9  program or activity receiving Federal assistance.") (cleaned up);

10  Concerned Jewish Parents & Tchrs. of Los Angeles v. Liberated

11  Ethnic Stud. Model Curriculum Consortium, No. 22-cv-3243 FMO EX,

12  2024 WL 5274857, at *19 (C.D. Cal. Nov. 30, 2024) ("'plaintiffs'

13  Title VI claim fails because they 'are not the intended

14  beneficiaries of public schooling'") (quoting Posey v. San

15  Francisco United Sch. Dist., No. 23-cv-02626 JSC, 2023 WL

16  8420895, at *2 (N.D. Cal. Dec. 4, 2023)); Lopez v. Regents of

17  Univ. of Cal., 5 F. Supp. 3d 1106, 1114 (N.D. Cal. 2013) ("in

18  general, non-students such as parents do not have a personal

19  claim under Title IX"); see also Smith v. Cal. Bd. of Educ., No.

20  13-cv-5395 FMO PJW, 2014 WL 5846990, at *4 (C.D. Cal. Nov. 10,

21  2014) (noting that although Fobbs v. Holy Cross Health Sys.

22  Corp., 29 F.3d 1439, 1447 (9th Cir. 1994) held that a plaintiff

23  was not required to plead he is the intended beneficiary of

24  federal funds under Title VI, that case is no longer persuasive

25  following Twombly's establishment of the current pleading

26  standard).

27      Here, plaintiff has failed to plead sufficient facts to

28  establish that he has standing to bring a claim under Title VI.

1   The complaint states that he is "on the UC Davis campus
2   regularly" to exercise and to attend "meetings and events"
3   related to his work and his daughter's participation in the Davis
4   High School orchestra, as well as unspecified "campus events."
5   (FAC ¶ 21.)  The complaint does not indicate what "work" he is
6   involved in that brings him to campus.  On the day in question,
7   plaintiff "was on campus . . . to provide support to the counter
8   dialogue against the Encampment and to support Jewish faculty and
9   staff."  (Id. ¶ 22.)  Based on the allegations of the complaint,
10  plaintiff is entirely unaffiliated with UC Davis and is not
11  involved with any university program or activity receiving
12  federal funding.  Indeed, the organization that established the
13  encampment is not itself a registered student organization at UC
14  Davis.  (Id. ¶ 32.)  Plaintiff cannot be considered a participant
15  in a federally funded program merely by setting foot on the
16  campus to participate in a political protest with no formal
17  connection to the university.  Accordingly, plaintiff lacks
18  standing to bring a claim under Title VI, and his claim under
19  that statute will be dismissed.
20          C.   ADA
21              "Title II of the ADA, the title applicable to public
22  services, provides that 'no qualified individual with a
23  disability shall, by reason of such disability, be excluded from
24  participation in or be denied the benefits of the services,
25  programs, or activities of a public entity, or be subjected to
26  discrimination by any such entity.'"  K.M. ex rel. Bright v.
27  Tustin Unified Sch. Dist., 725 F.3d 1088, 1096 (9th Cir. 2013)
28  (quoting 42 U.S.C. § 12132).

1    Plaintiff alleges his rights under the ADA were
2  violated because he has a mobility disability and was unable to
3  use the central path through the quad blocked by the encampment
4  to get from the north side of the quad to the south side. (See
5  FAC ¶ 22, 59.)  The main path through the quad is asphalt or
6  concrete, which is the type of paving plaintiff requires based on
7  his disability. (Id.)  Plaintiff alleges that he was unable to
8  safely walk on the grass surrounding the encampment. (See id. ¶
9  59.)  The complaint also states that "many of the paths
10  surrounding and accessing UC Davis" are made of decomposed
11  granite material that is not safe for him to walk on. (Id.)

12    On May 10 and 14, plaintiff wrote to UC Davis Chief
13  Counsel Mike Sweeney concerning the inaccessible path through the
14  quad. (Id. ¶ 26.)  On May 17, UC Davis' ADA Coordinator Wendi
15  Delmendo sent a response informing plaintiff that he would need
16  to use a different path. (Id.)  A copy of the email -- which is
17  incorporated into the complaint by reference[1] -- shows that Ms.
18  Delmendo informed plaintiff that there were other accessible
19  paths to get to various campus locations and offered to assist
20  plaintiff in locating an accessible path. (See Docket No. 32-7.)
21  The complaint does not suggest that plaintiff attempted to accept
22  the offered assistance, nor does it allege that there was not, in
23  fact, an accessible path that would have allowed him to reach his
24  desired destination; rather, the complaint merely states that

25  _____

26    [1]  Because the email is incorporated into the complaint by
   reference (see FAC ¶ 26) and plaintiff does not dispute the
27  accuracy of the email provided by defendants, the court is
   permitted to consider the content of the email. See Khoja v.
28  Orexigen Therapeutics, Inc., 899 F.3d 988, 998 (9th Cir. 2018).

1  plaintiff cannot walk on grass or decomposed granite and wished

2  to take the paved path through the center of the quad.  (See FAC

3  ¶ 59.)

4          The ADA does not always "require an accommodation that

5  an individual requests or prefers; instead, the ADA requires only

6  a reasonable accommodation."  Chew v. Legislature of Idaho, 512

7  F. Supp. 3d 1124, 1129 (D. Idaho 2021) (citing Zivkovic v. S.

8  Cal. Edison Co., 302 F.3d 1080, 1089 (9th Cir. 2002)).  Assuming

9  plaintiff's allegations are sufficient to establish that he is

10  disabled within the meaning of the ADA, plaintiff has failed to

11  plead that he was denied a reasonable accommodation or that he

12  was unable to reach his desired destination.  That a single path

13  preferred by plaintiff was not accessible does not plead a

14  violation of Title II of the ADA.  See Parker v. Universidad de

15  Puerto Rico, 225 F.3d 1, 7 (1st Cir. 2000) (university was "not

16  required to make every passageway in and out of the [site]

17  accessible," but was required to "provide at least one route that

18  a person in a wheelchair can use to reach the [site] safely")

19  (cited with approval in Cohen v. City of Culver City, 754 F.3d

20  690, 698 (9th Cir. 2014)).  Accordingly, the ADA claim will be

21  dismissed.

22          The court cannot envision any set of facts consistent

23  with the allegations of the complaint that would cure the defects

24  identified above.  The court therefore will not grant leave to

25  amend the complaint.  See Missouri ex rel. Koster v. Harris, 847

26  F.3d 646, 656 (9th Cir. 2017).

27          IT IS THEREFORE ORDERED that defendants' motion to

28  dismiss (Docket No. 32) be, and the same hereby is, GRANTED.

1   Dated:   February 4, 2025       WILLIAM B. SHUBB
                                    UNITED STATES DISTRICT JUDGE
2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28