SHANTA DRIVER, Michigan Bar No. P65007*
RONALD CRUZ, California Bar No. 267038
United for Equality and Affirmative Action Legal Defense Fund (UEAALDF)
755 McAllister Street
San Francisco, CA 94102
Ph: (313) 683-0942  Fax: (313) 586-0089
ronald.cruz@ueaa.net
*Attorneys for Intervenor-Defendants*
*\*Appearance pro hac vice*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THE LOUIS D. BRANDEIS CENTER, INC., JEWISH AMERICANS FOR FAIRNESS IN EDUCATION (JAFE)<br><br>Plaintiffs,<br><br>vs.<br><br>REGENTS OF THE UNIVERSITY OF CALIFORNIA, et al.,<br><br>Defendants,<br><br>and<br><br>ZAID YOUSEF, ISAAC (IZZY) TRAGARZ<br><br>Defendant-Intervenors. | Case No. 3:23-cv-06133-JD<br><br>**INTERVENORS' MOTION FOR RECONSIDERATION OF DECISIONS ELIMINATING THEM FROM THIS CASE** |

*NOTE: The Intervenors file this Motion for Reconsideration because the Federal Rules of Appellate Procedure require that a motion for reconsideration made under Rule 60 be filed within 28 days of an order, in order to toll the normal 30-day limit to appeal that order. FRAP 4(a)(4)(A)(vi). This Motion is filed within 28 days of the Court's May 23, 2025 order dismissing Malak Afaneh and Shmuel Barkan. The Intervenors would not object to this Motion being placed in abeyance pending the determination of their motion for leave to file a reconsideration motion. If the Court grants that motion, Intervenors request leave, with a reasonable amount of time, to*

*amend this Motion consistent with the Court's order granting leave and with an updated hearing date.*

**PLEASE TAKE NOTICE** that on August 28, 2025, at 10:00 a.m., in Courtroom 11, 19th Floor, 450 Golden Gate Avenue, San Francisco, California of the above-entitled Court, the Defendant-Intervenors ("Intervenors") seek relief to prevent their *de facto* elimination as parties from this case, which would undermine the Court's October 25, 2024 decision that granted permissive intervention to the Intervenors because they "plausibly allege interests that might be affected by the litigation, and may have defenses that UC Berkeley may not raise." Dkt. No. 84, at 2.

## STATEMENT OF RELIEF SOUGHT, POSITIONS OF PARTIES

The Intervenors ask this Court to reconsider several rulings that, in tandem, have the effect of preventing any new UC-Berkeley (UCB) affiliates from becoming intervenors and eliminating the four (now two) student intervenors once they graduate, ensuring the elimination of the Intervenors from this case before trial. (The remaining Intervenors graduate before the trial in this case set for September 2026.) Those rulings are:

- The February 4, 2025 ruling denying intervention to Berkeley Law Jewish Students for Palestine (BLJ4P), Berkeley Muslim Students Association (Berkeley MSA), UC-Berkeley BAMN (Coalition to Defend Affirmative Action, Integration and Immigrant Rights and Fight for Equality By Any Means Necessary), and long-term UCB affiliate Dr. Benjamin Lynch;

- The February 4, 2025 ruling denying the motion by Berkeley Law Student #1 (and by implication also all similarly-situated currently-enrolled UCB students) to proceed under a pseudonym due to a reasonable fear of retaliation and to protect their post-graduation career opportunities;

- The May 23, 2025 ruling dismissing Intervenors Malak Afaneh and Shmuel (Muki) Barkan because they graduated; and

- The October 25, 2024 denial of intervention as of right to the long-term affiliates of UCB who will not "graduate" before this case concludes: BLJ4P, Berkeley MSA, UCB BAMN, and Dr. Lynch.

*While this Motion is made in regard to four different orders, the goal of this Motion for Reconsideration is simple, straightforward, and manifestly just: to ensure the Intervenors a permanent status in this case, by preventing their de facto elimination from this case by virtue of their members graduating.* This can be done by (1) allowing Malak Afaneh and Shmuel Barkan to be intervenors and ensuring the status of all Intervenors throughout the pendency of this case, (2) granting intervention to BLJ4P, Berkeley MSA, UC-Berkeley BAMN and Dr. Benjamin Lynch so that the long-term existence of UC-Berkeley affiliated Intervenors is assured, and/or (3) allowing new intervenors to proceed under pseudonyms because current UCB students fear the consequences including harm to their job opportunities if they were to be publicly-named intervenors. Further, Intervenors seek intervention as of right for intervenors who have an unambiguous long-term affiliation with UC-Berkeley and interests in this case, so that the existence of pro-Palestine intervenors is assured.

