UNITED FOR EQUALITY AND AFFIRMATIVE ACTION
LEGAL DEFENSE FUND
755 MCALLISTER STREET
SAN FRANCISCO, CA 94102

WWW.UEAA.NET   PHONE: 313-683-0942   FAX: 313-586-0089

February 13, 2026

**VIA EMAIL AND ECF**

The Honorable District Judge James Donato
United States District Court, Northern District of California
450 Golden Gate Avenue
Courtroom 11, 19th Floor
San Francisco, California 94102

Re:   *The Louis D. Brandeis Center, Inc., et al. v. Regents of the University of California, et al.,* **No. 3:23-cv-06133-JD**

Dear Judge Donato:

**Pursuant to this Court's order granting permissive intervention (Dkt. No. 84, at 3), the Student Intervenors ("Intervenors") request leave to set depositions for the two remaining[1] individually-identified Plaintiffs in this litigation—JAFE Member #1 and JAFE Member #2.** On November 13, 2025, in light of the fact that the University Defendants wanted six of the seven available hours to depose each individual, this Court ordered that Intervenors be allowed to have "1.5 hours of questioning time in each of the depositions of JAFE Member #1 and JAFE Member #2." (Dkt. No. 129) A deposition of JAFE Member #2 occurred on November 17, 2025. But, after the University used approximately five hours of deposition time and concluded and after the Intervenors started their questioning, the deponent requested to continue the deposition on another day, to which the University Defendants and Intervenors assented. Since then, the University Defendants has refused to set depositions to allow for Intervenors to use the remaining time. (EXHIBIT 1) Pursuant to this Court's Standing Order and Civil Local Rule 37-1(a), on February 13, 2026 the Intervenors met and conferred with the University Defendants and Plaintiffs on this issue and did not find resolution. The University Defendants maintain their position, even after this Court ruled to maintain the Fact Discovery cutoff at March 20, 2026.

Granting this Motion is necessary to ensure that a factual record on the central issue in this case—whether the Complaint's allegations that acts opposing the Israeli government's actions are "antisemitic"—actually is developed before Fact Discovery ends on March 20, 2026. <u>The Intervenors respectfully request a decision from the Court by Monday, February 16, because Fact Discovery closes on March 20. (Dkt. No. 127)</u>

---

[1] This Court dismissed Count III (the claim made by JAFE Members #4-18 that as legal scholars they were harmed by pro-Palestine bylaws adopted by Berkeley Law School student organizations), and JAFE Member #3 appears to no longer be involved in this litigation: Plaintiffs have represented him as no longer represented and they have not disclosed any alternate contact information despite Intervenors' request.

- 1 -

On October 25, 2024, this Court granted permissive intervention to the Student Intervenors, who include UC-Berkeley students who assert that this case will impact their First Amendment right to engage in pro-Palestine activism at UC-Berkeley and the right of anti-Zionist Jews not to have the Federal Courts define the precepts of their faith. This Court held that they "plausibly allege <u>interests</u> that might be affected by the litigation, and may have <u>defenses that UC Berkeley may not raise</u>." (Dkt. No. 84, at 2) (emphasis added) One of those defenses is that anti-Zionist speech is not inherently antisemitic.

But the University Defendants have acted as if they agree with the Plaintiffs' claim on this central issue of the case. They have maneuvered behind the Intervenors' backs and announced to the Court—only 45 minutes after disclosing to the Intervenors that negotiations had been taking place—that they have reached a "settlement in principle" with the Plaintiffs. (Dkt. No. 130)

The Intervenors expect this "settlement in principle" to violate the Intervenors' interests. In Summer 2025, the University of California ("UC") settled with plaintiffs in a similar lawsuit brought against UCLA. UC agreed to a Consent Judgment that defines people who support Netanyahu's genocidal policies as engaging in a "religious belief[] concerning the Jewish state of Israel [sic]."[2] UC gave $2.33 million to pro-Israel organizations and $200,000 to individual plaintiffs as part of a $6.45 million settlement.

