TORRIDON LAW PLLC
John V. Coghlan (admitted *Pro Hac Vice*)
jcoghlan@torridonlaw.com
Tara Helfman (admitted *Pro Hac Vice*)
thelfman@torridonlaw.com
801 17th Street NW
Washington, DC 20006
Telephone: (202) 249-6900
Facsimile: (202) 249-6899

THE LOUIS D. BRANDEIS CENTER FOR
HUMAN RIGHTS UNDER LAW
Kenneth L. Marcus (admitted *Pro Hac Vice*)
klmarcus@brandeiscenter.com
L. Rachel Lerman (SBN 193080)
rlerman@brandeiscenter.com
1717 Pennsylvania Ave., NW, Suite 1025
Washington, DC 20006
Telephone: (202) 559-9296

WILLKIE FARR & GALLAGHER LLP
Alex M. Weingarten (SBN 204410)
AWeingarten@willkie.com
2029 Century Park East, Suite 2900
Los Angeles, CA 90067
Telephone: (310) 855-3000
Facsimile: (310) 855-3099

WILLKIE FARR & GALLAGHER LLP
Lee Wolosky (admitted *Pro Hac Vice*)
LWolosky@willkie.com
Andrew J. Lichtman (admitted *Pro Hac Vice*)
ALichtman@willkie.com
787 Seventh Avenue
New York, NY 10019-6099
Telephone: (212) 728-3157
Facsimile: (212) 728-8111

 *Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| THE LOUIS D. BRANDEIS CENTER, INC.; JEWISH AMERICANS FOR FAIRNESS IN EDUCATION (JAFE),<br><br>Plaintiffs,<br>vs.<br><br>REGENTS OF THE UNIVERSITY OF CALIFORNIA; MICHAEL DRAKE, in his official capacity as President of the University of California; RICHARD K. LYONS, in his official capacity as Chancellor of the University of California, Berkeley; BEN HERMALIN, in his official capacity as Provost of the University of California,<br><br>Defendants. | Case No. 3:23-cv-06133-JD<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR VOLUNTARY DISMISSAL WITH PREJUDICE PURSUANT TO RULE 41(a)(2)**<br><br>The Hon. James Donato<br><br>Trial Date: December 7, 2026 |

PLEASE TAKE NOTICE THAT on April 30, 2026 at 10:00 a.m., or as soon thereafter as the parties may be heard in Courtroom 11 on the 19th floor of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, before the Honorable Judge James Donato, Plaintiffs The Louis D. Brandeis Center, Inc. and Jewish Americans for Fairness in Education (JAFE) (together, "Plaintiffs") will, and hereby do, move for voluntary dismissal of this case with prejudice pursuant to Fed. R. Civ. P. 41(a)(2).

This motion is based on this Notice of Motion and the accompanying Motion for Voluntary Dismissal with Prejudice Pursuant to Rule 41(a)(2) and on such other written and oral arguments as may be presented to the Court.

DATED: March 26, 2026

Respectfully submitted,

By: */s/Andrew J. Lichtman*
     Andrew J. Lichtman

Alex M. Weingarten (SBN 204410)
AWeingarten@willkie.com
WILLKIE FARR & GALLAGHER LLP
2029 Century Park East, Suite 2900
Los Angeles, CA 90067
Telephone: (310) 855-3000
Facsimile: (310) 855-3099

Lee Wolosky (admitted *Pro Hac Vice*)
LWolosky@willkie.com
Andrew J. Lichtman (admitted *Pro Hac Vice*)
ALichtman@willkie.com
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019-6099
Telephone: (212) 728-3157
Facsimile: (212) 728-8111

John V. Coghlan (admitted *Pro Hac Vice*)
jcoghlan@torridonlaw.com
Tara Helfman (admitted *Pro Hac Vice*)
thelfman@torridonlaw.com
TORRIDON LAW PLLC
801 17th Street NW
Washington, DC 20006
Telephone: (202) 249-6900
Facsimile: (202) 249-6899

Kenneth L. Marcus (admitted *Pro Hac Vice*)
klmarcus@brandeiscenter.com
L. Rachel Lerman (State Bar No. 193080)
rlerman@brandeiscenter.com
THE LOUIS D. BRANDEIS CENTER FOR
HUMAN RIGHTS UNDER LAW
1717 Pennsylvania Ave. NW, Suite 1025
Washington, DC 20006
Telephone: (202) 559-9296

