TORRIDON LAW PLLC
John V. Coghlan (admitted *Pro Hac Vice*)
jcoghlan@torridonlaw.com
Tara Helfman (admitted *Pro Hac Vice*)
thelfman@torridonlaw.com
801 17th Street NW
Washington, DC 20006
Telephone: (202) 249-6900
Facsimile: (202) 249-6899

THE LOUIS D. BRANDEIS CENTER FOR
HUMAN RIGHTS UNDER LAW
Kenneth L. Marcus (admitted *Pro Hac Vice*)
klmarcus@brandeiscenter.com
L. Rachel Lerman (SBN 193080)
rlerman@brandeiscenter.com
1717 Pennsylvania Ave., NW, Suite 1025
Washington, DC 20006
Telephone: (202) 559-9296

WILLKIE FARR & GALLAGHER LLP
Alex M. Weingarten (SBN 204410)
AWeingarten@willkie.com
2029 Century Park East, Suite 2900
Los Angeles, CA 90067
Telephone: (310) 855-3000
Facsimile: (310) 855-3099

WILLKIE FARR & GALLAGHER LLP
Lee Wolosky (admitted *Pro Hac Vice*)
LWolosky@willkie.com
Andrew J. Lichtman (admitted *Pro Hac Vice*)
ALichtman@willkie.com
787 Seventh Avenue
New York, NY 10019-6099
Telephone: (212) 728-3157
Facsimile: (212) 728-8111

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| THE LOUIS D. BRANDEIS CENTER, INC.; JEWISH AMERICANS FOR FAIRNESS IN EDUCATION (JAFE), <br><br> Plaintiffs, <br> vs. <br><br> REGENTS OF THE UNIVERSITY OF CALIFORNIA; MICHAEL DRAKE, in his official capacity as President of the University of California; RICHARD K. LYONS, in his official capacity as Chancellor of the University of California, Berkeley; BEN HERMALIN, in his official capacity as Provost of the University of California, <br><br> Defendants. | Case No. 3:23-cv-06133-JD <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR VOLUNTARY DISMISSAL WITH PREJUDICE PURSUANT TO RULE 41(a)(2)** <br><br> The Hon. James Donato <br><br> Trial Date: December 7, 2026 |

**INTRODUCTION**

Intervenors' opposition to dismissal is full of rhetoric, but devoid of law.  ECF No. 141 ("Opposition" or "Opp.").  As set forth in Plaintiffs' opening brief, Rule 41(a)(2) does not require a court to review or approve the terms of a settlement.  Instead, the applicable inquiry is whether a non-settling party will suffer "legal prejudice" from dismissal.  This case must be dismissed because Intervenors will suffer no legal prejudice, as they are nowhere mentioned in the Settlement Agreement, they are not the subject of any legal claims in this case, and they remain free to pursue any legally sufficient claims they believe they possess in a separate lawsuit.  Indeed, given that Plaintiffs and UC Berkeley have settled their dispute and Plaintiffs have agreed to dismiss with prejudice all of their claims (which were the only claims in the lawsuit), there are no claims remaining to be litigated and hence no claims upon which Intervenors could offer defenses or arguments.

In their Opposition, Intervenors do not mention any Rule 41 cases or attempt to explain how they have suffered "legal prejudice."  Rather, they rely on highly inflammatory language and misleading statements about the Settlement Agreement.  But their rhetoric cannot change the outcome:  Intervenors have no legal basis to interfere with Plaintiffs' and Defendants' resolution of this litigation.

**ARGUMENT**

**I.     INTERVENORS CANNOT SHOW "LEGAL PREJUDICE"**

Intervenors argue that the Court should deny dismissal because the Court's order granting permissive intervention stated that Intervenors "plausibly allege interests that might be affected by the litigation, and may have defenses that UC Berkeley may not raise."  Opp. at 1 (quoting ECF No. 84 at 2).  However, the standard for granting permissive intervention is entirely different from the standard for approving dismissal under Rule 41(a)(2).