This motion is made under Rule 60 for relief from an order due to "mistake, inadvertence, surprise, or excusable neglect," and/or relief from an order due to "any other reason that justifies relief." Fed. R. Civ. P. 60(b).[1]

On June 19, 2025, counsel for the Intervenors reached out to Plaintiffs and the University Defendants and asked for their position on this Motion. At the time of this filing, neither set of parties has responded.

## MEMORANDUM OF POINTS AND AUTHORITIES

## ISSUE TO BE DECIDED

Whether a set of decisions by this Court should stand that, together, would lead to the Intervenors' complete elimination as parties, effectively reversing this Court's decision to admit

---

[1] Rule 60 permits a motion for reconsideration "within a reasonable time," and additionally, if it is based on "mistake, inadvertence, surprise, or excusable neglect," it must be "no more than a year after the entry of the… order." Fed. R. Civ. P. 60(c)(1).

them as Intervenors because they "plausibly allege interests that might be affected by the litigation, and may have defenses that UC Berkeley may not raise." Dkt. No. 84, at 2.

## ARGUMENT

**I. This Court must grant relief to prevent the Intervenors' elimination from this case.**

When this Court granted permissive intervention, it held that the Intervenors "plausibly allege interests that might be affected by the litigation, and may have defenses that UC Berkeley may not raise." Dkt. No. 84, at 2. This was entirely correct. The Intervenors, (1) unlike the University Defendants, represent the actual individuals at UC-Berkeley whose First Amendment rights would be harmed if Plaintiffs' lawsuit succeeds and, (2) unlike the University Defendants, will present evidence and testimony proving that the central claim by Plaintiffs, that *the Intervenors'* pro-Palestine activities described and mischaracterized in the First Amended Complaint ("FAC") are "anti-semitic," is false.

However, the Intervenors would be eliminated if the Court does not reconsider several recent decisions.

On May 23, 2025, after the Intervenors informed the Court that two of the four Intervenors, Malak Afaneh and Shmuel (Muki) Barkan, have graduated, the Court dismissed them from the case because they graduated. Dkt. No. 116. If the Court continues to dismiss intervenors once they graduate, this would eliminate *all* the Intervenors before the September 8, 2026 trial in this case, because the remaining intervenors, Isaac (Izzy) Tragarz and Zaid Yousef, will graduate before then.

A set of previous decisions by the Court denied the admission of UC-Berkeley pro-Palestine organizations—who would not have this issue of "graduating out"—foreclosed any future students from applying to become intervenors—and denied prospective pro-Palestine intervenors the ability to proceed without disclosing their names, a right which is being afforded to the individuals who comprise the Plaintiff organizations. These decisions act together to ensure the elimination of the pro-Palestine intervenors in this case before trial.

On February 4, 2025, the Court denied two motions by the Intervenors. Both orders were premised on the ability of the current Intervenors to remain intervenors in this case.

The Court denied intervention to Berkeley Law Jewish Students for Justice in Palestine (BLJ4P), Berkeley Muslim Students Association (Berkeley MSA), UC-Berkeley BAMN (Coalition to Defend Affirmative Action, Integration and Immigrant Rights and Fight for Equality By Any Means Necessary), and long-term UCB affiliate and faculty researcher Dr. Benjamin Lynch, stating that they "did not identify any new or different interests or arguments they might advance beyond those <u>likely to be presented by the students to whom permissive intervention has already been granted.</u>" (Dkt. No. 99, emphasis added) This presumed that the Intervenors will remain intervenors.

In another docket-entry order the same day, this Court denied the Intervenors' motion to allow certain individuals to proceed under pseudonyms. They had provided evidence that pro-Palestine current and former students have been harassed, targeted, and doxxed and that they are fearful of losing career opportunities if they are publicly-named parties. Many currently-enrolled individuals at UC-Berkeley, including the nine members of Berkeley Law Jewish Law Students for Justice in Palestine (BLJ4P) who signed a declaration under seal in support of these motions (Dkt. No. 88-1), including seven first-year law students, are fearful of proceeding as publicly-named intervenors. However, they would be willing to be intervenors if they were allowed to proceed under the same terms the Plaintiffs are being allowed to proceed, either as members of an organization or as intervenors under pseudonyms.