The First Circuit Court of Appeals recently rejected this false equation of anti-Zionism with antisemitism. On October 21, 2025, the First Circuit affirmed the dismissal of a similar lawsuit brought against the Massachusetts Institutes of Technology:

> Plaintiffs are entitled to their own interpretive lens equating anti-Zionism (as they define it) and antisemitism. But it is another matter altogether to insist that others must be bound by plaintiffs' view… Nor does a review of the academic literature point to any consensus that criticism of Zionism is antisemitic…
>
> This absence of consensus reflects ongoing debate as to the relationship between anti-Zionism and antisemitism—debate that our constitutional scheme resolves through discourse, not judicial fiat…

*Stand With US Ctr. for Legal Just. v. Massachusetts Inst. of Tech.*, 158 F.4th 1, 16-17 (1st Cir. 2025).

Even if this Court were to affirm a settlement between the Plaintiffs and the University Defendants, this will not settle the issue. Students whose First Amendment rights would be violated under a *Frankel*-like settlement would have cause to initiate new lawsuits against the University.

The Intervenors seek a judgment against the Plaintiffs on the basis that anti-Zionist speech cannot be falsely equated to antisemitism. In contrast, the University has acted in a manner consistent with wanting to reach a settlement that concedes this core issue to the Plaintiffs.

During her November 17, 2025 deposition, JAFE Member #2 complained that several instances of anti-Zionist speech at UC-Berkeley were "antisemitic." Her examples fell squarely

---

[2] The Consent Judgment has language identical to that declared by the U.S. District Court in a published order granting the *Frankel* plaintiffs a preliminary injunction. *Frankel v. Regents of Univ. of California,* 744 F.Supp.3d 1015, 1028 (C.D. Cal. 2024).

within those listed by the First Circuit as not being antisemitic. *Stand with US,* 158 F.4th at 16-19. For example, JAFE Member #2 stated that comparing the genocide in Gaza to the Holocaust was "antisemitic" and that what is occurring in Gaza is not a genocide. She also stated that a sign saying "resistance is justified" was antisemitic, and that the word "intifada" (which means uprising in Arabic) calls for the mass killing of Jews. Still, the University's counsel did not at any point challenge these claims. In contrast, the Intervenors, with the very brief time they had before JAFE Member #2 requested to adjourn the deposition, cross-examined her on these claims. Further, only the Intervenors questioned JAFE Member #2 about her beliefs on the relationship between Zionism and Judaism. In response, she claimed that "there can be no Jewish people without a Jewish state." This is a belief that is fiercely opposed by many Jews including Orthodox Jews.

Intervenors have a number of follow-up questions for JAFE Member #2 on (1) whether the acts she complained of were "antisemitic" and (2) whether her claims of what occurred at the February 26, 2024 she claims to have been assaulted at were true.

On November 20, 2025, counsel for Plaintiffs canceled the deposition of JAFE Member #1 that had been scheduled for November 24, 2025, stating, "We will circle back on rescheduling." To date, Plaintiffs have not communicated anything to the Intervenors about rescheduling the deposition of JAFE Member #1, and now oppose this current request.

On November 24, 2025, the Intervenors contacted the University Defendants to follow-up on the remainder of the deposition of JAFE Member #2 and the deposition of JAFE Member #1. The University ignored this request. Only when the Intervenors followed-up with another email on December 2, 2025 did the University Defendants reply stating, "We have not set any dates for any further depositions, including continuing JAFE Member #2's deposition or rescheduling JAFE Member #1's deposition." The University Defendants did not inform the Intervenors that they were in settlement discussions with the Plaintiffs, until 45 minutes before filing a stipulation with this Court asking for an order to stay this litigation pending a settlement.

On February 10, 2026, the University Defendants informed Intervenors that they did not intend to notice any depositions pending settlement discussions with the Plaintiffs. The University Defendants had long been in settlement discussions, and this was the first time they informed the Intervenors that they would not notice any more depositions.

This Court was correct in not staying this litigation (Dkt. No. 131), to ensure that the paramount issues at stake in this case actually are litigated. This is the only case of its nature in the country where a factual record, including expert testimony, can be developed on whether the remedies Plaintiffs seek would violate core political speech rights. Needless to say, Intervenors will oppose any "settlement in principle" that violates the First Amendment and their rights. When the time comes to issue a judgment, this Court will be best served by a developed factual record.

Respectfully,

*/s/ Shanta Driver*
Shanta Driver
United for Equality and Affirmative Action Legal Defense Fund (UEAALDF)
755 McAllister Street / San Francisco, CA 94102
Ph: (313) 683-0942  Fax: (313) 586-0089  shanta.driver@ueaa.net
*Attorneys for Intervenor-Defendants*
*\*Appearance pro hac vice*