*Attorneys for Plaintiffs The Louis D. Brandeis Center, Inc. and Jewish Americans for Fairness in Education (JAFE*

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR VOLUNTARY DISMISSAL WITH PREJUDICE PURSUANT TO RULE 41(a)(2)

**STATEMENT OF RELIEF SOUGHT**

On March 19, 2026, Plaintiffs The Louis D. Brandeis Center, Inc. ("Brandeis Center") and Jewish Americans for Fairness in Education ("JAFE") and Defendant The Regents of the University of California ("Regents") executed a Settlement Agreement, which is attached hereto as **Exhibit A**. As the Settlement Agreement fully resolves all claims in this litigation, Plaintiffs and Defendants would stipulate to the dismissal of this action under Fed. R. Civ. P. 41(a)(1)(A)(ii).  Intervenors, however, do not agree to such a stipulation—even though they have no right to interfere with the Settlement Agreement and they will not suffer any legal prejudice from the Settlement Agreement. Accordingly, Plaintiffs (with Defendants' consent) respectfully seek an order from the Court dismissing this case with prejudice under Fed. R. Civ. P. 41(a)(2).

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      BACKGROUND**

**a.  Procedural History**

On May 3, 2024, Plaintiffs filed the operative First Amended Complaint ("FAC"), which alleges that Defendants have failed to address "longstanding and widely-reported anti-Semitic harassment of Jewish students at the University of California Berkeley ['UC Berkeley']."  ECF No. 62 ¶ 1.  As the Court explained, the "FAC alleges a series of events unfolding over the course of several months on campus, which are said to have been precipitated by a campus culture hostile to Jewish students and professors.  The FAC says that these events were perpetrated by students who professed to oppose Zionism, but actually intended to discriminate against Jewish students and professors because they are Jewish.  The FAC also alleges that Berkeley failed or refused to enforce its anti-discrimination policies as to its Jewish students and faculty in response to these events."  ECF No. 107 at 2 (citations omitted).  Defendants deny these allegations.

On March 31, 2025, the Court denied in part and granted in part Defendants' motion to dismiss. *Id.*  The Court held that, "[t]aken as a whole, the FAC plausibly alleges disparate treatment with

discriminatory intent and policy enforcement that is 'not generally applicable.'  The FAC also plausibly alleges that Berkeley was deliberately indifferent to the on-campus harassment and hostile environment.  Consequently, [Plaintiffs'] claims under 42 U.S.C. § 1983 for violations of the Equal Protection and Free Exercise Clauses of the U.S. Constitution will go forward, as will the Title VI claim." *Id.* at 2 (citations omitted).

Following the Court's order allowing this case to proceed, the parties engaged in many months of intensive fact discovery.  Plaintiffs and Defendants propounded numerous sets of document requests and interrogatories, engaged in extensive letter writing and meet and confers, and made significant document productions.  Depositions began in November 2025, with Defendants examining three members of JAFE.

### b. **Intervenors' Limited Role in This Litigation**

On August 19, 2024, various organizations and individuals—who claimed that "they have an interest in this action that will not be adequately represented by the current Defendants"—filed a motion to intervene in this litigation.  ECF No. 75 at 1.

On October 25, 2024, the Court denied the proposed intervenors' request to intervene as of right under Fed. R. Civ. P. 24(a) because "[m]ost of the proposed intervenors have no current affiliation" with UC Berkeley and because "[g]eneralized references to free speech on college campuses and fighting 'facism' do not suffice."  ECF No. 84 at 1 (citations omitted).  The Court did, however, grant permissive intervention under Rule 24(b) for six "current UC Berkeley students," subject to certain "conditions." *Id.* at 2.

Confirming their limited role in this case, the Court ordered that the Intervenors "may raise only new or different relevant arguments"; Intervenors' answer may raise "only affirmative defenses and no new claims"; Intervenors' "may address only arguments relating to plaintiffs' claims"; "[I]ntervenors' references to harassment or discrimination may be raised in a separate suit, not

here"; "Intervenors may not propound any discovery requests without the Court's prior approval"; "[I]ntervenors must use their true legal names unless the Court grants otherwise"; and "[i]f a student [I]ntervenor ceases to be a student at UC Berkeley at any time during this case, the [I]ntervenor is directed to promptly advise the Court in a declaration." *Id.* at 3.