As the Court recognized in its prior order, "[p]ermissive intervention is committed to the broad discretion of the district court."  ECF No. 84 at 1-2 (quoting *Cnty. of Orange v. Air Cal.*, 799 F.2d 535, 539 (9th Cir. 1986)).  Among other factors, courts consider whether the proposed intervenor's claim "shares a common question of law or fact with the main action" and whether "intervention will unduly delay the main action or will unfairly prejudice the existing parties." *Donnelly v. Glickman v. Levis*, 159 F.3d 405, 412 (9th Cir. 1998).  Thus, permissive intervention is a flexible mechanism that is designed to increase "the efficiency of the litigation process." *Id.*

In stark contrast, a court must grant a motion for voluntary dismissal under Rule 41(a)(2) unless the non-settling party "can show that it will suffer some plain legal prejudice as a result." *Smith v. Lenches*, 263 F.3d 972, 975 (9th Cir. 2001).  As the Ninth Circuit has confirmed in a case involving "non-settling intervenors," "[f]ormal legal prejudice exists only in those rare circumstances when, for example, the settlement agreement *formally* strips a non-settling party of a legal claim or cause of action, such as a cross-claim for contribution or indemnification, invalidates a non-settling party's contract right, or the right to present relevant evidence at a trial." *Sweet v. Cardona*, 121 F.4th 32, 45 (9th Cir. 2024) (internal citations omitted) (emphasis original).

Intervenors do not address these Rule 41 authorities, which are discussed in Plaintiffs' opening brief (ECF No. 139 at 4-6), or make any effort to establish formal legal prejudice.  Nor could they, because nothing in the Settlement Agreement releases any claims they believe they might possess or prevents them from asserting a legal claim in a separate litigation, which is consistent with the Court's order stating that "[I]ntervenors' references to harassment or discrimination may be raised in a separate suit, not here."  ECF No. 84 at 3.  While the Court permitted Intervenors to have a limited role in this case, *id.*, the Court did not allow Intervenors to force the parties to litigate a dispute that has been settled.

## II.    INTERVENORS MISCHARACTERIZE THE SETTLEMENT AGREEMENT

Instead of claiming any "legal prejudice" from dismissal (as they must), Intervenors devote much of their Opposition to attacking the Settlement Agreement.  However, Intervenors have no right to challenge the Settlement Agreement under Rule 41(a)(2), which "does not authorize a court to review or approve the substantive terms of a settlement."  *See In re New York City Policing During Summer 2020 Demonstrations*, No. 20-CV-8924 (CM)(GWG), 2024 WL 476367, at *7 (S.D.N.Y. Feb. 7, 2024) (collecting cases).  Regardless, Intervenors' assertions are meritless.

Intervenors claim that the Settlement Agreement "commits the University to enforcing the IHRA definition of 'antisemitism,' imposing a viewpoint-based restriction on core political speech." Opp. at 6.  Intervenors further claim that "Plaintiffs' core contention—that criticism of Israel is 'antisemitic'—poses a vital, pressing constitutional question for the future of democracy that must be resolved now."  *Id.* at 5.  While irrelevant to the resolution of Plaintiffs' Rule 41 motion, Intervenors are wrong as to both the IHRA definition and the Settlement Agreement.

Intervenors' First Amendment arguments fail because they are premised on a fundamental misunderstanding of both the IHRA definition and the Settlement Agreement.  The IHRA definition does not regulate, prohibit, or punish speech.  Rather, it provides a framework for identifying when conduct, including speech, may provide evidence of discriminatory intent in the enforcement of antidiscrimination laws.  As the Supreme Court has recognized, "the First Amendment does not prohibit the evidentiary use of speech . . . to prove motive or intent."  *Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993).

That is precisely how the IHRA definition operates.  It does not call for the suppression of speech, but rather assists institutions in determining whether otherwise actionable conduct is motivated by anti-Semitic animus.  Within higher education, the IHRA definition is used by numerous public and private universities, including the City University of New York (CUNY), Harvard University, Columbia University, Pomona College, The Cooper Union, University of

Illinois Urbana-Champaign, George Mason University, North Carolina State University, and all public universities in Nevada, Ohio, Florida, Oklahoma, Kansas, and Tennessee.[1]

Consistent with this framework, the Settlement Agreement does not impose any viewpoint-based restriction or create a speech code. It simply provides that UC Berkeley will "consider" the IHRA definition when assessing whether conduct violates existing antidiscrimination policies. The Settlement provides:

> Consistent with longstanding guidance from the Department of Education's Office for Civil Rights, UC Berkeley considers the International Holocaust Remembrance Alliance ("IHRA") definition of antisemitism including its contemporary examples, whenever investigating or assessing claims of discrimination or harassment against Jews or Israeli individuals. In all cases, the relevant investigative question is whether there has been discrimination or harassment in violation of UC Berkeley policies on the basis of a protected category or retaliation in response to a complaint of discrimination or harassment based on a protected category including, without limitation, Jewish persons.