The same criteria applied to the parties who support Netanyahu's policies of war and genocide should apply to the parties opposed to them. But the Court's orders, if allowed to stand, would effectively eliminate all the pro-Palestine people whose First Amendment rights are at issue in this case, on the basis of criteria that are selectively not being applied to the pro-Israel and pro-Netanyahu parties in this case. On the one hand, the Plaintiff organizations Brandeis Center—who has not alleged to have any members affiliated with UC-Berkeley to have suffered a particular harm—and Jewish Americans for Fairness (JAFE) are being allowed to proceed as organizations. They have not been asked to produce (and have not produced) any evidence that they have any members who are affiliated with UC-Berkeley. On the other hand, the Jewish, Muslim, Palestinian, and other prospective and current intervenors who agree with the U.N.'s International Court of

Justice's findings on Israel have had demands placed on them that would ensure their elimination from this case.

It is inconsistent for the Court to grant intervention to students on October 25, 2024—some of whom had already graduated or were about to graduate in a few weeks—then to simultaneously bar any future motions to add intervenors, while immediately dismissing any student intervenor who graduates. By this standard, because civil cases last years, no students could ever assert rights. Furthermore, dismissing all the Intervenors because they graduate, while not doing so to the Plaintiffs, adjudicates the merits of the case based on a discriminatory technicality. The nature of this particular case is such that the Intervenors do not simply represent the interests they had as UC-Berkeley students. They represent the movement for Palestine at UC-Berkeley, a movement in which they remain actively involved after graduation. Malak Afaneh and Shmuel Barkan remain involved with Law Students for Justice in Palestine (LSJP) and BLJ4P. After graduation, Afaneh and Barkan, like their peers at UC-Berkeley, will be adversely affected by the broad holding that the Plaintiffs seek, a declaration that protest against the actions of Israel and its current government amounts to "anti-semitism." They still will provide the essential evidence and arguments that no other defendant will, in conjunction with currently enrolled UC-Berkeley students, faculty, and staff who will assist with the case.

One of the Intervenors' most important contributions to this case is to show why anti-semitism and anti-zionism cannot be conflated. This argument is more urgently needed to be represented in this case, given Israel's latest attacks against Iran. If the Plaintiffs prevail in this case, the new, growing international anti-war movement, which some UCB students are already participating in, will be censored and disciplined as "anti-semites." This Court's correct decision to grant intervention to the intervenors because they bring essential interests and arguments into this case, would be extinguished by the new fact that the Intervenors will be eliminated.

The prospect of denying Malak Afaneh, the nationally-prominent UC-Berkeley Palestinian activist and the most prominent individual targeted by Plaintiffs' suit, and Jewish and Palestinian pro-Palestine individuals who unlike their opponents are willing to identify themselves in this case, based on criteria not applied to the Plaintiffs, would call into question the neutrality of this Court.

**II.     May 23, 2025 order to dismiss Malak Afaneh and Shmuel Barkan**

On May 23, 2025, the Court, in direct response to the Intervenors' notice dated May 13 that Afaneh and Barkan had graduated, dismissed them for graduating. (Dkt. No. 115)

Malak Afaneh and Shmuel Barkan continue to have an interest in this case beyond graduation because, among other things, they remain active in Law Students for Justice in Palestine (LSJP) and/or BLJ4P, and their free-speech rights remain directly implicated. This Court's determination at the end of this case of whether their high-profile activism for Palestine is legally defined as "anti-semitic" will affect their future job opportunities. Their job prospects have already been affected by the public statements by the Berkeley Law Dean, UC President, and UC Regents' treating Afaneh's statements and Barkan's public defense of her as being "anti-semitic" because they were pro-Palestine. FAC (Dkt. No. 62 at ¶¶16, 88-89,106); Intervenors' Motion to Proceed Pseudonymously (Dkt. No. 87, at 3-5). The Court had held that the "arguments" to be brought by "the students to whom permissive intervention has already been granted," including Afaneh and Barkan, were the basis for denying intervention to additional Intervenors. (Dkt. No. 99) Afaneh and Barkan's "arguments" remain essential to the case: as Ms. Afaneh is the single most prominent individual, as the author of the Berkeley Law students' pro-Palestine bylaw and speaker at the law school dean's function, whom the Plaintiffs have claimed to be "anti-semitic." Barkan, as a dual citizen of the United States and Israel and a pro-Palestine Jew, provides a unique interest of Israeli citizens and Jews generally who are threatened by and fear heightened anti-semitism due to the actions of the Netanyahu government, people who would not otherwise be represented in this case.