The number of Intervenors quickly dropped from six to two after the Court denied the request of two Intervenors to proceed pseudonymously (ECF No. 98) and dismissed two Intervenors who graduated from UC Berkeley (ECF Nos. 115, 116). Of the two remaining Intervenors, one of them—Isaac Tragarz—appears to have also graduated from UC Berkeley (but failed to inform the Court), while the other Intervenor—Zaid Yousef—is expected to graduate from UC Berkeley in May 2026. Thus, with a single current student who is set to graduate from UC Berkeley in just over a month, the Intervenors' standing and status in this case is dubious.

### c.   The Settlement

At the same time Plaintiffs and Defendants were engaged in hard-fought discovery, they maintained ongoing settlement dialogue. For example, on June 6, 2025, Plaintiffs and Defendants participated in an all-day mediation before the Honorable Louis M. Meisinger of Signature Resolution. Although the mediation was not successful, the parties continued to negotiate the terms of a potential settlement in the following months.

On January 29, 2026, Plaintiffs and Defendants informed the Court that they had reached a "settlement-in-principle that would resolve this matter in its entirety." ECF No. 130 at 2. On March 19, 2026, after negotiating the final terms of a long-form agreement and receiving the necessary approval from the University of California Board of Regents, the parties executed the Settlement Agreement and filed a Notice of Settlement with the Court. ECF No. 138.

At a high level, the Settlement Agreement includes a number of reforms that are intended to improve "the climate for Jewish and Israeli students on its campus." Ex. A at 1. Among other

things, UC Berkeley agrees to consider the International Holocaust Remembrance Alliance ("IHRA") definition of anti-Semitism including its contemporary examples, whenever investigating or assessing claims of discrimination or harassment against Jews or Israeli individuals; clarify in a public statement that bans on Zionists have historically been used by some individuals and institutions as a pretext for excluding Jews and that such pretextual, exclusionary bans can violate University rules; rescind the bylaws and constitutions of registered student organizations that are the subject of FAC ¶¶ 118–137; and reaffirm its commitment to combatting anti-Semitism through an enumerated set of actions, including with respect to training, funding, reporting, disciplinary measures, and campus security.  The Regents further agreed to pay the Brandeis Center $1 million to reimburse it for outside attorneys' fees and costs.  In exchange for this consideration, Plaintiffs agreed to release their claims against Defendants.  Defendants have not admitted to any liability or wrongdoing.

Immediately after filing the Notice of Settlement, Plaintiffs shared a copy of the Settlement Agreement with Intervenors.  *See* **Exhibit B**.  In their cover email, Plaintiffs explained that, per Paragraph 8 of the Settlement Agreement, Plaintiffs and Defendants agreed to file either (i) a stipulation of dismissal with prejudice under Rule 41(a)(1)(A)(ii) if Intervenors consent to dismissal; or (ii) a motion to dismiss with prejudice under Rule 41(a)(2) if Intervenors do not consent to dismissal.  On March 25, 2026, Intervenors advised that they do not consent to a stipulation of dismissal. *Id.*

## II.    LEGAL ARGUMENT

Under Fed. R. Civ. P.  41(a)(2), "an action may be dismissed at the plaintiff's request only by court order on terms that the court considers proper."  The decision to approve a dismissal rests within the "sound discretion of the District Court," including whether to dismiss the action with or

without prejudice. *See Hamilton v. Firestone Tire & Rubber Co., Inc.*, 679 F.2d 143, 145 (9th Cir. 1982).

Rule 41(a)(2) "does not authorize a court to review or approve the substantive terms of a settlement." *See In re New York City Policing During Summer 2020 Demonstrations*, No. 20-CV-8924 (CM)(GWG), 2024 WL 476367, at *2 (S.D.N.Y. Feb. 7, 2024) (collecting cases). As Judge Posner explained, "the granting of a motion to dismiss under Rule 41(a)(2) does not imply judicial approval of the underlying settlement agreement." *SmithKline Beecham Corp. v. Pentech Pharms., Inc.*, 261 F. Supp. 2d 1002, 1008 (N.D. Ill. 2003). "Instead [Rule 41(a)(2)] requires the court to ascertain whether any non-settling party will suffer 'legal prejudice' if the case is dismissed pursuant to the Settlement." *In re New York City*, 2024 WL 476367, at *2; *see also Smith v. Lenches*, 263 F.3d 972, 975 (9th Cir. 2001) ("A district court should grant a motion for voluntary dismissal under Rule 41(a)(2) unless a defendant can show that it will suffer some plain legal prejudice as a result.").