ECF No. 139-1 ¶ 14.

As numerous universities have recognized, it is important to have a definition of anti-Semitism to provide objectivity in resolving discrimination and harassment claims. Anti-Jewish hate is easily misclassified since it operates on multiple axes: national origin, religion and/or ethnicity. The IHRA definition incorporates tangible examples to clarify what conduct could be interpreted as involving discrimination or harassment. Consistent with this focus on discrimination based on protected categories, the Settlement Agreement also requires UC Berkeley to clarify "that

---

[1] The IHRA definition is also the definition federal agencies use when enforcing Title VI of the Civil Rights Act of 1964. *See Combating Anti-Semitism*, Exec. Order No. 13899, 84 Fed. Reg. 68779 (Dec. 11, 2019). The Biden administration reaffirmed the United States' commitment to using the IHRA definition as a tool in its 2023 U.S. National Strategy to Counter Antisemitism. The Biden administration's Office for Civil Rights also endorsed institutions "consider[ing]" the IHRA definition when assessing alleged antisemitism under Title VI. *See* Catherine E. Lhamon, U.S. Dep't of Educ., Dear Colleague Letter: Protecting Students from Discrimination, such as Harassment, Based on Race, Color, or National Origin, including Shared Ancestry or Ethnic Characteristics 17 & n.34 (May 7, 2024), https://www.ed.gov/media/document/dear-colleague-letter-protecting-students-discrimination-such-harassment-based-race-color-or-national-origin-including-shared-ancestry-or-ethnic. President Trump reaffirmed Executive Order 13899 on January 29, 2025, when he issued Executive Order 14188, *See Additional Measures To Combat Anti-Semitism*, Exec. Order No. 14188, 90 Fed. Reg. 8847 (Jan. 29, 2025). The IHRA definition has also been adopted (or is used in some capacity) by a majority of states and numerous municipalities.

bans on Zionists have historically been used by some individuals and institutions as a pretext for excluding Jews and that such pretextual, exclusionary bans can violate University rules." *Id.* ¶ 15. Moreover, "[i]n the event of a complaint of discriminatory treatment against Zionists, [UC Berkeley] will rigorously evaluate and document whether Zionism or the term 'Zionists' was used as a proxy for protected characteristics." *Id.* Thus, far from "imposing a viewpoint-based restriction," the Settlement Agreement provides that UC Berkeley will consider the IHRA definition of anti-Semitism when investigating claims of discrimination based on a protected category.

Intervenors refer to *Stand With Us Center v. Legal Justice v. Massachusetts Institute of Technolog*y, but that case has no bearing on the dismissal of this litigation. 158 F.4th 1 (1st Cir. 2025). Most importantly, *Stand With Us* decided a Rule 12 motion to dismiss for failure to state a claim—not a Rule 41(a) motion to dismiss based on a settlement agreement that disposes of all claims. And at the pleading stage, this Court has already reached a different conclusion than that reached by the First Circuit based on a different set of allegations. Moreover, nothing in *Stand With Us* suggests that a settlement agreement incorporating consideration of the IHRA definition raises First Amendment concerns. Consistent with the Settlement Agreement here, which requires UC Berkeley to evaluate whether "Zionism or the term 'Zionists' was used as a proxy for protected characteristics," ECF No. 139-1 ¶ 15, *Stand With Us* recognized that a plaintiff may assert a viable Title VI claim by alleging that "anti-Zionism" was driven by "antisemitic animus." 158 F. 4th at 18.

In any event, Invervenors' arguments are beside the point because they have no claim for relief in this lawsuit. The Court made clear when granting intervention that Intervenors are not entitled to file any "new claims" here. ECF No. 84 at 3.