The policy of dismissing students immediately effectively denies students (the *pro-Palestine* students only in this case) the ability to assert their interests, because of course students graduate during the course of civil litigation.

**III.    February 4, 2025 order denying intervention to BLJ4P, Berkeley MSA, UC-Berkeley BAMN, and Dr. Benjamin Lynch**

The February 4 order denying intervention to BLJ4P, Berkeley MSA, and UC-Berkeley BAMN did not consider their interests and arguments, saying simply that they "did not identify any new or different interests or arguments." (Dkt. No. 99)

This did not engage with the fact that the *sole* bases for the Court denying them intervention were addressed by the Intervenors, but summarily dismissed by that conclusory sentence.

In the Court's October 25, 2024 denial of intervention to **BLJ4P**, it stated that BLJ4P needed more than an individual intervenor's assertion that they were a "'representative' of that organization" (Dkt. No. 84, at 2, fn. 1). Intervenors submitted a declaration[2] signed by ten members of BLJ4P, authorizing Shmuel Barkan to be their designated representative, in support of BLJ4P being admitted as an organizational intervenor. Additionally, members of BLJ4P submitted a declaration with exhibits showing that BLJ4P had co-sponsored the Spring 2024 pro-Palestine encampment and its members camped out, rallied, volunteered, provided logistical support, and organized others to join the encampment. Additionally, it has published a blog defending the pro-Palestine bylaw freedom of speech and acted in concert with other organizations and individuals comprising LSJP to support Palestinian freedom. (Dkt. No. 88-1) This Court did not address this evidence.

Underscoring the importance of allowing BLJ4P to intervene as organization was the fact that nine of the signatories have not publicly disclosed their names, and signed under seal stating: "[W]e request that the names of this declaration be sealed, because we have seen fellow law students be doxxed, harassed, intimidated, and lose job offers and other opportunities because they have voiced their support for Palestine." (Dkt. No. 88, ¶10) Denial of BLJ4P as an intervenor organization denied these individuals the opportunity to be parties in this case without having to disclose their names (on equal terms as the members of the Plaintiff organizations).[3]

---

[2] The Intervenors' original motion for intervention (Dkt. No. 75) had been made on a broad basis, seeking intervention for people not directly affiliated with UC-Berkeley, including student and non-student members of the pro-Palestine movement from across the country and one from the United Kingdom. When the Court denied intervention to the organizations in its October 25, 2024 order, it set forth the listed reasons why. On November 12, 2024, the Intervenors reapplied for admission of these organizations directly answering and meeting the criteria set by the Court.

[3] The only member of BLJ4P prepared to be a publicly-named intervenor, Shmuel (Muki) Barkan, is able to do so because they are a dual citizen of Israel and less likely to be targeted by right-wing organizations who do not want to increase the profile of an Israeli-American Jew opposing the Netanyahu government, and because they have a job lined up post-graduation from an employer who is familiar with their pro-Palestine activism. (Dkt. No. 88, at 4, fn. 2)

In the Court's October 25, 2024 denying intervention to **Berkeley MSA**, it stated: "as neither intervenors nor plaintiffs allege that the organization has adopted the challenged bylaw or hosted or endorsed relevant on-campus protests." (Dkt. No. 84, at 2, fn. 1) The Intervenors submitted evidence that Berkeley MSA made numerous statements and sponsored numerous on-campus events for Palestine, including the Spring 2024 pro-Palestine encampment that is the central target of the Plaintiffs. (DKt. No. 88, at 4-5) This Court did not address this evidence.

The Court assumed that **BAMN** did not have a chapter at UC-Berkeley, when this was not true. Again, the Intervenors' original motion was for a broad group of intervenors that included people not affiliated with UC-Berkeley, making the sound argument that the impact of a finding that anti-zionism equals anti-semitism would have implications on First Amendment speech nationwide. Therefore, the Intervenors applied in their original motion for BAMN's national organization to be an intervenor. When the Court made clear it would require a direct affiliation with UC-Berkeley, the Intervenors submitted evidence that BAMN has an active chapter at UCB that actively engages in pro-Palestine protests, including the Spring 2024 encampment. The Intervenors also made clear that Dr. Benjamin Lynch, one of the original prospective intervenors, is a faculty researcher at UCB as well as a signatory and representative of UC-Berkeley BAMN. As a long-term affiliate of UC-Berkeley, Dr. Lynch's admission as an intervenor would not present the problem of the Intervenors being extinguished from this case because of all the intervenors graduating. This Court did not address this evidence.