Thus, "[t]he usual rule . . . is that strangers to a settlement, including intervenors, have no standing to object to a private settlement that does not require court approval." *In re New York City*, 2024 WL 476367, at *2 (rejecting intervenors' attempt to veto the terms of a settlement agreement). Consistent with this authority, the Ninth Circuit has explained that "non-settling intervenors" "lack standing to object to the district court's settlement approval unless they demonstrate formal legal prejudice." *Sweet v. Cardona*, 121 F.4th 32, 45 (9th Cir. 2024). "Formal legal prejudice exists only in those rare circumstances when, for example, the settlement agreement *formally* strips a non-settling party of a legal claim or cause of action, such as a cross-claim for contribution or indemnification, invalidates a non-settling party's contract right, or the right to present relevant evidence at a trial." *Id.* (citations omitted) (emphasis original); *see also Bhatia v. Piedrahita*, 756 F.3d 211, 219 (2d Cir. 2014) ("In reaching this result, we join our sister courts in holding that a settlement which does not prevent the later assertion of a non-settling party's claims (although it

may spawn additional litigation to vindicate such claims), does not cause the non-settling party formal legal prejudice.").

The Court should dismiss this action because the Settlement Agreement fully resolves this litigation.  The Settlement Agreement was the result of months of arms-length negotiations—including with assistance from a well-known mediator—and contains important measures to combat anti-Semitism on UC Berkeley's campus.  Intervenors have no right to interfere with Plaintiffs and Defendants' decision to resolve their claims through a private settlement that does not require court approval.

Nor is this one of those "rare" cases in which Intervenors can establish "formal legal prejudice" because "nothing in the [S]ettlement [A]greement precludes [Intervenors] from asserting in the district court or in other litigation any claims or defenses that may be available to them." *Sweet*, 121 F.4th at 45 (internal citations omitted).  Indeed, the Settlement Agreement nowhere mentions Intervenors, who are not the subject of any legal claims in this case and who remain free to pursue any legal claims they wish.  The Settlement Agreement is consistent with the Court's order that Intervenors have no right to assert any "claims" against anyone in this litigation and that "[I]ntervenors' references to harassment or discrimination may be raised in a separate suit, not here."  ECF No. 84 at 3.  Moreover, Intervenors now comprise just one student who is graduating from UC Berkeley in a little over a month and therefore Intervenors will have no plausible interest in this litigation by the time briefing ends on this Rule 41(a)(2) motion.  Simply put, there is no basis for Intervenors' attempt to continue a litigation that Plaintiffs and Defendants have fully settled.  *See e.g.*, *Ahern v. Central Pac. Freight Lines,* 846 F.2d 47, 48 (9th Cir. 1998) ("It is well recognized that settlement agreements are judicially favored as a matter of sound public policy.  Settlement agreements conserve judicial time and limit expensive litigation.").

### III.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court dismiss this case with prejudice, with all the parties to incur their own fees and costs other than those provided for in the Settlement Agreement, and without any conditions.

DATED: March 26, 2026

Respectfully submitted,

By:  */s/ Andrew J. Lichtman*
Andrew J. Lichtman

Alex M. Weingarten (SBN 204410)
AWeingarten@willkie.com
WILLKIE FARR & GALLAGHER LLP
2029 Century Park East, Suite 2900
Los Angeles, CA 90067
Telephone: (310) 855-3000
Facsimile: (310) 855-3099

Lee Wolosky (admitted *Pro Hac Vice*)
LWolosky@willkie.com
Andrew J. Lichtman (admitted *Pro Hac Vice*)
ALichtman@willkie.com
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019-6099
Telephone: (212) 728-3157
Facsimile: (212) 728-8111

John V. Coghlan (admitted *Pro Hac Vice*)
jcoghlan@torridonlaw.com
Tara Helfman (admitted *Pro Hac Vice*)
thelfman@torridonlaw.com
TORRIDON LAW PLLC
801 17th Street NW
Washington, DC 20006
Telephone: (202) 249-6900
Facsimile: (202) 249-6899

Kenneth L. Marcus (admitted *Pro Hac Vice*)
klmarcus@brandeiscenter.com
L. Rachel Lerman (State Bar No. 193080)
rlerman@brandeiscenter.com
THE LOUIS D. BRANDEIS CENTER FOR
HUMAN RIGHTS UNDER LAW
1717 Pennsylvania Ave. NW, Suite 1025
Washington, DC 20006
Telephone: (202) 559-9296

*Attorneys for Plaintiffs The Louis D. Brandeis Center, Inc. and Jewish Americans for Fairness in Education (JAFE)*