### III.   THE COURT SHOULD DENY RECONSIDERATION

The Court should deny Intervenors' motion for leave to file a motion for reconsideration of the original intervention order issued eighteen (18) months ago. ECF No. 142. Intervenors' motion

is moot, untimely, in violation of Local Rule 7-9, and wrong on the merits.

Most fundamentally, their proposed reconsideration motion is moot because the case has settled. None of the current, prospective, or previously-dismissed Intervenors has any basis to oppose the Rule 41(a)(2) motion to dismiss because none of them has asserted (or could assert) any "legal prejudice" from dismissal. The Court should grant the motion to dismiss regardless of the Intervenors' status in this case.

The Intervenors' reconsideration motion is also untimely. Any challenge to the Court's ruling on the Intervenors' initial motion to intervene based on any purported "clear error" or claim that the decision was "manifestly unjust" should have been made promptly after the decision. *See* Civ. L. R. 7-9(b) ("The moving party must specifically show reasonable diligence in bringing the motion . . . ."). There is no basis to revisit that ruling now.

The Intervenors' motion also violates Local Rule 7-9, which limits the grounds upon which motions for reconsideration may be made and makes the repetition of arguments from the original motion sanctionable: "No motion for leave to file a motion for reconsideration may repeat any oral or written argument made by the applying party in support of . . . the interlocutory order which the party now seeks to have reconsidered. Any party who violates this restriction shall be subject to appropriate sanctions." Civ. L. R. 7-9(c). Despite this clear prohibition, Intervenors reargue their connection to UC Berkeley and that intervention as of right must be revisited. *See* Opp. at 4.

Finally, the Intervenors have also failed to identify any "clear error" that would support reconsideration. *School Dist. No. 1J, Multnomah Cnty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) ("Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law."). The Court correctly denied intervention as of right under Fed. R. Civ. P. 24(a) because "[m]ost of the proposed intervenors have no current affiliation" with UC Berkeley and because "[g]eneralized references to free speech on college campuses and fighting

'facism' do not suffice." ECF No. 84 at 1 (citations omitted).  Furthermore, the fact that all of the Intervenors will have graduated by May 2026—and would therefore be dismissed from this case if it was still pending—is both irrelevant (because the case will not be pending) and not an "extraordinary circumstance" that could support reconsideration.  *School Dist. No. 1J*, 5 F.3d at 1263.

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court dismiss this case with prejudice, with all the parties to incur their own fees and costs other than those provided for in the Settlement Agreement, and without any conditions.

DATED: April 16, 2026

Respectfully submitted,

By: */s/ Andrew J. Lichtman*
    Andrew J. Lichtman

Alex M. Weingarten (SBN 204410)
AWeingarten@willkie.com
WILLKIE FARR & GALLAGHER LLP
2029 Century Park East, Suite 2900
Los Angeles, CA 90067
Telephone: (310) 855-3000
Facsimile: (310) 855-3099

Lee Wolosky (admitted *Pro Hac Vice*)
LWolosky@willkie.com
Andrew J. Lichtman (admitted *Pro Hac Vice*)
ALichtman@willkie.com
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019-6099
Telephone: (212) 728-3157
Facsimile: (212) 728-8111

John V. Coghlan (admitted *Pro Hac Vice*)
jcoghlan@torridonlaw.com
Tara Helfman (admitted *Pro Hac Vice*)
thelfman@torridonlaw.com
TORRIDON LAW PLLC
801 17th Street NW
Washington, DC 20006
Telephone: (202) 249-6900
Facsimile: (202) 249-6899

Kenneth L. Marcus (admitted *Pro Hac Vice*)
klmarcus@brandeiscenter.com
L. Rachel Lerman (State Bar No. 193080)
rlerman@brandeiscenter.com
THE LOUIS D. BRANDEIS CENTER FOR
HUMAN RIGHTS UNDER LAW
1717 Pennsylvania Ave. NW, Suite 1025
Washington, DC 20006
Telephone: (202) 559-9296

*Attorneys for Plaintiffs The Louis D. Brandeis Center, Inc. and Jewish Americans for Fairness in Education (JAFE)*

Case No. 3:23-cv-06133-JD