Again, the Intervenors did not challenge the Court's order at the time because the Court simultaneously said that "they did not identify new or different interests or arguments they might advance <u>beyond those likely to be presented by the students to whom permissive intervention has already been granted</u>." (Dkt. No. 98, emphasis added) The Court had made clear that it did not want to be burdened with repeated motions on the question of new intervenors, and it was implied that the case would go forward and that the impending graduation (the Intervenors' original Motion and Proposed Answer had made clear that Malak Afaneh and Shmuel Barkan were third-year law students) would *not* disrupt the Intervenors' ability to make their case. Therefore, the Intervenors

did not move for reconsideration and did not appeal this ruling at the time. It is the Court's action on May 23, 2025 that makes the present Motion necessary.

### IV. February 4, 2025 ruling denying motion to proceed pseudonymously

On February 4, 2025, the Court did not consider the extensive evidence the Intervenors had presented that pro-Palestine students, such as Berkeley Law Student #1, will face extensive harassment, emotional distress, and loss of career opportunities if they were to be compelled to publicly disclose their name(s) in this litigation. (Dkt. No. 87) The harassment, doxxing, use of video billboards on trucks publicizing students' names with incendiary imagery (including Nazi imagery), national op-eds, the retraction of job offers of pro-Palestine Berkeley Law students and their own dean defending such decisions, all coordinated and conducted by right-wing "watchdog" groups like the Canary Mission and "Accuracy In Media" and which have been the subject of national media attention, *were not addressed by the Court*. Its docket-entry order merely stated that the "request did not demonstrate that the student intervenors faced a level of potential harm, or have individual vulnerabilities, sufficient to overcome the public's right of access." (Dkt. No. 98) The Court did not explain why this "right of access" did not extend to knowing the identity of any of the individuals among *the Plaintiffs*, who *are* permitted to proceed anonymously because their *organizations*, Brandeis Center and JAFE, are permitted to do so. The nine members of BLJ4P who signed a declaration under seal—none of the individual members of the Plaintiff organizations have submitted any evidence asserting their need for anonymity or established that they are UCB-affiliated—*would* be willing to proceed under a pseudonym *or* as a member of BLJ4P if it were allowed to be an intervenor organization. Their admission would solve the Intervenors' problem that all their Intervenors will graduate before trial. However, this Court simultaneously closed the door to these pro-Palestine Jewish law students' participation as well, while allowing pro-Netanyahu Jewish students to remain in this case. Again, the Intervenors did not challenge this decision at the time, because the Court said that *the four Intervenors* would sufficiently represent the prospective Intervenors' interests in this case.

### V. October 25, 2024 denial of intervention as of right, to BLJ4P, Berkeley MSA, UC-Berkeley BAMN, and Dr. Benjamin Lynch

Intervenors also seek reconsideration of the Court's denial of intervention as of right in its October 25, 2024 order, to BLJ4P, Berkeley MSA, BAMN (specifically its UC-Berkeley chapter), and Dr. Benjamin Lynch, who is a faculty researcher and a long-term affiliate of UC-Berkeley and member of UCB BAMN. These prospective intervenors, if allowed to be intervenors, would solve the problem of the Intervenors being extinguished from this case. The basis by which the Court denied intervention as of right in its order were that "[m]ost of the proposed intervenors have no current affiliation with the University of California, Berkeley… and so do not qualify for intervention as of right." (Dkt. No. 84, at 1) However, it was clear then, if not made even clearer in the Intervenors' November 18, 2024 motion to admit them as intervenors, that they all have affiliations to UC-Berkeley and have participated in and co-sponsored many of the pro-Palestine protest that are grossly mischaracterized by the Plaintiffs as *per se* "anti-semitism." There is no serious contention that these organizations, which co-sponsored and/or directly participated in the Spring 2024 encampment for Palestine at UCB, do not have an interest in this lawsuit that seeks to require UCB to suspend, expel, and use police force against them. Intervenors did not challenge the denial of intervention as of right at the time, seeking resort in their November 12, 2024 motions to add intervenors and for certain intervenors to proceed under pseudonyms. Doing so was not necessary then to ensure their permanent status in this case—which, again, is the problem at issue in this Motion. Until May 23, 2025, it was the hope of BLJ4P and Berkeley MSA that they could still participate in this case via the individual members of their groups who were among the four Intervenors. After all, this Court, in denying their motion to be added as intervenors on February 4, had stated when denying them intervention: "The proposed intervenors did not identify any new or different interests or arguments they might advance beyond those likely to be presented by <u>the students to whom permissive intervention has already been granted</u>." (Dkt. No. 98, emphasis added) It is only with the May 23, 2025 order to dismiss Afaneh and Barkan that the shifting sands of the Court's use of permissive intervention made clear that the Intervenors must be able to stand on their clear, unassailable *right* to be intervenors in this case.

Additionally, these intervenors also bring new material facts that have emerged since the previous orders denying them intervention. On March 28, 2025, the UCLA administration banned indefinitely its chapter of Students for Justice in Palestine.[4,5] On April 30, 2025, UCLA used police force to crack-down on a pro-Palestine movie showing that did not block any students access to any facility on campus.[6] The UC administration ostensibly based these actions in the U.S. District Court's preliminary injunction in *Frankel v. Regents* (Dkt. No. 78-1), which equated protest against Israel as "anti-semitic." That preliminary injunction purported only to affect the blocking of access to facilities on campus. However, UC was treating the mere showing of a movie as creating a "hostile environment" for Jewish students, using this as a justification to suppress pro-Palestine speech. The Trump administration has eroded due-process protections and has defied court orders, and has made clear that it will arrest and target students who support Palestine under the false label of "anti-semitism." This drive to label all protest regarding Israel is already being used to label all protest of a potential U.S. war against Iran in support of Israel—a move that threatens a broader and potentially a world war—as "anti-semitic." The intervenors are entitled to intervention *as of right* because these new events make it incontestable that the relief that Plaintiffs seek would lead to a broad suppression of First Amendment rights that could facilitate a global catastrophe. BLJ4P, Berkeley MSA, and UC-Berkeley BAMN are in danger of being banned as organizations if not allowed to intervene, and would be suppressed in their exercise of their First Amendment rights. Their right to intervention is strong, obvious, and unassailable.

---

[4] "UCLA bans Students for Justice in Palestine as a campus organization," *Los Angeles Times* (Mar. 28, 2025). Available at: https://www.latimes.com/california/story/2025-03-28/ucla-bans-students-for-justice-in-palestine-as-a-campus-organization

[5] This action coincided with the March 27, 2025 decision by the Israeli Supreme Court giving Netanyahu carte blanche to continue the blockade of all humanitarian aid getting into Gaza, removing all legal guardrails on his ability to carry out an act that the U.N. has called forced starvation and genocide. "Israeli Supreme Court decision legitimizes starvation, genocide in the Gaza Strips" Euro-Mediterranean Human Rights Monitor (Mar. 28, 2025). Available at: https://reliefweb.int/report/occupied-palestinian-territory/israeli-supreme-court-decision-legitimises-starvation-genocide-gaza-strips-enar

[6] "Three pro-Palestine protesters arrested during encampment attack anniversary rally" *Daily Bruin,* May 1, 2025. Available at: https://dailybruin.com/2025/05/01/two-pro-palestine-protesters-detained-during-encampment-attack-anniversary-rally

**CONCLUSION**

If the Intervenors are not allowed to remain in this case, then UC will certainly be pressured to use the policy being implemented at UCLA as the policy that it should adopt to govern free speech rights at UC Berkeley. Further, the elimination of the Intervenors would mean that no case in the country would have a factual record that contests the lie that protest of Israel's acts is "anti-semitic," and the *Frankel* case would become the law of the land.

The Intervenors seek the ability to remain in this case, so that this Court does not shirk its duty to defend the First Amendment and democracy, by hiding behind unjustified technicalities that it does not apply to the other side.

This Motion to allow the Intervenors to remain intervenors should be granted.

By the Defendant-Intervenors' Attorneys,
UNITED FOR EQUALITY AND AFFIRMATIVE ACTION LEGAL DEFENSE FUND (UEAALDF)

BY: /s/ Shanta Driver
Date: June 20, 2025